James E. Cecchi
**CARELLA BYRNE CECCHI**
**BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com

*Counsel for Plaintiff and the putative Class*
[*Additional Counsel on Signature Page*]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEFFREY STEVENS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TD BANK, N.A.,<br><br>Defendant. | Case No. 1:24-cv-08311-RMB-AMD<br><br>**Motion Day: January 21, 2025** |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS


**Section** **Page**

Table of Contents ........................................................ ii

Table of Authorities ........................................................ iv

Introduction ........................................................ 1

Background ........................................................ 2

Argument ........................................................ 5

I. Stevens alleges that TD disclosed his personal financial information to a third party ........................................................ 5

II. New Jersey law applies to all of Stevens's common-law claims except breach of confidence, which is governed by New York law. ........................ 7

III. Stevens states valid negligence claims. ........................................ 10

A. Stevens adequately alleges that TD breached its common-law duty to protect its customers' personal information. ........................ 10

B. Stevens adequately alleges that TD breached a statutory duty. ........ 14

C. Stevens adequately alleges he suffered an injury ............................ 17

IV. Stevens states a valid claim for unjust enrichment. ................................ 20

V. Stevens states a valid claim for declaratory relief. ................................ 22

VI. Stevens states a valid claim for breach of an express contract .................. 24

A. Stevens adequately alleges he entered into a contract with TD. ........ 25

B. Stevens adequately alleges TD breached the contract. ..................... 29

C. Stevens adequately alleges damages. ............................................ 31

VII. Stevens states a valid claim for breach of an implied contract. ................. 32

VIII. Stevens states a valid claim that TD violated of New York General Business Law § 349. ........................................................ 35

A. Stevens adequately alleges TD engaged in consumer-oriented conduct. ........................................................ 35

B. Stevens adequately alleges TD committed deceptive or misleading acts or practices based on its use of tracking technologies to share his personal financial information. ................................................ 36

C. Stevens adequately pleads he suffered an actual injury. .................. 40

D. Stevens adequately pleads materially misleading conduct caused his injury. ....41

IX. Stevens has standing to assert his claims for unfair and deceptive trade practices. ....42

Conclusion ....45

# TABLE OF AUTHORITIES


**Case** **Page(s)**

*18 KT.TV, LLC v. Entest Biomedical, Inc.*,
2011 WL 5374515 (M.D. Pa. Nov. 7, 2011)....................32

*Acquino v. Subaru of Am.*,
2024 WL 124627 (D.N.J. Jan. 11, 2024)....................20

*Alloway v. Bradlees, Inc.*,
157 N.J. 221 (N.J. 1999)....................16

*Atlas Commc'ns Tech., Inc. v. DXC Tech. Servs., LLC*
2020 WL 5105197 (D.N.J. Aug. 31, 2020)....................22

*Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co.*,
2021 WL 960875 (D.N.J. Mar. 15, 2021)....................44

*Bank of Am., N.A. v. Westheimer*,
683 F. App'x 145 (3d Cir. 2017)....................12

*Brady v. Anker Innovations Ltd.*,
2020 WL 158760 (S.D.N.Y. Jan. 13, 2020)....................36

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)....................23

*Castillo v. Seagate Tech., LLC*,
2016 WL 9280242 (N.D. Cal. Sept. 14, 2016)....................34

*Charlie v. Rehoboth McKinley Christian Health Care Servs.*,
2022 WL 1078553 (D.N.M. Apr. 11, 2022)....................16

*Chufen Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020)....................38

*Citizens Prop. Ins. Corp. v. European Woodcraft & Mica Design, Inc.*,
49 So. 3d 774 (Fla. Dist. Ct. App. 2010)....................26

*Coleman v. Martinez*,
254 A.3d 632 (N.J. 2021)....................12, 13

*Cooper v. Mount Sinai Health Sys., Inc.*,
2024 WL 3586357 (S.D.N.Y. July 30, 2024)....................35, 40, 41, 42

*D&B II Eters. LLC v. Universal Tax Sys., Inc.*,
2018 WL 1561727 (N.D. Ill. Mar. 31, 2018)....................26

*Daly v. Metro. Life Ins. Co.*,
4 Misc. 3d 887 (Sup. Ct. N.Y. Cty. 2004)....................8

*Dittman v. UPMC*,
196 A.3d 1036 (Pa. 2018)........................................................................ 10, 11, 12

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)..............................................18

*Dolmage v. Combined Ins. Co. of Am.*,
2016 WL 754731 (N.D. Ill. Feb. 23, 2016)............................................... 26, 28

*Dyer v. Northwest Airlines Corps.*,
334 F. Supp. 2d 1196 (D.N.D. 2004) ...............................................................27

*Eidelman v. Sun Prod. Corp.*,
2022 WL 1929250 (2d Cir. June 6, 2022).........................................................41

*Falcone v. Dickstein*,
92 F.4th 193 (3d Cir. 2024) ..............................................................................19

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ....................................................6

*Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*,
938 F.3d 466 (3d Cir. 2019) ..............................................................................24

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ............................................................37

*Finesse Express, LLC v. Total Quality Logistics, LLC*,
2021 WL 1192521 (S.D. Ohio Mar. 30, 2021) ..................................................23

*First Choice Fed. Union v. Wendy's Co.*,
2017 WL 9487086 (W.D. Pa. Feb. 13, 2017) ..................................................16

*Fishon v. Peloton Interactive, Inc.*,
620 F. Supp. 3d 80 (S.D.N.Y. 2022)................................................................42

*Fittipaldi v. Monmouth Univ.*,
2021 WL 2210740 (D.N.J. June 1, 2021) .........................................................32

*Foster v. Grp. Whole Foods Mkt., Inc.*,
2023 WL 8520270 (2d Cir. Dec. 8, 2023) .........................................................38

*Fox v. Iowa Health Sys.*,
399 F. Supp. 3d 780 (W.D. Wis. 2019)............................................................27

*Goldfarb v. Solimine*,
245 A.3d 570 (N.J. 2021) ..................................................................................25

*Gorodeski v. U.S. Bank Nat'l Ass'n*,
2016 WL 111422 (D.N.J. Jan. 11, 2016) ..........................................................14

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) ....................................................................................14

*Hartley v. Urb. Outfitters, Inc.*,
2024 WL 3445004 (E.D. Pa. July 17, 2024) ......................................................7

*Hopkins v. Fox & Lazo Realtors*,
625 A.2d 1110 (N.J. 1993) .............................................................................12

*Hurwitz v. C.G.J. Corp.*,
168 So. 2d 84 (Fla. Dist. Ct. App. 1964)..........................................................26

*In re Adobe Systems, Inc. Privacy Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ............................................................24

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021) ...................................... 10, 17, 21, 33

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) ............................................................40

*In re Arby's Rest. Grp. Litig.*,
2018 WL 2128441 (N.D. Ga. Mar. 5, 2018).......................................................23

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018) .............................................................................43

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
687 F. Supp. 2d 897 (W.D. Mo. 2009)..............................................................31

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ...........................................................................2

*In re Capital One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020).................................................................16

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
362 F. Supp. 3d 1295 (N.D. Ga. 2019) ....................................................... 25, 28

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
371 F. Supp. 3d 1150 (N.D. Ga. 2019) ............................................................16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)............................................................................17

*In re GEICO Customer Data Breach Litig.*,
2023 WL 4778646 (E.D.N.Y. July 21, 2023) .....................................................18

*In re Home Depot, Inc. Customer Data Sec. Breach Litig.*,
2016 WL 2897520 (N.D. Ga. May 18, 2016) .....................................................23

*In re JetBlue Airways Corp. Priv. Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005)....29

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018)....19

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020)....18

*In re Rutter's Inc. Data Sec. Breach Litig.*,
2021 WL 29054 (M.D. Pa. Jan. 5, 2021)....17

*In re U.S. Vision Data Breach Litig.*,
2024 WL 1975542 (D.N.J. Apr. 30, 2024)....32, 33

*In re Unite Here Data Security Incident Litig.*,
No. 24-cv-1565, 2024 WL 3413942 (S.D.N.Y. July 15, 2024)....24

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*,
2022 WL 1013945 (D.N.J. Apr. 5, 2022)....44, 45

*In re Waste Mgmt. Data Breach Litig.*,
2022 WL 561734 (S.D.N.Y. Feb. 24, 2022)....9

*In re Wawa, Inc. Data Sec. Litig.*,
2021 WL 1818494 (E.D. Pa. May 6, 2021)....10, 16, 17

*In re Yahoo! Customer Data Security Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal.)....24

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
2022 WL 16729170 (11th Cir. Nov. 7, 2022)....43

*Jerkins v. Anderson*,
922 A.2d 1279 (N.J. 2007)....11

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
119 F.3d 1070 (3d Cir. 1997)....9, 10

*Jones v. Com. Bancorp, Inc.*,
2006 WL 1409492 (S.D.N.Y. May 23, 2006)....8

*Jones v. PHH Mortg. Corp.*,
2024 WL 3639325 (D.N.J. July 31, 2024)....39

*Jones v. Sturm, Ruger & Co., Inc.*,
2024 WL 1307148 (D. Conn. Mar. 27, 2024)....34

*Kacocha v. Nestle Purina Petcare Co.*,
2016 WL 4367991 (S.D.N.Y. Aug. 12, 2026)....36

*Kane v. University of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......................................... passim

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) ...........................................................18

*L.S. v. Mount Olive Bd. of Educ.*,
765 F. Supp. 2d 648 (D.N.J. 2011)...................................................................16

*Langan v. Johnson & Johnson Consumer Cos.*,
897 F.3d 88 (2d Cir. 2018) ..............................................................................43

*Lone Star Nat. Bank, N.A. v. Heartland Payment Sys., Inc.*,
729 F.3d 421 (5th Cir. 2013) ............................................................................10

*Louisiana Health Serv. & Indem. Co. v. Janssen Biotech, Inc.*,
2021 WL 4988523 (D.N.J. Oct. 27, 2021) .......................................................42

*Manrique v. State Farm Mut. Auto. Ins. Co.*,
2021 WL 5745717 (S.D.N.Y. Dec. 2, 2021) ....................................................41

*Martinez v. D2C, LLC*,
2023 WL 6587308 (S.D. Fla. Oct. 10, 2023) ......................................................6

*Mayor of Baltimore v. Actelion Pharms. Ltd.*,
995 F.3d 123 (4th Cir. 2021) ............................................................................43

*McDonnell v. Nature's Way Prods., LLC*,
No. 16 C 5011, 2017 WL 1149336 (N.D. Ill. Mar. 28, 2017) ...........................31

*McKenna v. Metropolitan Life Ins. Co.*,
126 F. App'x 571 (3d Cir. 2005).......................................................................28

*Melzer v. Johnson & Johnson Consumer Inc.*,
2023 WL 3098633 n.1 (D.N.J. Apr. 26, 2023) ....................................................2

*Mercury Indem. Co. of America v. Viereck*,
2010 WL 1981788 (D.N.J. May 17, 2010) ........................................................27

*Meyer v. Christie*,
2007 WL 3120695 (D. Kan. Oct. 24, 2007)................................................ 27, 28

*Mielo v. Steak 'n Shake Ops., Inc.*,
897 F.3d 467 (3d Cir. 2018) ..............................................................................44

*Miller v. Syracuse Univ.*,
662 F. Supp. 3d 338 (N.D.N.Y. 2023) .............................................................34

*Morrison v. YTB Int'l, Inc.*,
649 F.3d 533 (7th Cir. 2011) ............................................................................43

*Murphy v. Implicito*,
920 A.2d 678 (N.J. Ct. App. 2007) ....................................................................25

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2023 WL 7017734 (E.D. Pa. Oct. 10, 2023)............................................ 13, 14

*Murphy v. Thomas Jefferson University Hosp., Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024)...................................... 17, 20, 21

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015) ..........................................................................44

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
875 F.3d 107 (2d Cir. 2017) ..........................................................................39

*On Air Ent. Corp. v. Nat'l Indem. Co.*,
210 F.3d 146 (3d Cir. 2000) ..........................................................................20

*Opris v. Sincera Reprod.,*
*Med.*, 2022 WL 1639417 (E.D. Pa. May 24, 2022) .........................................12

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015) ..................................................................... 35, 40

*Oswego Laborers' Local Pension Fund v. Marine Midland Bank*,
647 N.E.2d 741, 745 (N.Y. 1995) ...................................................................36

*Polk v. Del Gatto, Inc.*,
2021 WL 3146291 (S.D.N.Y. July 23, 2021) ...................................................41

*Ponzio v. Mercedes-Benz USA, LLC*,
447 F. Supp. 3d 194 (D.N.J. 2020)..................................................................45

*Ramirez v. STi Prepaid LLC*,
644 F. Supp. 2d 496 (D.N.J. 2009)..................................................................43

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023) .............................................................39

*Robinson v. Vivirito*,
217 N.J. 199 (2014) .........................................................................................10

*Roche Diagnostics Corp. v. Smith*,
2022 WL 4596720 (D.N.J. Sept. 30, 2022).......................................................22

*Sackin v. TransPerfect Glob., Inc.*,
278 F. Supp. 3d 739 (S.D.N.Y. 2017) ........................................................ 14, 34

*Salas v. Acuity-CHS, LLC*,
2023 WL 2710180 (D. Del. Mar. 30, 2023)............................................... 32, 34

*Shelton v. Restaurant.com, Inc.*,
70 A.3d 544 (N.J. 2013) ....25

*Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*,
2010 WL 1799456 (D.N.J. May 4, 2010) ....29

*Snowdy v. Mercedes-Benz USA, LLC*,
2024 WL 1366446 (D.N.J. Apr. 1, 2024)....45

*Spencer Forrest, Inc. v. Folica, Inc.*,
2008 WL 11383456 (D.N.J. June 27, 2008) ....31

*Strachan v. John F. Kennedy Mem'l Hosp.*,
538 A.2d 346 (N.J. 1988) ....10

*Stutman v. Chem Bank*,
731 N.E.2d 608 (N.Y. 2000) .... 35, 36

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ....44

*United Jersey Bank v. Kensey*,
704 A.2d 38 (N.J. Super. Ct. App. Div. 1997).... 12, 13

*Wallace v. Health Quest Sys., Inc.*,
2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ....8, 20

*Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ....44

*Young v. U.S. Dep't of Justice*,
882 F.2d 633 (2d Cir. 1989) ....9

Statutes

15 U.S.C. § 45 .... 14, 15

15 U.S.C. §§ 6801–6809....4

Rules

Federal Rule of Civil Procedure 8(d)....32

<u>Regulations</u>

12 C.F.R. § 1016.10 ....................15
16 C.F.R. § 313.10(a)(1) ....................15
16 C.F.R. § 313 ....................14
16 C.F.R. § 313.3(o)(2)(F) ....................7

<u>Other Authorities</u>

Restatement (Second) of Torts § 302 ....................11
Restatement of the Law, Consumer Contracts § 1 (2024) ....................26

## Introduction

TD Bank, N.A. whose "persistent prioritization of growth over controls" recently led to $3 billion in criminal penalties. Now the bank's profit-first mentality has manifested in a new way—compromising customer privacy. TD secretly installed tracking technology on its website, allowing Meta Platforms to harvest sensitive personally identifiable financial information. Even though Meta could freely use this confidential data for its own purposes, TD prioritized its marketing goals—specifically, expanding its customer base—over its duty to protect customer privacy.

TD's conduct brazenly violated both federal banking privacy laws and its own privacy promises to customers. When customers like Jeffrey Stevens logged into TD's platform to check their accounts or apply for loans, TD enabled Meta to capture their every move. The tracking technology transmitted detailed records of customers' banking activities, including unique identifiers linking customers to the financial institution, the banking products they viewed or selected, and their complete pattern of account interactions. All this sensitive financial data flowed directly to Meta without any customers' knowledge or consent.

Stevens therefore brings this class action to hold TD accountable. He alleges violations of statutory and common law including: (1) negligence; (2) negligence per se; (3) unjust enrichment; (4) breach of confidence; (5) breach of contract; (6)

breach of implied contract; and (7) a violation of New York General Business Law Section 349 (and similar consumer protection laws). TD's motion to dismiss largely ignores its own affirmative conduct in installing the tracking device so it can hide behind cases about protecting customers from third party actors. But Stevens' well-pleaded allegations support the obvious—a bank cannot trade its customers' private financial information for marketing purposes (especially when it tells them it won't do so). The Court should deny TD's motion to dismiss in its entirety.

**Background**

TD operates an online financial services platform—www.td.com—where its customers can access their account information and apply for financial products.[1] ECF No. 1 ¶ 2. TD installed a hidden tracking technology on the website called the Facebook Tracking Pixel. *Id.* ¶ 23. This tracking technology collected data on customers' use of TD's platform and disclosed that information to a third-party marketing company named Meta Platforms, Inc. *Id.* ¶¶ 3–4. It functions by secretly compelling users' web browsers to transmit certain files containing information on

[1] Because the complaint relies on TD's website, Stevens agrees with TD that the Court may consider it in resolving the motion to dismiss. ECF No. 18-3 at 14 n.1; *see also Melzer v. Johnson & Johnson Consumer Inc.*, 2023 WL 3098633, at *1 n.1 (D.N.J. Apr. 26, 2023) (considering websites cited in the complaint where, as here, they were "integral to or explicitly relied upon in the complaint on a motion to dismiss" (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

each user's identity and browsing history, called "cookies," to Meta. *See id.* ¶¶ 20–21.

The information TD disclosed to Meta included: (1) data identifying the individual customer using TD's platform, including a unique identifier referred to as a "Facebook ID," which identified the specific user interacting with TD's platform, and data identifying the customer's web browser, *id.* ¶¶ 24, 32; (2) the URL of the specific web pages the user visited, which include descriptive titles identifying the information the user requested and disclosed the financial services the user was obtaining, *id.* ¶¶ 25(a), 32; (3) data showing the financial products the user added to their "cart," which also disclosed the financial services the user was obtaining, *id.* ¶¶ 25(b), 32; and (4) data showing the buttons the user clicked on TD's platform, which is information TD obtained from the customer in connection with providing financial products and services, *id.* ¶¶ 25(c), 32. Collectively, this information permitted Meta (and anyone else who received it) to identify each specific user as a TD customer and identify the financial services the customer viewed, interacted with, or purchased on TD's financial services platform. *Id.* ¶ 26.

TD and Meta profited from TD's disclosure of bank customers' personal information. *Id.* ¶ 22. TD profited because Meta used the information to optimize TD's marketing, including to create profiles of TD's customers and "custom audiences" for TD's marketing across the internet. *Id.* ¶¶ 15–16, 27. Meta, in turn,

profits by selling TD more advertising, and by using the data on TD's customers to optimize its product offerings. *Id.* ¶ 22.

The complaint alleges that these disclosures violated, among other laws, the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801–6809 (GLBA). *Id.* ¶¶ 7, 32–36. Under the GLBA, financial institutions like TD are prohibited from disclosing a consumer's "personally identifiable financial information" without advance notice and opt-out rights. *Id.* ¶¶ 6, 28–30. Personal financial information includes, among other things, any information a consumer provides to obtain a financial product or service, and any information a financial institution obtains about a customer in connection with providing a financial product or service. *Id.* ¶¶ 6, 31. The GLBA includes specific examples of protected personal financial information that are indistinguishable from the information TD disclosed to Meta here, including, among other things: (1) "[t]he fact that an individual is or has been one of [the financial institution's] customers or has obtained a financial product or service from [the financial institution]"; (2) "any information [a financial institution] collect[s] through an Internet 'cookie' (an information collecting device from a web server)"; and (3) "any information that … [the financial institution] . . . obtain[s] in connection with . . . servicing a credit account." *Id.*

Stevens is a TD customer. *Id.* ¶ 12. He used TD's online financial services platform to access and service his bank account. *Id.* Each time he did so, his

interactions with TD's platform were tracked and disclosed to Meta in the manner described above. *Id.* Through that systematic and automatic process, TD sent Meta (1) information identifying Stevens as a TD customer, (2) information collected through internet cookies, and (3) information TD obtained while servicing Stevens's account. *Id.*

Stevens did not consent to these disclosures. *Id.* And had Stevens known that TD was sharing his personal financial information with Meta every time he accessed his account online, he would have used another bank that provided superior terms of service, including higher interest rates. *Id.* ¶¶ 11–12.

## Argument

### I. Stevens alleges that TD disclosed his personal financial information to a third party.

Stevens alleges TD installed tracking technology on its website that was designed to identify every customer who visits the website and capture extensive information about their visit. Under the GLBA, protected financial information includes, among other things, (1) the fact that an individual is or has been a TD customer; (2) any information that reveals an individual is a TD customer; (3) any information that TD obtains in servicing a customer's account; and (4) any information that TD collected through online cookies. *Id.* ¶ 31(c). But TD disclosed this information to Meta each time Stevens accessed his authenticated banking portal. *Id.* ¶ 12.

Indeed, TD shared with Meta: (1) Stevens' Facebook ID, which personally identifies him; alongside (2) URLs identifying the pages he views, event data identifying any credit products he selects or applies for, and where he clicked on the website. *Id.* ¶¶ 24–25. So TD revealed that Stevens is a customer and shared information it obtained servicing his account, including information collected through online cookies. As a result, Stevens adequately pleads TD shared "specific personal information" about him to Meta. ECF No. 18-3 at 22.

Yet TD suggests Stevens must allege the specific pages he viewed on the website. That is not a requirement at this stage. *See Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (citing *Martinez v. D2C, LLC*, 2023 WL 6587308, at *3 (S.D. Fla. Oct. 10, 2023) (having "no difficulty concluding that alleging, generally, that a defendant disclosed the [the private content] is sufficient")). To the contrary, TD's own case proves Stevens adequately pled the capture of personal information. ECF No. 18-3 at 23 (citing *Kane v. University of Rochester*, 2024 WL 1178340, at *14 (W.D.N.Y. Mar. 19, 2024)). In *Kane*, "although plaintiffs alleged that the defendant also uses the Pixel to track user activity within the Portal, the plaintiffs did not identify the information from within the portal that the Pixel transmitted to Facebook." 2024 WL 1178340, at *14 (cleaned up). Even so, the court denied the defendant's motion to dismiss the

plaintiffs' express contract, unjust enrichment, bailment, GBL § 349, and Wiretap Act claims. *Id*. at *17.

Besides, none of TD's cases involved the collection of information specifically covered by a federal statute. *See* ECF No. 18-3 at 23. In *Hartley*, the plaintiff only alleged the defendant collected the dates and times she opened a promotion email—nothing like the protected financial information captured here. *Hartley v. Urb. Outfitters, Inc.*, 2024 WL 3445004 (E.D. Pa. July 17, 2024). And unlike TD's healthcare tracking cases, federal regulations explicitly define personal information to include data collected through an internet cookie. *See* ECF No. 1 *Id.* ¶ 31(c) (citing 16 C.F.R. § 313.3(o)(2)(F)). Because TD allowed Meta to collect Stevens' information through such an internet cookie, it allowed Meta to collect personal financial information.

## II. New Jersey law applies to all of Stevens's common-law claims except breach of confidence, which is governed by New York law.

Stevens does not dispute the New Jersey law applies to his common-law claims, except for his breach of confidence claim, which is properly stated under New York law. Stevens agrees with the framework that TD describes to analyze conflict of laws in this forum but disagrees with the outcome of its analysis because there is a conflict between New Jersey and New York for the breach of confidence claim. TD recognizes New Jersey—unlike New York—lacks an independent claim for breach of confidence. ECF No. 18-3 at 20-21. But it contends there is no conflict

because New York does not recognize breach-of-confidence claims outside of protecting a patient's medical information. *Id*. at 20. TD is wrong.

To state a claim for breach of confidence under New York law, "a plaintiff must plead: (i) the defendant assumed a duty of confidentiality, (ii) the defendant intentionally, knowingly, or negligently breached that duty, and (iii) the plaintiff was damaged as a result of that breach." *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *12 (S.D.N.Y. Mar. 23, 2021). Indeed, at least one New York court has extended this duty to an insurance company "to safeguard . . . clients' personal and confidential information." *Daly v. Metro. Life Ins. Co.*, 4 Misc. 3d 887, 892 (Sup. Ct. N.Y. Cty. 2004). And relying on *Daly*, the Southern District of New York has sustained a breach of confidence claim against *a bank* where the "plaintiff was required to provide certain information . . . to open her account, and [the bank] represented that it would safeguard that information." *Jones v. Com. Bancorp, Inc.*, 2006 WL 1409492, at *3 (S.D.N.Y. May 23, 2006) (analyzing breach of confidence as a species of breach of fiduciary duty).

Here, TD assumed a duty of confidentiality for the same reason as in *Jones*. Stevens alleges that he is a TD customer who provided his financial information to TD online. ECF No. 1, ¶ 12. And TD breached that duty because it disclosed his confidential financial information to third parties without his consent, causing him

damages. *Id.*; *see also Kane*, 2024 WL 1178340, at *12 (sustaining breach of confidence claim based on online tracking technology).

Although TD presents two cases recognizing breach of confidence claims under New York law for failing to protect patient medical information, neither case purported to limit breach of confidence claims to this relationship. ECF No. 18-3 at 9 (citing *In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *3 (S.D.N.Y. Feb. 24, 2022) (refusing to extend claim to employer-employee relationship); *Kane*, 2024 WL 1178340, at *12 (sustaining breach of physician-patient confidentiality claim)). The Second Circuit has cautioned against the very limitation TD advances: "[t]he breach-of-confidence theory may be applicable to a wide spectrum of associations;" and the "bank-customer relationship[]" is a quintessential example. *Young v. U.S. Dep't of Justice*, 882 F.2d 633, 640–41 (2d Cir. 1989).[2]

[2] TD argues in a footnote that New Jersey has the most significant relationship to Stevens's breach-of-confidence claim without articulating why, beyond implying perhaps that TD's website is operated from its principal place of business in New Jersey—a factual assertion that does not appear in the Rule 12 record. ECF No. 18-3 at 20 n.2. The argument is also waived because it is presented in a footnote only. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").

## III. Stevens states valid negligence claims.

Stevens adequately alleges claims for negligence.[3] To do so, he must allege duty, breach, causation, and damages—that is, "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Robinson v. Vivirito*, 217 N.J. 199, 208, 86 A.3d 119, 124 (2014). Stevens sufficiently alleges that TD breached a duty owed to him under both common law and negligence per se principles causing him injury.

### A. Stevens adequately alleges that TD breached its common-law duty to protect its customers' personal information.

Whether a duty exists is a threshold legal question for the Court. *Strachan v. John F. Kennedy Mem'l Hosp.*, 538 A.2d 346, 349 (N.J. 1988). To decide, New Jersey courts typically "first consider the foreseeability of harm to a potential

[3] At the outset, TD asserts in a footnote that if the court finds a contract exists between the parties, the economic-loss rule will bar Stevens's tort claims. ECF No. 18-3 at 32–33 n.5. Because TD fails to adequately present this argument, it is waived. *See John Wyeth & Bro.*, 119 F.3d at 1076. In any event, TD is incorrect. For one thing, TD is part of an "identifiable class that [TD] should have reasonabl[y] foreseen was likely to be injured by [its] conduct." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *16 n.29 (D.N.J. Dec. 16, 2021) (quoting *Lone Star Nat. Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 426 (5th Cir. 2013) (applying New Jersey law)). And for another, "[t]he duty to maintain and protect sensitive data with reasonable care," as explained below, "'exists independently from any contractual obligations between the parties.'" *In re Wawa, Inc. Data Sec. Litig.*, 2021 WL 1818494, at *4 (E.D. Pa. May 6, 2021) (quoting *Dittman v. UPMC*, 196 A.3d 1036, 1056 (Pa. 2018)).

plaintiff and then analyze whether accepted fairness and policy considerations support the imposition of a duty." *Jerkins v. Anderson*, 922 A.2d 1279, 1284 (N.J. 2007) (citations omitted). Foreseeability, in the duty context, "refers to 'the knowledge of the risk of injury to be apprehended.'" *Id.* (quoting *Clohesy v. Food Circus Supermarkets, Inc.*, 694 A.2 1017, 1021 (N.J. 1997)).

Stevens plausibly alleges that TD owed him a duty of care. TD affirmatively collected and stored Stevens's sensitive personal information. ECF No. 1 ¶¶ 24–25, 32; *see also* Restatement (Second) of Torts § 302 cmt. a (Am. L. Inst. 1965) ("In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable [and foreseeable] risk of harm to them arising out of the act.").[4] And TD knew—or at very least, should have known—that embedding the tracking technology on its website would disclose this sensitive information to Meta. ECF No. 1 ¶ 58. TD's affirmative conduct thus exposed Stevens to foreseeable harm that TD was uniquely positioned to prevent, as TD "alone could have ensured that it did not disclose the nonpublic personal information . . . without its customers' consent." *Id.* ¶ 52. So by affirmatively collecting and storing its customers' personal information, TD assumed a duty to

[4] *See Dittman v. UPMC*, 196 A.3d 1036, 1046 (Pa. 2018) (applying Pennsylvania law and noting that fairness factors, which largely mirror New Jersey's fairness factors, are less relevant in cases "involving application of an existing duty [such as this common-law one] to a novel factual scenario," rather than "the imposition of a new, affirmative duty").

exercise reasonable care to protect that information. *Id.* ¶¶ 53–54; *see also Dittman*, 196 A.3d at 1046 (holding that defendants who affirmatively collect and store personal information owe a duty to exercise reasonable care); *Opris v. Sincera Reprod. Med.*, 2022 WL 1639417, at *5 (E.D. Pa. May 24, 2022) (finding duty existed where defendant "affirmatively collected and stored sensitive [personal information] received from [p]laintiffs").

The relevant fairness and policy considerations also support imposing this duty on TD. When evaluating such considerations, New Jersey courts look to, among other things, "the relationship of the parties" and "the public interest in the proposed solution." *Coleman v. Martinez*, 254 A.3d 632, 643 (N.J. 2021) (quoting *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1116 (N.J. 1993)). TD contends that both factors weigh in its favor. TD is wrong.

Start with the parties' relationship. TD argues that it does not have a special relationship with its customers. But New Jersey courts have long recognized that a duty between a bank and a customer may arise when the bank "knows or has reason to know that the customer is placing his trust and confidence in the bank and [is] relying on the bank . . . to counsel and inform him." *Bank of Am., N.A. v. Westheimer*, 683 F. App'x 145, 149 (3d Cir. 2017) (alteration and omission in original) (quoting *United Jersey Bank v. Kensey*, 704 A.2d 38, 45 (N.J. Super. Ct. App. Div. 1997)). Here, TD provided its customers with a privacy notice that states it would "not share

[customers' personal information] with nonaffiliates so they can market to [customers]." ECF No. 1 ¶ 106 (first alteration in original). Given this representation, TD should have known that customers like Stevens would place "trust and confidence" in the bank to keep its word and rely on it to safeguard their personal information. *Id.* (quoting *United Jersey Bank*, 704 A.2d at 45); *see also Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2023 WL 7017734, at *5 & n.5 (E.D. Pa. Oct. 10, 2023) (finding existence of "duty of care via . . . [defendant's] privacy policies" plausible because defendant "knew or should have known" plaintiffs would rely on its own "representations about how it would handle their personal information").

The public interest also weighs in favor of finding a duty. In an era where personal information is increasingly valuable and vulnerable, protecting unauthorized disclosures is vital to maintaining privacy and preventing unwanted use of sensitive information. The public has a strong interest in safeguarding the personal and sensitive information collected and stored by banks like TD. And as the New Jersey Supreme Court has put it, "[w]hen, as here, the burden on a defendant is low in relation to the potential harm posed, imposition of duty is fair and appropriate." *Coleman*, 254 A.3d at 652. "Potential liability in the absence of reasonable care" will also provide financial institutions "with an economic incentive

to act reasonably in protecting" customers' personal information. *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 748 (S.D.N.Y. 2017).

At the very least, without the benefit of further evidence about the relationship between the parties, the Court shouldn't "close th[e] door" on Stevens's negligence claim at this stage. *Murphy*, 2023 WL 7017734, at *5.

### B. Stevens adequately alleges that TD breached a statutory duty.

Stevens also sufficiently pleads negligence per se. To assert negligence per se, a plaintiff must typically show "that the defendant violated a statute that was designed to protect a class of individuals to whom the plaintiff belonged." *Gorodeski v. U.S. Bank Nat'l Ass'n*, 2016 WL 111422, at *5 (D.N.J. Jan. 11, 2016). "The violation of federal statutes and regulations is commonly given negligence *per se* effect in state tort proceedings." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005).

Stevens plausibly alleges that TD violated the GLBA Privacy Rule, 16 C.F.R. § 313, and Section 5 of the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45. The GLBA Privacy Rule prohibits financial institutions from disclosing, directly or through an affiliate, "any nonpublic personal information about a consumer to a nonaffiliated third party" unless, among other things, (1) the financial institution provides the consumer with a "clear and conspicuous notice that accurately reflects [the institution's] privacy policies and practices" and (2) the consumer does not opt

out of the disclosure. 16 C.F.R. 313.10(a)(1); 12 C.F.R. § 1016.10. 313.4. And Section 5 of the FTCA prohibits "unfair . . . acts or practices in or affecting commerce," including the failure to keep nonpublic personal information confidential. 15 U.S.C. § 45(a)(1); *see also* ECF No. 1 ¶ 38 ("The [FTC] has interpreted Section 5 of the [FTCA] to include compliance with the GLBA Privacy Rule.").[5] Stevens alleges that TD violated these laws by "disclosing [Stevens's] and class members' nonpublic personal information to Meta without the required notice" and consent. ECF No. ¶¶ 36, 39, 65. While TD provided a notice, it misrepresents its privacy policies and practices, falsely stating that "[t]he TD Bank Companies do not share [customers' personal information] with nonaffiliates so they can market to you."[6] *Id.* ¶ 35 (second alteration in original). Stevens also plausibly alleges that he and the class members are consumers within the class of individuals the laws aim to protect. *Id.* ¶ 68.

Contrary to TD's argument, then, Stevens' negligence per se claim here is proper under New Jersey law because it "further[s] the purpose and assure[s] the

---

[5] *See How to Comply with the Privacy of Consumer Financial Information Rule of the Gramm-Leach-Bliley Act*, FTC (last visited Dec. 13, 2024), https://www.ftc.gov/business-guidance/resources/how-comply-privacy-consumer-financial-information-rule-gramm-leach-bliley-act ("The FTC may bring enforcement actions [under Section 5 of the FTC Act] for violations of the Privacy Rule.").

[6] TD baldly asserts that Stevens fails to identify how TD's conduct violated which portion of the GLBA and FTCA, ECF No. 18-3 at 29, but these allegations do just that.

effectiveness of" the federal provisions TD violated. *L.S. v. Mount Olive Bd. of Educ.*, 765 F. Supp. 2d 648, 666 (D.N.J. 2011) (cleaned up); *see also Alloway v. Bradlees, Inc.*, 157 N.J. 221, 236 (N.J. 1999). In fact, courts across the country routinely allow negligence per se claims based on violations of the GLBA's implementing rules and the FTC Act. *See, e.g.*, *In re Capital One Consumer Data Sec. Breach Litig*., 488 F. Supp. 3d 374, 407 (E.D. Va. 2020) (collecting cases and sustaining FTCA claim brought under New York law); *Charlie v. Rehoboth McKinley Christian Health Care Servs.*, 2022 WL 1078553, at *9–10 (D.N.M. Apr. 11, 2022) (permitting negligence per se claim brought under New Mexico law and based on FTCA); *First Choice Fed. Union v. Wendy's Co.*, 2017 WL 9487086, at *4 (W.D. Pa. Feb. 13, 2017) (same, applying Pennsylvania law); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1174 (N.D. Ga. 2019) (allowing negligence per se claim brought under Georgia law and based on GLBA implementing rule).

But ultimately, the Court need not rule on the viability of this alternative negligence theory at the motion-to-dismiss stage. *See In re Wawa*, 2021 WL 1818494, at *7. Instead, "a motion for summary judgment or pre-trial motion practice would be a more appropriate vehicle 'to analyze the applicability of the FTC[A and the GLBA] as . . . predicate[s]" for a negligence per se claim under New

Jersey law. *Id.* (quoting *In re Rutter's Inc. Data Sec. Breach Litig.*, 2021 WL 29054, at *11 (M.D. Pa. Jan. 5, 2021)).

### C. Stevens adequately alleges he suffered an injury.

TD contends that Stevens's allegations of harm due to Stevens's negligent conduct are conclusory. ECF 18-3 at 18-20. That is not accurate.

To begin, the injury analysis is essentially coterminous with the injury-in-fact analysis under Article III. *See In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *16 (D.N.J. Dec. 16, 2021) (referring to injury-in-fact analysis to support negligent harm finding). Stevens advances two theories of harm based on the non-consensual disclosure of his confidential information: (1) TD's non-consensual disclosure of Stevens's confidential personal financial information, which impaired his right to control the disclosure of that information; and (2) TD's failure to pay Stevens for the value of the information that was taken (and used by TD for pecuniary purposes) without his consent. E.g., ECF 1 ¶¶ 60-62. Each of these theories has been recognized under similar circumstances in many cases. *See*, *e.g.*, *Murphy*, 2024 WL 4350328, at *6 ("Plaintiffs have sufficiently pleaded that the disclosure of Plaintiffs' IIHI to Meta to allow Defendant and Meta to tailor advertisements on their respective web properties impaired Plaintiffs' control over their IIHI, and would not have occurred without Defendant's installation of Meta's Collection Tools MyJeffersonHealth"); *In re Facebook, Inc.*

*Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) ("Plaintiffs have adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information."); *In re GEICO Customer Data Breach Litig.*, 2023 WL 4778646, at *11 (E.D.N.Y. July 21, 2023), *report and recommendation adopted*, 691 F. Supp. 3d 624 (E.D.N.Y. 2023) ("An individual's control of information concerning her person—the privacy interest the [Plaintiffs] claim here—was a cognizable interest at common law"); *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 802 (N.D. Cal. 2022) (collecting cases on the value of consumer data); *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *4 (W.D. Wash. Dec. 19, 2023) (sufficiently "alleges that her personal data carries financial value"); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) ("Here plaintiffs have adequately pled that the personal identifying information collected by Marriott has value. Plaintiffs allege that Marriott recognizes the value of this information and collects it to better target customers and increase its profits."). Here, by having his confidential data disclosed without his consent, Stevens lost control over his data (a cognizable injury unto itself). And by virtue of TD not paying Stevens for the use of his confidential data prior to using it for TD's marketing purposes, Stevens was separately deprived of the value of his data (an independent injury).

While TD calls Stevens's allegations conclusory (ECF 18-3 at 19), they are more than sufficient to put TD on notice of the claims and injuries at issue. That is all that is required under the Federal pleading rules. It does not matter, as TD appears to suggest, that Stevens has not quantified the economic amount of those injuries at the pleading stage. *See*, *e.g.*, *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir. 2024) ("That [plaintiff's] alleged injuries are difficult to quantify is irrelevant."); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 287 (3d Cir. 2018) ("a plaintiff need not develop detailed economic models at the pleading stage"). That said, Stevens in fact goes beyond what is required at Rule 12 by further pleading how to measure the economic loss (e.g., paying Stevens a reasonable royalty). ECF 1 ¶ 62. TD criticizes his request for a royalty on the grounds that the information TD took was not intellectual property (another area of law in which a reasonable royalty is an appropriate measure of damages). ECF 18-3 at 19-20. But theft of intellectual property is not the only type of claim that can be redressed via a reasonable royalty. In any event, whether it is called a "reasonable royalty" or the "value of the information that TD took from Plaintiff without paying for it," the complaint puts TD on notice of the injuries at issue, and Stevens will quantify the exact amount of his damages during expert discovery. *Johnson & Johnson*, 903 F.3d at 287 (plaintiffs are not required to "allege the exact value of [their] economic injury at the pleading stage").

## IV. Stevens states a valid claim for unjust enrichment.

A plaintiff plausible pleads an unjust enrichment claim when "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Kane*, 2024 WL 1178340, at *15 (quoting *Wallace*, 2021 WL 1109727, at *11) (New York law).[7] Where a consumer alleges that he bargained for privacy when using a defendant's website, disclosing the consumer's private information via tracking technology installed on the website "denie[s the consumer] the benefit of [his] bargain." *Id.* That is "the essence" of what Stevens alleges here. ECF No. 1 ¶¶ 23–39; *Kane*, 2024 WL 1178340, at *15. *See also Murphy*, 2024 WL 4350328, at *7 (similar holding under Pennsylvania law).

TD argues that Stevens failed to allege that (1) TD benefited from disclosing his private information; (2) the benefit came at Stevens's expense; (3) it would be unjust for TD to retain the benefit; or (4) Stevens expected remuneration. Each argument fails.

---

[7] Because TD argues that there is no actual conflict between New York and New Jersey unjust-enrichment law, ECF No. 18-3 at 8–9, the Court may, as TD's case *Acquino v. Subaru of Am., Inc.*, shows, "refer interchangeably to the laws of [relevant states] in discussing the law applicable to the case," 2024 WL 124627, at *6 (D.N.J. Jan. 11, 2024) (quoting *On Air Ent. Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 2000)). To the extent the Court finds that there is an actual conflict, then New York law should apply.

TD received a benefit "in the form of enhanced advertising services and more cost-efficient marketing on Facebook." *Kane*, 2024 WL 1178340, at *15; *see also Murphy*, 2024 WL 4350328, at *7 ("Defendant may have received the benefit of this targeted advertisement"); ECF No. 1 ¶¶ 15-16, 22, 25.c., 79. TD labels Stevens' allegations conclusionary because it argues he did not allege the disclosure of *his* personal information. ECF No. 18-3 at 21–22. But this argument fails for the same reason Stevens adequately alleged the disclosure of personal information, discussed above in Section I. In *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *18, by contrast, the court expressly recognized plaintiffs failed to plead a benefit through targeted advertising.

TD argues that Stevens failed to plead the value of his personal information was diminished, ignoring the independent basis that Stevens was "denied the benefit of the bargain" because he bargained for privacy he did not receive. *Kane*, 2024 WL 1178340, at *15; *see also, e.g.*, ECF No. 1 ¶¶ 75–76. TD's caselaw on diminished value is irrelevant for that reason.[8]

---

[8] While it is unnecessary to engage with TD's argument on diminishing value of personal information since the benefit-of-the-bargain rationale is sufficient, there is no inconsistency, as TD contends, between pleading the value of Stevens's personal information has been diminished and alleging the value of Stevens's personal information can be established by reference to a patent rights holder who is entitled to a reasonable royalty from a non-practicing patentee infringer. A reasonable royalty does not negate the possibility of diminished value of a patent (or data for that matter).

TD's unjust retention argument mirrors its argument that TD adequately disclosed its use of tracking technology and that Stevens consented. That argument is meritless for reasons discussed below.

Finally, TD's remuneration argument fails because Stevens pleads he bargained for privacy from TD that he did not receive, unlike in TD's case, *Atlas Commc'ns Tech., Inc. v. DXC Tech. Servs., LLC*, where the claim failed because value was exchanged with a third party, not the defendant. 2020 WL 5105197, at *4 (D.N.J. Aug. 31, 2020)).

In any event, it is premature to dismiss unjust enrichment claims at the pleading stage. *See Roche Diagnostics Corp. v. Smith*, 2022 WL 4596720, at *17 (D.N.J. Sept. 30, 2022).

**V. Stevens states a valid claim for declaratory relief.**

TD Bank argues that Stevens' claim for declaratory and injunctive relief should be dismissed because he has failed to allege injury as a result of TD Bank's wrongful conduct and, therefore cannot allege an imminent threat of future injury from such conduct. ECF No. 18-3 at 32-33. Not so.

As demonstrated above, *supra* Section III.C, Plaintiff has adequately alleged facts to demonstrate that he was injured as a result of TD Bank's disclosure of his confidential financial information to third-parties without his consent. Plaintiff has also alleged an immediate threat of future injury resulting from TD Bank's unlawful

disclosure because the tracking technology remains operative on its website (¶91) and Plaintiff continues to need to use TD Bank's website to manage his accounts and the financial services provided to him by TD Bank (¶88). These allegations support Plaintiff's ability to pursue declaratory and injunctive relief. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) ("Plaintiffs have demonstrated that absent an injunction, [defendant] will continue to collect users' private browsing data for its own use without users' express consent."); *see also Finesse Express, LLC v. Total Quality Logistics, LLC*, 2021 WL 1192521, *5 (S.D. Ohio Mar. 30, 2021) (finding plaintiffs had standing to seek injunctive relief where plaintiffs alleged the defendant still retained plaintiffs' confidential information and defendant's post-breach security measures were inadequate to protect plaintiffs); *In re Home Depot, Inc. Customer Data Sec. Breach Litig*., 2016 WL 2897520, *4 (N.D. Ga. May 18, 2016) (same); *In re Arby's Rest. Grp. Litig.*, 2018 WL 2128441, at *15 (N.D. Ga. Mar. 5, 2018) ("Plaintiffs made specific allegations that they would be harmed without declaratory relief because Arby's has not taken steps to address their allegedly inadequate security system.").

TD Bank's argument that "Plaintiff has not alleged that he intends to use TD's website in the future while logged into Facebook" is unavailing. MTD at 25. Indeed, the allegations do not limit the unlawful collection and transmission of Stevens' confidential information to such circumstance and, thus, there is no basis—on a

motion to dismiss—for the Court to conclude that Stevens can avoid future injury by simply not logging into Facebook while accessing TD's website.

Last, Stevens's request for declaratory and injunctive relief is not duplicative, as TD Bank suggests. ECF 18-3 at 37. Indeed, Stevens seeks to prevent "future harm from ongoing and future violations before the harm occurs." *In re Adobe Systems, Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1222 (N.D. Cal. 2014). Stevens alleges that TD Bank continues to use the tracking technology and requests that TD Bank disables that function so that Stevens's confidential information is properly secured moving forward. ¶¶ 88-91. This is not duplicative of Stevens's other claims seeking relief for injuries he has already suffered. *See In re Yahoo! Customer Data Security Breach Litig.*, 313 F. Supp. 3d 1113, 1139 (N.D. Cal.) (declaratory relief allowed because contract claims seek retrospective relief and declaratory relief does not). Accordingly, "dismissal of Plaintiff's declaratory judgment claim is unwarranted." *In re Unite Here Data Security Incident Litig.*, No. 24-cv-1565, 2024 WL 3413942, at *14 (S.D.N.Y. July 15, 2024)

## VI. Stevens states a valid claim for breach of an express contract.

Stevens alleges a plausible breach of contract claim against TD. To do so, he must allege that "the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract[,] and that the plaintiff sustained damages as a result." *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466,

469 (3d Cir. 2019) (quoting *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Ct. App. 2007)). A valid contract requires an "offer, acceptance, consideration, and performance by both parties." *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 556 (N.J. 2013)). Stevens satisfies each of these elements.

### A. Stevens adequately alleges he entered into a contract with TD.

Stevens plausibly alleges he formed a contract with TD that incorporated the privacy notice. His use of the website required him to agree to TD's Digital Platforms Terms of Use, which "constitute[d] an agreement between any person who accesses or uses the Digital Platforms . . . and TD."[9] Those terms provided that his "use of the Digital Platforms, and [TD's] collection and use of [his] information, [was] subject to [TD's] Online Privacy Code and Privacy Notice(s) provided on the Digital Platforms."[10] *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1331–32 (N.D. Ga. 2019) (concluding that merger clause in terms of use did not bar plaintiffs' claims and assuming the terms incorporated defendant's privacy policy by reference, as they stated they were "'[s]ubject to the conditions

[9] TD Bank, *Digital Platforms Terms of Use* 1 (2024), https://www.td.com/content/dam/tdb/document/pdf/personal-banking/td-website-terms-of-use-en.pdf.

[10] *Digital Platforms Terms of Use*, *supra* note 2, at 9.

described on the privacy page'" (alteration in original) (quoting terms of use)).[11] Stevens therefore provided personal information in exchange for using its website and receiving its financial services—"subject to [TD's privacy n]otice." ECF No. 1 ¶ 107; *see also id.* ¶¶ 52–53, 114. At any rate, TD contends the contract is not valid for three reasons. None has merit. *See* Restatement of the Law, Consumer Contracts § 1 (2024) ("The conclusion was that the *JetBlue* approach, which held that privacy notices can create contractual obligations, is the dominant jurisprudence in this area.").

First, TD argues the privacy notice is a unilateral statement of company policy. ECF No. 18-3 at 39–40. It points to language in the privacy notice which states that it "does not constitute a contract" or "modify or amend any agreement" with customers. *Id.* at 40 (emphasis omitted). But Stevens does not assert the privacy notice is a standalone, independent contract. Instead, he contends the privacy notice is incorporated into the broader agreement governing his use of TD's website and services. *See Dolmage v. Combined Ins. Co. of Am.*, 2016 WL 754731, at *7–9 (N.D.

---

[11] *See also Citizens Prop. Ins. Corp. v. European Woodcraft & Mica Design, Inc.*, 49 So. 3d 774, 778 (Fla. Dist. Ct. App. 2010) ("A document must be considered incorporated by reference where the incorporating document specifically provides that it is *subject to* the incorporated document." (quoting *Hurwitz v. C.G.J. Corp.*, 168 So. 2d 84, 86 (Fla. Dist. Ct. App. 1964))); *D&B II Eters. LLC v. Universal Tax Sys., Inc.*, 2018 WL 1561727, at *7 (N.D. Ill. Mar. 31, 2018) (holding that contract incorporated another unexecuted agreement by reference because it "state[d] that the parties [were] 'subject to' that agreement").

Ill. Feb. 23, 2016) (holding that a privacy policy need not independently meet all contract requirements when a plaintiff does not "seek[] to enforce [it] as an independent contract," and distinguishing *Dyer v. Northwest Airlines Corps.*, 334 F. Supp. 2d 1196 (D.N.D. 2004), a case relied on by TD, on this basis); *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 801 (W.D. Wis. 2019) (same). Because under Stevens' interpretation the privacy notice simply supplements the contract, it aligns with the privacy notice's modification clause. *Cf Mercury Indem. Co. of America v. Viereck*, 2010 WL 1981788, at *3 (D.N.J. May 17, 2010) ("[I]t is well settled in New Jersey that where a contract term drafted in a form agreement for consumer insurance is ambiguous, the term should be interpreted against the drafter.").

Second, TD argues the privacy notice is not enforceable because it only reflects preexisting legal duties under the GLBA. ECF No. 18-3 at 39. But the GLBA requires only that financial institutions disclose their policies and practices—it "does not dictate what the terms of the privacy policy must be." *Meyer v. Christie*, 2007 WL 3120695, at *6 (D. Kan. Oct. 24, 2007). Or to use TD's words, the GLBA leaves it up to the institutions to "choose how they share [their customers'] personal information."[12] And here, TD chose to promise that it would "not share [a customer's personal information] with nonaffiliates so they can market to [the customer]." ECF

---

[12] TD Bank, *What Do the TD Bank Companies Do with Your Personal Information?* 1 (2022), https://www.td.com/content/dam/tdb/document/pdf/personal-banking/privacy-shareinformation-en.pdf.

No. 1 ¶ 106. On the one hand, TD argues it had a preexisting duty to disclose that it could not share personal information with third parties. And on the other hand, it argues it could share this information. TD cannot have it both ways. *See Meyer*, 2007 WL 3120695, at *6 (rejecting as "without merit" the same "fallac[ious]" argument that TD makes here); *Dolmage*, 2016 WL 754731, at *9 (concluding that provision in privacy policy stating that defendant would "restrict access of insureds' personal information" in a specific manner did not constitute a preexisting legal duty).

Third, TD maintains Stevens must rely on the privacy policy to establish a contract. *See* ECF No. 18-3 at 40. But he need not allege reliance because he does not assert the notice itself constitutes a contract. *See Dolmage*, 2016 WL 754731, at *6–7 (holding that reliance unnecessary where the plaintiff does not seek to enforce privacy policy "as a stand-alone contract," and noting that reliance is not a general contract element); *In re Equifax*, 362 F. Supp. 3d at 1332 (same, recognizing that reliance is unnecessary if plaintiff "establish[es] that the [policy] was part of [an] express contract"). And courts routinely enforce consumer contracts even when they go unread. *McKenna v. Metropolitan Life Ins. Co.*, 126 F. App'x 571, 574 (3d Cir. 2005).

Even if reliance were necessary, Stevens adequately alleges it. Although the complaint does not explicitly state that Stevens read the privacy notice, it alleges that he provided TD his personal information "subject to the [n]otice" and would not

have done so "if he had known [it] would share his personal information with Meta." ECF No. 1 ¶¶ 107, 12. Thus, he plausibly pleads reliance. *See Smith v. Trusted Universal Standards in Elec. Transactions, Inc.*, 2010 WL 1799456, at *9 (D.N.J. May 4, 2010) (finding reliance adequately alleged despite no explicit claim that plaintiff read the policy, based solely on general allegations that plaintiff was a customer and that the policy appeared on defendant's website); *In re JetBlue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 325–26 (E.D.N.Y. 2005) (holding that plaintiffs need not "specifically allege" they read a privacy policy to show reliance at the pleading stage).

### B. Stevens adequately alleges TD breached the contract.

The privacy notice promised that TD would "not share [customers' personal information] with nonaffiliates so they can market to [customers]." ECF No. 1 ¶ 106 (first alteration in original). Yet TD did just that: it disclosed Stevens's personal information to Meta, a nonaffiliate, for marketing purposes. *Id.* ¶ 108. Stevens thus plausibly alleges TD breach a valid contract. *See, e.g.*, *Kane*, 2024 WL 1178340, at *8–9 (sustaining contract claim on substantially similar facts).

Despite TD's insistence elsewhere that documents must be viewed as a whole, ECF No. 18-3 at 47, it disputes whether it breached this contract based on just one sentence in the complaint. *Id.* at 41. There, Stevens alleges that TD "share[d] its customers' personal information with Meta so that *TD* . . . can market to consumers."

ECF No. 1 ¶ 35 (emphasis added). TD uses this sentence to assert there is no breach because the privacy notice merely prohibits TD from sharing customers' personal information with nonaffiliates so that *they*—the nonaffiliates—"can market to [customers]." *Id.*

Stevens alleges, however, that TD "breached its agreement . . . by disclosing [his] nonpublic personal information . . . to [Meta] for marketing purposes." *Id.* ¶ 108. He also alleges that Meta uses this information not just "to create custom audiences for TD to use for marketing" but also "to benefit Meta itself." *Id.* ¶ 3. For instance, Meta uses the information to "create custom audience sets that can be shared with *other* advertisers," help those advertisers "reach people with transactional and other commercial messages" on Meta, and "personalize the features and content (including ads and recommendations)." *Id.* ¶ 22 (emphasis added). These allegations reach far beyond TD's narrow reading of the complaint, and they plausibly allege that TD breached the parties' contract by disclosing Stevens's personal information so that nonaffiliates could market to him.[13]

[13] Contrary to TD's passing suggestion, whether the complaint alleges that Stevens actually "received ads from nonaffiliates because of the [tracking technology] on TD's website" is immaterial to his contract claim. ECF No. 18-3 at 41 (emphasis omitted). To reiterate, the alleged breach here is TD's disclosure of his personal information to a nonaffiliate for marketing purposes, not Stevens's receipt of ads from a nonaffiliate.

### C. Stevens adequately alleges damages.

Finally, TD argues that Stevens fails to sufficiently allege damages. But once again, TD overlooks the crux of his contract claim: that TD bargained for privacy, and TD failed to deliver. *See* ECF No. 1 ¶¶ 11–12, 109. "New Jersey recognizes benefit-of-the-bargain damages as an appropriate measure of damages in breach of contract cases." *Spencer Forrest, Inc. v. Folica, Inc.*, 2008 WL 11383456, at *6 (D.N.J. June 27, 2008). And Stevens alleges that TD's disclosure of his personal information denied him the benefit of the bargain, stating that he "would have used another bank that paid higher interest if he had known TD Bank would share his personal information with Meta." ECF No. 1 ¶ 12; *see also id.* ¶¶ 11, 109. As a recent decision confirms, these allegations suffice to plead benefit-of-the-bargain damages at this stage. *See Kane*, 2024 WL 1178340, at *15 (finding plaintiff's allegation that they "paid [d]efendant for services that they would not have had they known about [d]efendant's disclosure of their [p]rivate [i]nformation" sufficient to plausibly allege "they lost the benefit of the bargain").[14]

---

[14] *Cf. also, e.g.*, *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 912 (W.D. Mo. 2009) (finding allegations that plaintiffs "purchased a product they . . . would not have purchased had they known the true facts" sufficient to allege benefit-of-the-bargain damages in product-liability case); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017) (same).

In short, Stevens states a plausible claim for breach of an express contract against TD.

## VII. Stevens states a valid claim for breach of an implied contract.

Stevens also alleges, in the alternative, a plausible claim for breach of an implied contract.[15] Under New Jersey law, an implied contract requires the same elements as an express contract. *In re U.S. Vision Data Breach Litig.*, 2024 WL 1975542, at *3 (D.N.J. Apr. 30, 2024). The only difference between the two is that "proof of an implied contract is 'inferred from the conduct of the parties' rather than any verbal or written expression." *Id.* (quoting *Fittipaldi v. Monmouth Univ.*, 2021 WL 2210740, at *4 (D.N.J. June 1, 2021)).

Seeking to dismiss Stevens's implied-contract claim, TD argues that he fails to allege mutual assent. *See* ECF No. 18-3 at 43–44. It notes that "courts have consistently held that the fact that a defendant required plaintiffs to provide personal information does not alone support the inference that the parties agreed for the

---

[15] TD asserts in a footnote that if this court determines Stevens states a viable express-contract claim, it should dismiss his implied-contract claim because the two claims are mutually exclusive (and vice versa). ECF No. 18-3 at 43. TD is wrong. Under Federal Rule of Civil Procedure 8(d), a party may plead "multiple claims regardless of consistency." *18 KT.TV, LLC v. Entest Biomedical, Inc.*, 2011 WL 5374515, at *5 (M.D. Pa. Nov. 7, 2011). Courts should therefore "allow[] claims of implied contracts and express contracts to proceed, in the alternative, beyond the motion to dismiss stage." *18 KT.TV, LLC v. Entest Biomedical, Inc.*, 2011 WL 5374515, at *5 (M.D. Pa. Nov. 7, 2011); *see also, e.g.*, *Salas v. Acuity-CHS, LLC*, 2023 WL 2710180, at *8 (D. Del. Mar. 30, 2023).

defendant to secure this information." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *19 (D.N.J. Dec. 16, 2021). But these cases all turned on the plaintiff's failure to allege that the defendant agreed to protect the information beyond what the law already required. *See id.* at *19–20 (discussing cases and holding that plaintiffs failed to allege that defendant assented to safeguard their personal information "to an extent beyond what is already required by federal law"). Although TD continues to argue that the same is true here, as discussed above, its argument on this point lacks merit.

TD also asserts that the complaint's allegations are too conclusory to plead an implied contract. ECF No. 18-3 at 44. It relies on *In re U.S. Vision*, where a court in this district dismissed an implied-contract claim after finding that the plaintiffs failed to allege any relationship with the defendants. 2024 WL 1975542, at *3–4. But that case is readily distinguishable. There, the plaintiffs admitted that the defendants obtained their private information through contracts with a third party, not directly from the plaintiffs. *Id.* In other words, "no relationship—express, implied, or otherwise—exist[ed] between the parties" that would allow the court to imply a contract against the defendants. *Id.*

Here, by contrast, the parties have a direct relationship: Stevens is a TD customer. ECF No. 1 ¶ 12. And he alleges that he disclosed his personal information to TD to use its website and services; that TD made an implied promise to protect

this information; and that he expected TD to fulfill this promise. *See* ECF No.1 ¶¶ 111–13. Courts have repeatedly held that such allegations suffice to plead an implied contract at the motion-to-dismiss stage. *See, e.g.*, *Salas*, 2023 WL 2710180, at *9–10 (finding implied-contract claim plausible where plaintiff alleged that she provided personal information in exchange for services and defendant implicitly promised to protect it); *Miller v. Syracuse Univ.*, 662 F. Supp. 3d 338, 366 (N.D.N.Y. 2023) (same, where plaintiff allegedly provided personal information to obtain services); *Jones v. Sturm, Ruger & Co., Inc.*, 2024 WL 1307148, at *9 (D. Conn. Mar. 27, 2024) (same, where plaintiffs alleged that "when they provided their private information," defendant "made the implied promise" to protect it). This conclusion makes sense: after all, "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of . . . sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 751 (N.D.N.Y. 2020) (quoting *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016)). The Court should likewise conclude that Stevens has adequately pleaded the existence of an implied contract.

Finally, for the same reasons Stevens plausibly alleges that TD breached the express contract, the Court should determine that he plausibly alleges TD breached

the implied contract and that this breach resulted in benefit-of-the-bargain damages. *See supra* Section VII.B–C.

**VIII. Stevens states a valid claim that TD violated of New York General Business Law § 349.**

Stevens adequately alleges TD is liable for deceptive consumer acts and practices under New York General Business Law § 349. *See Cooper v. Mount Sinai Health Sys., Inc.*, --- F. Supp. 3d ---, 2024 WL 3586357, at *10 (S.D.N.Y. July 30, 2024). To state a claim, Stevens must allege TD "'engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Id*. (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). Although Steven must allege an actual injury, it need not be pecuniary harm. *Id*. (citing *Stutman v. Chem Bank*, 731 N.E.2d 608 (2000)). Here, Stevens adequately pleads a claim against TD under the GBL for installing tracking technologies to secretly collect and divulge financial information to third parties like Meta causing injury.

**A. Stevens adequately alleges TD engaged in consumer-oriented conduct.**

Stevens adequately alleges TD engaged in consumer-oriented conduct. *Kane*, 2024 WL 1178340, at *16. He alleges TD operates a consumer-facing website where customers can access accounts and apply for financial products. Compl. ¶ 2. Stevens alleges he used this website to access his financial information and receive online

banking services where the tracking technologies were installed. Compl. ¶ 12. Nothing more is needed. *See Kane*, 2024 WL 1178340, at *16.

**B. Stevens adequately alleges TD committed deceptive or misleading acts or practices based on its use of tracking technologies to share his personal financial information.**

Stevens adequately alleges TD engaged in both material deceptive conduct and deceptive omissions related to its use of Meta's tracking technology. Material deception is conduct "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N. Y. 2000) (citation omitted). And deceptive omissions happen when the defendant "possesses material information that is relevant to the consumer and fails to provide [the] information." *Oswego*, 647 N.E.2d at 745. Because deception is generally a question of fact, courts rarely dismiss a GBL claim at the motion to dismiss stage. *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *14, *16 (S.D.N.Y. Aug. 12, 2026); *see, e.g., Brady v. Anker Innovations Ltd.*, 2020 WL 158760, at *9 (S.D.N.Y. Jan. 13, 2020) (same).

For starters, TD failed to disclose it implemented third party tracking technology specifically designed to capture personal financial information. Compl. ¶ 3-4. Through this technology, TD systematically shared with Meta personal financial information including Facebook IDs, URLs showing what financial products customers viewed, account details, and banking activities. Compl. ¶¶ 24-

25. Given the nature of banking relationships and TD's status as a financial institution subject to federal privacy laws, this omission is particularly material. Consumers do not expect their bank will share personal financial information with unrelated third parties. TD therefore deprived Stevens of crucial information needed to make an informed decision about his banking relationship.

Although TD cites *Fero* to challenge Stevens's GBL claim, that case actually supports him. In *Fero*, the court held that failing to disclose inadequate data security measures would mislead reasonable consumers. *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 776 (W.D.N.Y. 2017). TD's conduct is much worse: rather than merely failing to protect customer data from theft by a third party, TD actively shared customer data with a third party.

TD compounded these deceptive omissions with affirmative misrepresentation. In fact, TD's privacy policy promised it would not share personal information with nonaffiliates for marketing purposes. Compl. ¶ 35. This representation was "flatly false." *Cooper*, 2024 WL 3586357, at *10. TD shared Stevens' information with Meta for such marketing purposes. Compl. ¶ 5.

Yet TD remarkably relies on the same privacy policy and other website disclosures to claim the "allegedly deceptive practice was fully disclosed." ECF No. 18-3 at 47. It argues the privacy policy "explained exactly what types of information may be shared with third parties for TD's marketing purposes." ECF No. 18-3 at 47.

Stevens does not dispute the privacy policy purported to explain what may be shared for marketing purposes. He instead asserts this explanation was not true. The privacy policy asks whether TD Bank Companies share personal information for nonaffiliates to market to you? And it answers, "No." Compl. ¶ 35. TD neither identifies any lack of clarity in this language nor highlights any specific language in other website disclosures which would dictate anything contrary to this declaration.[16] *See Foster v. Grp. Whole Foods Mkt., Inc.*, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023) (holding that "failure to explain that the front label was likely to mislead a reasonable consumer, and the clearly accurate information on the back of the label, the district court did not err in dismissing the complaint").

TD's conduct contrasts with the defendant in *Chufen Chen*. There, the plaintiff alleged "three Dunkin Donuts television advertisements, providing descriptions along with video links, and alleged that the advertisements were deceptive in their use of the word 'steak.'" *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020). But all three advertisements "clearly depict[ed] the 'steak' in the Products as a beef patty." And because the word steak is "defined as 'ground beef prepared for cooking in the manner of a steak,'" the depiction did not even contradict

[16] TD's offer for customers to opt-out of sharing is meaningless when it fails to adequately disclose what they need to opt-out from.

the dictionary. Said differently, "the allegedly deceptive practice was fully disclosed."

TD also argues it can avoid liability under the GBL because Stevens references federal statutes with no private right of action. ECF 18-3 at 46. A GBL claim, however, remains viable where "the plaintiff makes a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under another statute that is not independently actionable." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 127 (2d Cir. 2017).

Here, Stevens claim centers on TD's inherently deceptive practices, not mere technical violations of federal law. *Jones v. PHH Mortg. Corp.*, 2024 WL 3639325, at *9 (D.N.J. July 31, 2024). That is, he alleges affirmative misrepresentation in TD's privacy notice and material omissions regarding data sharing practices. So while federal banking regulations help inform his GBL claim, he "does not rely on these [regulations] alone to support [his] claim." *Jones*, 2024 WL 3639325, at *9. By contrast, the plaintiffs in TD's case merely claimed the defendant failed to follow federal security rules for protecting private information. *See Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 500 (S.D.N.Y. 2023).

Expanding TD's private right of action exception to this conduct would create an unintended safe harbor for deceptive conduct. It would allow banks to escape liability for deceptive practice anytime their conduct also violates federal banking

regulations. That cannot be the case. The New York legislature intended GBL § 349 to provide broad consumer protection against deceptive business practices, regardless of whether such practices also violate other laws.

### C. Stevens adequately pleads he suffered an actual injury.

Stevens alleges at least two actual injuries from TD's deceptive conduct. First, Stevens lost out on the benefit of his bargain. Specifically, he alleges that he accepted a lower interest rate than he otherwise would have accepted if TD disclosed its conduct. Compl. ¶ 12. This injury fits New York's view on benefit of the bargain damages. *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 992-93 (N.D. Cal. 2016) (finding allegations of lost benefit of the bargain sufficient to allege § 349 damages). For instance, the Second Circuit held a plaintiff sufficiently alleged an injury stemming from a misleading practice when he alleged that he would not have purchased a two-year service plan had he known the defendant "intended to decline to provide him any services in the first year" of the plan. 802 F.3d at 301. The plaintiff still lost the benefit of the bargain even though he had coverage under the manufacturer's warranty. Here, Stevens' lost benefit is more acute—he directly lost out on money from lower interest rates.

Second, Stevens pleads that TD, "via the Facebook Pixel, collected confidential, individually identifiable information constituting [financial] records without the Plaintiffs' knowledge or consent." *Cooper*, 2024 WL 3586357, at *10.

He also pleads that TD's "deceptive representations that it would not disclose such information to third parties caused the cognizable privacy injury, by inducing Plaintiffs to submit private [financial] data and thereby lose control of it." *Id.* (collecting cases).

Still, TD claims Stevens' injury is duplicative of his contract claim. ECF No. 18-3 at 48-49. Not so. TD's cases only show a plaintiff cannot pursue a GBL claim where she seeks only the amount due under the contract. *See Manrique v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 5745717 (S.D.N.Y. Dec. 2, 2021) (sought appropriate amount due under the contract); *Polk v. Del Gatto, Inc.*, 2021 WL 3146291 (S.D.N.Y. July 23, 2021) (sought amount defendant failed to pay under the contract). Stevens' GBL claim addresses broader consumer protection concerns over data privacy and unauthorized information sharing, distinct from mere contractual performance issues.

### D. Stevens adequately pleads materially misleading conduct caused his injury.

Stevens adequately alleges TD caused his injury. While TD correctly acknowledges Stevens need not prove reliance, *Eidelman v. Sun Prod. Corp.*, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022) (citation omitted), it contends he must allege exposure to its deception. Stevens satisfies this requirement in two ways

First, TD's failure to disclose material information about its tracking technologies and data sharing practices automatically satisfies the exposure

requirement through Stevens's use of TD's services. *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80 (S.D.N.Y. 2022) (collecting cases). An omission-based claim, by definition, involves undisclosed information. It would be nonsensical to require exposure to information that was deliberately withheld.

Second, the pleaded facts support a strong presumption Stevens read TD's disclosures because he "describe[s] the relevant provisions of [TD's] Privacy Policies in detail and state[s] that [he] trusted that the Private Information that [he] provided to Defendant" would be protected. *Kane*, 2024 WL 1178340, at *18; *see* supra Section VII.A; *see also Cooper*, 2024 WL 3586357, at *10. Stevens has "therefore sufficiently pled causation for the purpose of GBL § 349." *Id*.

**IX. Stevens has standing to assert his claims for unfair and deceptive trade practices.**

Stevens asserts claims for unfair and deceptive trade practices under laws of states he does not reside in. TD argues that Stevens lacks Article III to pursue the claim. TD is wrong.

Whether a class can include absent out-of-state members with claims under different state laws is a question of predominance under Rule 23(3)(b), not "adjudicatory competence" under Article III. True, some district courts have analyzed the issue under Article III, and TD relies on those cases in its brief. ECF No. 18-3 at 39-40. But other district courts have rightly concluded that the issue goes to the merits under Rule 23, not jurisdiction. *Louisiana Health Serv. & Indem. Co.*

*v. Janssen Biotech, Inc.*, 2021 WL 4988523, at *4 (D.N.J. Oct. 27, 2021) ("As long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)."); *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D.N.J. 2009) ("[T]he fact that the named Plaintiffs may not have individual standing to allege violations of consumer protection laws in states other than those in which they purchased Defendants' [products] is . . . one of predominance," not of standing). Indeed, although not mentioned in TD's brief, all five circuit courts that have considered the issue have come out the same way. *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2022 WL 16729170, at *5 (11th Cir. Nov. 7, 2022) (collecting cases and stating that "all circuits which have addressed whether a plaintiff can represent unnamed class members whose claims fall under different states' laws have concluded that it is a question that concerns Rule 12(b)(6) or Rule 23—not Article III").[17]

[17] *See Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 93, 96 (2d Cir. 2018) ("[A]s long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(3)(b), . . . not a question of 'adjudicatory competence' under Article III."); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018) (similar); *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021) (similar); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011) (similar).

Indeed, if Stevens could not, as a matter of Article III standing, represent individuals in other states with claims under other states laws, class cases asserting such claims would not exist. But they do. *Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) (upholding the certification of a nation-wide antitrust class that brought claims under the laws of all fifty states and finding that the issues of different state laws was one of predominance); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301 (3d Cir. 2011) (describing "our willingness to certify nationwide classes where differences in state law fell 'into a limited number of predictable patterns,' and any deviations 'could be overcome at trial by grouping similar state laws together and applying them as a unit'"). The very existence of these cases directly undermines TD's contention that they are barred by the U.S. constitution.

Notably, the primary authority TD relies on in advancing its argument to the contrary—*Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353 (3d Cir. 2015)—has been thoroughly evaluated by this district, and those authorities concluded that *Neale* is *not* a bar to a multistate class. *See Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co.* 2021 WL 960875, at *7 (D.N.J. Mar. 15, 2021) ("[I]f the Third Circuit had concerns about a named plaintiff's standing to raise claims for putative out-of-state members, the Circuit would have addressed the issue *sua sponte*" in *Neale* and *Mielo v. Steak 'n Shake Ops., Inc.*, 897 F.3d 467 (3d Cir. 2018), but it "did not do so in either"); *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2022 WL

1013945, at *4 (D.N.J. Apr. 5, 2022) (discussing *Neale* and *Mielo* supporting the proposition that "as long as the named plaintiff has standing, it can bring claims on behalf of a nationwide class").

And the district-court authority TD primarily relies on—*Snowdy v. Mercedes-Benz USA, LLC*, 2024 WL 1366446, at *5 (D.N.J. Apr. 1, 2024)—did not evaluate the appellate consensus described by the Eleventh Circuit in *Zantac* on this very issue. It also relied heavily on *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194 (D.N.J. 2020), a case that has been criticized in this district for an erroneous reading of Supreme Court precedent. *In re Valsartan*, 2022 WL 1013945, at *2–3.

## CONCLUSION

For the foregoing reasons, Stevens respectfully requests that the Court deny TD's motion to dismiss in full.

Dated: December 13, 2024

Respectfully submitted,

*/s/ James E. Cecchi*

James E. Cecchi
**CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com

Eric S. Dwoskin (*pro hac vice forthcoming*)
**DWOSKIN WASDIN LLP**
433 Plaza Real, Suite 275

Boca Raton, FL 33432
Tel.: (561) 849-8060
edwoskin@dwowas.com

Norman E. Siegel (*pro hac vice forthcoming*)
J. Austin Moore (*pro hac vice forthcoming*)
Kasey Youngentob (*pro hac vice forthcoming*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel.: (816) 714-7100
siegel@stuevesiegel.com
moore@stuevesiegel.com
youngentob@stuevesiegel.com

*Counsel for Plaintiff and the putative Class*