**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| JEFFREY STEVENS, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TD BANK, N.A.,<br><br>Defendant. | Case No.: 1:24-cv-08311-RMB-AMD<br><br>**Motion Day: January 21, 2025** |

**REPLY BRIEF**
**IN SUPPORT OF DEFENDANT TD BANK'S MOTION TO DISMISS**

Susan M. Leming, Esq.
**BROWN & CONNERY, LLP**
360 N. Haddon Ave.
Westmont, NJ 08108
Telephone: (856) 854-8900

Zach A. McEntyre (admitted *pro hac vice*)
Robert D. Griest (admitted *pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600

*Attorneys for Defendant TD Bank, N.A.*

# TABLE OF CONTENTS


Introduction ........................................................................................................ 1

Argument ............................................................................................................ 1

- I. Plaintiff fails to allege what personal information of his was disclosed. ..... 1
- II. New Jersey law applies to Plaintiff's breach of confidence claim. ............. 4
- III. All Plaintiff's claims fail for independent reasons under Rule 12(b)(6). ..... 8
  - A. Plaintiff fails to state claims for negligence or negligence per se ......... 8
  - B. Plaintiff cannot save his unjust enrichment claim. ............................. 10
  - C. Plaintiff's declaratory judgment claim is duplicative. ......................... 11
  - D. Plaintiff's breach of contract claim must be dismissed ....................... 12
  - E. Plaintiff's breach of implied contract claim lacks factual support. .... 13
- IV. Plaintiff fails to state a claim for violation of N.Y. Gen. Bus. L. § 349 ..... 16
- V. Plaintiff fails to explain how he has standing to assert his "multistate" Unfair and Deceptive Trade Practices claim. ........................................... 17

Conclusion ......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Everest Glob. Servs., Inc.*,
2024 WL 3887127 (D.N.J. Aug. 21, 2024) .......... 13

*In re Am. Med. Collection Agency, Inc. Customer Sec. Data Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021) .......... 13, 14, 15

*AV Design Servs, LLC v. Durant*,
2021 WL 1186842 (D.N.J. Mar. 30, 2021) .......... 11

*Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co.*,
2021 WL 960875 (D.N.J. Mar. 15, 2021) .......... 18

*Bang v. BMW of N. Am., LLC*,
2016 WL 7042071 (D.N.J. Dec. 1, 2016) .......... 9

*Beaman v. Bank of Am., N.A.* (*Beaman I*),
2023 WL 4784254 (D.N.J. July 27, 2023) .......... 9

*Beaman v. Bank of Am., N.A.* (*Beaman II*),
2024 WL 3219224 (D.N.J. June 28, 2024) .......... 9

*Bernetich, Hatzell & Pascu, LLC v. Med. Recs. Online, Inc.*,
445 N.J. Super. 173 (App. Div. 2016) .......... 14

*Boria v. He209ritage at Alexander Hamilton*,
2024 WL 3585579 (D.N.J. July 30, 2024) .......... 10

*Cerkez v. Gloucester City*,
479 N.J. Super. 174 (App. Div. 2024) .......... 15

*Christie v. Nat'l Inst. for Newman Studies*,
2019 WL 1916204 (D.N.J. Apr. 30, 2019) .......... 10

*Chufen Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020) .......... 16

*Cibenko v. Worth Publishers, Inc.*,
510 F. Supp. 761 (D.N.J. 1981) ....................7

*Commw. of Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939 (3d Cir. 1996) ....................6

*Daly v. Metro. Life Ins. Co.*,
782 N.Y.S.2d 530 (Sup. Ct. N.Y. Cnty. 2004) ....................5

*Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*,
998 F. Supp. 447 (D.N.J. 1998) ....................6

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ....................3

*Hartley v. Univ. of Chi. Med. Ctr.*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ....................4

*Hartley v. Urban Outfitters, Inc.*,
2024 WL 3445004 (E.D. Pa. July 17, 2024) ....................2

*In re Jet Blue Airways Corp. Priv. Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ....................13

*Jones v. Com. Bancorp., Inc.*,
2006 WL 1409492 (S.D.N.Y. May 23, 2006) ....................5

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ....................2, 3, 4, 5

*Lawlor v. ESPN Scouts, LLC*,
2011 WL 675215 (D.N.J. Feb. 6, 2011) ....................17

*Lemire Assocs. v. Howmet Aerospace*,
2024 WL 3024878 (D.N.J. June 17, 2024), *clarified by* 2024 WL 4437868 (D.N.J. Sept. 25, 2024) ....................11

*La. Health Serv. & Indem. Co. v. Janssen Biotech, Inc.*,
2021 WL 4988523 (D.N.J. Oct. 27, 2021) ....................17

*Marina Grp. LLC v. Shirely May Int'l US Inc.*,
2024 WL 3325993 (D.N.J. July 8, 2024) ....................14

*ponzio v. City of Egg Harbor City*,
2015 WL 3866222 (D.N.J. June 23, 2015) ........................................ 12

*Melzer v. Johnson & Johnson Consumer Inc.*,
2023 WL 3098633 (D.N.J. Apr. 26, 2023) ........................................ 10, 11

*Mendoza v. Caesars Ent., Inc.*,
2024 WL 2316544 (D.N.J. May 22, 2024) ........................................ 1

*Meyer v. Christie*,
2007 WL 3120695 (D. Kan. Oct 24, 2007) ........................................ 14

*Mielo v. Steak 'N Shake Operations, Inc.*,
897 F.3d 467 (3d Cir. 2018) ........................................ 18

*Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353 (3d Cir. 2015) ........................................ 17, 18, 19, 20

*Nicosia v. Wakefern Food Corp.*,
136 N.J. 401 (1994) ........................................ 14

*Polk v. Del Gatto, Inc.*,
2021 WL 3146291 (S.D.N.Y. July 23, 2021) ........................................ 16

*Ponzio v. Mercedes-Benz USA, LLC*,
447 F. Supp. 3d 194 (D.N.J. 2020) ........................................ 19

*In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ........................................ 18

*R.C. v. Walgreen Co.*,
2024 WL 2263395 (C.D. Cal. May 9, 2024) ........................................ 2

*Ramirez v. STi Prepaid LLC*,
644 F. Supp. 2d 496 (D.N.J. 2009) ........................................ 17

*RD Legal Funding Partners, LP v. Powell*,
2019 WL 3405136 (App. Div. July 29, 2019) ........................................ 15

*Reliable Paper Recycling, Inc. v. Helvetia Glob. Sols., Ltd.*,
2024 WL 1461346 (D.N.J. Apr. 4, 2024) ........................................ 11

*Reynolds v. Wagner*,
128 F.3d 166 (3d Cir. 1997) ....................6

*Sacchi v. Quest Diagnostics Inc.*,
2023 WL 2530896 (App. Div. Mar. 16, 2023)....................9

*Santoro v. Tower Health*,
2024 WL 1773371 (E.D. Pa. Apr. 24, 2024)....................1, 2

*Scattaglia v. Mercedes-Benz USA LLC*,
2021 WL 5918475 (D.N.J. Dec. 15, 2021)....................9

*SDC Info. Servs., Inc. v. Intelligroup, Inc.*,
2012 WL 2119156 (D.N.J. June 11, 2012)....................11

*Small v. Lorillard Tobacco Co., Inc.*,
720 N.E.2d 892 (N.Y. 1999)....................17

*Snowdy v. Mercedes-Benz USA LLC*,
2024 WL 1366446 (D.N.J. Apr. 1, 2024)....................18, 19, 20

*Sullivan v. DB Invs. Inc.*,
667 F.3d 273 (3d Cir. 2011) ....................18

*Truglio v. Planet Fitness, Inc.*,
2016 WL 4084030 (D.N.J. July 28, 2016) ....................12

*United Jersey Bank v. Kensey*,
306 N.J. Super. 540 (App. Div. 1997)....................8

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
2022 WL 1013945 (D.N.J. Apr. 5, 2022)....................18, 19

*Velazquez ex rel. Velazquez v. Jiminez*,
172 N.J. 240 (2002) ....................15

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ....................17, 18

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ....................15

*Young v. U.S. Dep't of Just.*,
882 F.2d 633 (2d Cir. 1989) ....................................................................5

**Statutes**

18 U.S.C. § 2510 *et seq.*.............................................................................4

42 U.S.C. § 1320d-6....................................................................................4

N.Y. Gen. Bus. Law § 349 .........................................................................14

**Other Authorities**

Restatement (Second) Conflict of Laws § 145. ...........................................6, 7

## Introduction

Plaintiff's Response ("Resp.") confirms that the fatal deficiencies in his Complaint require its dismissal. As explained below, Plaintiff's Complaint must be dismissed because he failed to allege what of his personal information was disclosed. Moreover, all Plaintiff's claims fail for independent reasons.

## Argument

### I. Plaintiff fails to allege what personal information of his was disclosed.

Plaintiff's claims fail as a matter of law because he alleges only the disclosure of information about general browsing activity on TD's website. *See* Compl. ¶¶ 1–7, 23–27, ECF No. 1. And Plaintiff does not tie these general allegations about what TD does and how the Pixel works to *him* personally. That is, Plaintiff's Complaint "lacks specific examples of what [personal] information from [him] was transferred to Meta." *Santoro v. Tower Health*, 2024 WL 1773371, at *4 (E.D. Pa. Apr. 4, 2024). That failure requires dismissal of all his claims.

For instance, Plaintiff alleges that the Pixel transmits Facebook IDs (Compl. ¶¶ 20–21) but he never alleges that TD "transmitted *his* Facebook ID and records of his activity on [TD's w]ebsite to Facebook." *Mendoza v. Caesars Ent., Inc.*, 2024 WL 2316544, at *4 (D.N.J. May 22, 2024) (emphasis added). Or take Plaintiff's general allegation that the Pixel shares customer interactions on TD's website, including whether an individual is a customer or has obtained a financial product or service from TD. Compl. ¶ 4. Again, Plaintiff fails to allege what

webpages *he* visited or that *he* applied online for any products or services when the Pixel was on TD's website. *Cf., e.g.*, *R.C. v. Walgreen Co.*, 2024 WL 2263395, at *7 (C.D. Cal. May 9, 2024) (finding a Pixel privacy claim sufficient because the plaintiffs alleged the "specific items [placed] in their online shopping carts" on the defendant's website and how those items revealed their private medical conditions).

The pages viewed and the precise content shared—as to Plaintiff—matters because "a users' keystrokes and mouse clicks upon voluntarily visiting a [bank's] website . . . are entitled to less privacy protection." *Hartley v. Urban Outfitters, Inc.*, 2024 WL 3445004, at *7 (E.D. Pa. July 17, 2024). Plaintiff's Complaint "tells us nothing about the specific pages [he] clicked on" or even what accounts he has with TD. *Santoro*, 2024 WL 1773371, at *4. Put simply, he fails to plead any facts to "determine what information [he] actually communicated to [TD] via his web browsing," and thus it is not possible to "tell whether that information might be covered by" by the state and federal laws Plaintiff relies on. *Id.*

Plaintiff also makes much of TD's reliance on *Kane v. University of Rochester*, 2024 WL 1178340, at *12 (W.D.N.Y. Mar. 19, 2024). Resp. at 6, ECF No. 19. Yet *Kane* and the plaintiffs' amended complaint there show why it supports TD's position. The complaint in *Kane* included web addresses the plaintiffs visited and screenshots with the corresponding Pixel code they alleged was shared from each page to Facebook, including an appointment booking page. Complaint at 11,

20–25, *Kane*, No. 6:23-cv-06027 (W.D.N.Y. Apr. 21, 2023), ECF No. 8. The plaintiffs then linked this allegation to themselves: they alleged that they used the defendant's website to schedule appointments, and they disclosed private information to do so. *Kane*, 2024 WL 1178340, at *3.

It was this connection and the specific allegations of disclosed individually identifiable health information ("IIHI") that the *Kane* court found made the plaintiff's federal Wiretap Act claim plausible. *See id.* at *5–6. The plaintiffs alleged that the defendant disclosed several categories of IIHI to Facebook, including:

> (a) *their* status as patients; (b) *their* communications with Defendant through its website and the Portal; (c) medical appointments, location of treatments, specific medical providers, and specific medical conditions and treatments; and (d) personally identifiable information including, but not limited to, patients' locations, IP addresses, device identifiers, and individual unique Facebook identifiers

*Id.* (emphasis added). That level of detail is absent from Plaintiff's Complaint here.

Plaintiff's reliance on *Fan v. NBA Properties Inc.*, 2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) fares no better. Resp. at 6. Like the *Kane* complaint, the *Fan* complaint includes screenshots showing what specific data was shared when customers purchased an NFT video on the defendant's website. Complaint at 11–18, *Fan*, No. 3:23-cv-05069 (N.D. Cal. Oct. 3, 2023), ECF No. 1. Again, no such detail is contained in Plaintiff's Complaint here.

Plaintiff's assertion that none of the cases TD cited "involved the collection of information specifically covered by federal statute" is irrelevant, and also wrong. Resp. at 7. The fact that Plaintiff generally alleges TD disclosed information covered by GLBA does nothing to cure his failure to allege what specific information *of his* was disclosed—which is required to state any of his claims. Regardless, most of the cases TD cited *did* involve federal statutes pertaining to personal information: the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d-6 or the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq. See, e.g.*, *Hartley v. Univ. of Chi. Med. Ctr.*, 2023 WL 7386060, at *1 (N.D. Ill. Nov. 8, 2023); *Kane*, 2024 WL 1178340, at *5.

At bottom, "there is an absolute dearth of information specific to Plaintiff as [to] what was disclosed to [Meta] that would plausibly be in violation" of any state and federal law. *Univ. of Chi. Med. Ctr.*, 2023 WL 7386060, at *2. Accordingly, the Court should dismiss Plaintiff's Complaint for this threshold reason.

## II. New Jersey law applies to Plaintiff's breach of confidence claim.

Though Plaintiff agrees that New Jersey law applies to most of his common law claims, he disagrees that it applies to his breach of confidence claim. Resp. at 7–9. Plaintiff also asserts that TD waived any choice of law argument on this claim. *Id.* at 9 n.9. Neither argument is correct.

To begin, Plaintiff has not cited a decision showing that New York recognizes a breach of confidence claim in these circumstances. Without binding precedent extending a breach of confidence claim to a bank in this manner, this Court "is bound to 'predict how the forum state's highest court would decide the issue'" by relying on "sufficient precedent." *Kane*, 2024 WL 1178340, at *12 (quoting *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *12 (S.D.N.Y. Mar. 23, 2021)). No such precedent exists.

The lone New York trial court opinion Plaintiff cites is inapposite. Resp. at 8 (citing *Daly v. Metro. Life Ins. Co.*, 782 N.Y.S.2d 530 (Sup. Ct. N.Y. Cnty. 2004)). *Daly* did not even mention a "breach of confidence" tort; instead, it discussed the "breach of *fiduciary duty* of confidentiality" between a client and an insurance company. 782 N.Y.S.2d at 534 (emphasis added). That is not what Plaintiff pled here. True, the Southern District of New York has applied *Daly* to a bank-client relationship. But there again, the plaintiff pled a "breach of fiduciary duty" claim. *See Jones v. Com. Bancorp., Inc.*, 2006 WL 1409492, at *1, *3 (S.D.N.Y. May 23, 2006). Because neither New Jersey nor New York recognizes a breach of confidence claim in these circumstances, there is no conflict for purposes of choice of law. *See Young v. U.S. Dep't of Just.*, 882 F.2d 633, 642–44 (2d Cir. 1989) (declining to extend a breach of confidence claim to the banking relationship).

TD also did not waive its alternative argument that if a conflict exists, New Jersey law would still control. *See* Resp. at 9 n.2. Arguments in footnotes are not categorically waived. What matters is whether an argument is conclusory—i.e., without support. *See Commw. of Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939 (3d Cir. 1996); *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997). TD supported its argument with authorities. Mot. at 9–10 n.2.

Because "[i]t is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted," TD may also elaborate on why New Jersey law would control if the Court finds a conflict exists. *See Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 998 F. Supp. 447, 458 (D.N.J. 1998). As noted in TD's Motion, under the second step, the Court would apply the applicable Restatement factors to determine which state has the most significant relationship to the claim. *See* Mot. at 7, 9–10 n.2. Those factors are: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. Restatement (Second) Conflicts of Law § 145 (Am. L. Inst. 1971).

The first factor is negligible here because Plaintiff does not allege any physical injury, and—to the extent plaintiff was injured (he was not)—the location "bears

little relation to the occurrence and the parties with respect to the particular issue[s]" of this claim. *Id.* cmt. e. The second factor favors New Jersey because the alleged breach occurred in New Jersey, and "the place where the defendant's conduct occurred will usually be given particular weight." *Id.*; Compl. ¶¶ 2–3 (TD Bank "operates a website" and has "incorporated a hidden tracking code created by Meta Platforms, Inc. ('Meta') into its website"); Compl. ¶ 10 ("TD Bank has its principal place of business in Cherry Hill, New Jersey . . . ."); *id.* ¶ 23 ("TD Bank has integrated the Facebook Tracking Pixel into td.com . . . ."). The third factor may slightly favor New York given the nature of Plaintiff's claim is "his right to privacy." Restatement (Second) Conflict of Laws § 145 cmt. e. But the fourth factor favors New Jersey because the parties' relationship is centered there, as that is where TD's digital marketing decisionmakers are located. *See* Compl. ¶ 10. Those employees' approval of TD's website design to allegedly share Plaintiff's information is at the heart of Plaintiff's dispute. *See id.* ¶¶ 2–3, 10, 23; Restatement (Second) Conflict of Laws § 145 cmt. e; *cf., e.g.*, *Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 766 (D.N.J. 1981) (finding that New Jersey law controlled in a privacy claim where publication occurred in New Jersey). Thus, under the second step, New Jersey has the more significant relationship to the claim.

Because New Jersey law applies and does not recognize a breach of confidence claim in these circumstances, the Court should dismiss Plaintiff's claim.

Even if New York law applies, Plaintiff's claim should be dismissed for the reasons stated in TD's Motion. *See* Mot. at 27–28.

## III. All Plaintiff's claims fail for independent reasons under Rule 12(b)(6).

Setting aside the threshold dispositive pleading deficiency above, Plaintiff also fails to rebut why his claims should be dismissed for independent reasons.

### A. Plaintiff fails to state claims for negligence or negligence per se.

Plaintiff has not shown that TD had a common law or statutory duty of care under New Jersey law not to share his general web browsing information with Meta. *See* Resp. at 11–12, 15–16 & n.4 (relying primarily on cases outside New Jersey). And he does not refute that the New Jersey legislature's definition of "personal information" does not cover the information he alleges TD gathered and shared. *See* Mot. at 14–16.

Nor has Plaintiff shown any duty arising from a special relationship. To form a special relationship between a bank and customer, the bank must *encourage* the customer to "repose special trust or confidence *in its advice*." *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 555 (App. Div. 1997) (emphasis added). Plaintiff has not alleged that TD encouraged anything, much less that TD offered any advice. *See generally* Compl.

Plaintiff also cannot rely on the GLBA or FTCA to support his negligence per se claim. As TD's Motion explains, neither statute incorporates common law

standards. Mot. at 17–18; *Beaman v. Bank of Am., N.A.* (*Beaman II*), 2024 WL 3219224, at *18 (D.N.J. June 28, 2024). Plaintiff therefore cannot disguise his GLBA and FTCA claims as a negligence per se claim. *See, e.g.*, *Sacchi v. Quest Diagnostics Inc.*, 2023 WL 2530896, at *4 (App. Div. Mar. 16, 2023).

Next, Plaintiff contends he adequately pled damages because he satisfied the injury-in-fact analysis under Article III. Resp. at 17. But "[t]he injury required for standing purposes is distinct from damages under a particular theory of liability." *Bang v. BMW of N. Am., LLC*, 2016 WL 7042071, at *4 (D.N.J. Dec. 1, 2016); *Scattaglia v. Mercedes-Benz USA LLC*, 2021 WL 5918475, at *5 (D.N.J. Dec. 15, 2021) (same). Plaintiff's reliance on cases accepting loss of control of personal information as an injury (Resp. at 17–18) is misplaced, as Plaintiff does not plead that theory of harm in the Complaint. *See generally id.*; Compl. ¶¶ 62, 71.

And contrary to Plaintiff's argument, Courts routinely grant motions to dismiss negligence and negligence per se claims. *See, e.g.*, *Beaman v. Bank of Am., N.A.* (*Beaman I*), 2023 WL 4784254, at *18 (D.N.J. July 27, 2023); *Beaman II*, 2024 WL 3219224, at *17–18; *Boria v. Heritage at Alexander Hamilton*, 2024 WL 3585579, at *4–5 (D.N.J. July 30, 2024).[1] This Court should do the same.

---

[1] As explained in TD's Motion, if the Court finds that a contract exists, the economic loss doctrine bars Plaintiff's tort claims. *See* Mot. at 21 n.5 (citing *SCR Constr. Corp. of Monroe v. Atl. City Hous. Auth.*, 935 F. Supp. 2d 796, 801 (D.N.J. 2013)).

**B. Plaintiff cannot save his unjust enrichment claim.**

Plaintiff next argues that he has plausibly pled an unjust enrichment claim and that it is premature for the Court to dismiss it. Resp. at 20–22. He focuses on his allegation that he was "denied the benefit of the bargain" (*id.* at 21), but that does not save his claim. "On its face, [Plaintiff's] unjust enrichment claim must fail because [he] did not expect remuneration from [TD]." *Melzer v. Johnson & Johnson Consumer Inc.*, 2023 WL 3098633, at *7 (D.N.J. Apr. 26, 2023). According to Plaintiff, he "did not expect any of [his personal] information or identifiers to be used by [TD] in the first place." *Id.*; Compl. ¶ 76. "[A]though [Plaintiff] alleges that [TD] benefited from [his] alleged [personal] data, [he] does not sufficiently allege that this purported enrichment caused [him] to suffer any real loss or damages." *Melzer*, 2023 WL 3098633, at *7 (citation omitted); *see* Mot. at 21–22.

Nor can he show that he did not receive the "benefit of his bargain." Plaintiff's Response completely ignores the disclosure language on TD's website that explicitly states that TD would share and collect this information—disclosures that Plaintiff agrees the Court may consider in deciding this Motion. Resp. at 2 n.1. Put differently, Plaintiff cannot show that TD received a benefit at Plaintiff's expense or under circumstances that are unjust. *See, e.g.*, *Christie v. Nat'l Inst. for Newman Studies*, 2019 WL 1916204, at *17 (D.N.J. Apr. 30, 2019).

The Court can and should dismiss Plaintiff's unjust enrichment claim for these reasons and those explained in TD's Motion. *See Melzer*, 2023 WL 3098633, at *7; *SDC Info. Servs., Inc. v. Intelligroup, Inc.*, 2012 WL 2119156, at *2 (D.N.J. June 11, 2012) (granting a motion to dismiss where plaintiff "failed to make factual allegations that would state a claim for unjust enrichment"); Mot. at 21–24. Separately, the Court should dismiss this claim if it finds that a contract exists. *See* Mot. at 24 n.8.

**C. Plaintiff's declaratory judgment claim is duplicative.**

Plaintiff's declaratory relief claim fails. Even if Plaintiff had alleged an imminent future injury (he did not), he fails to demonstrate that this claim is not duplicative of his contract or tort claims. *See AV Design Servs, LLC v. Durant*, 2021 WL 1186842, at *12 (D.N.J. Mar. 30, 2021). For example, any prospective relief can be "address[ed by] the enforceability of the [alleged c]ontract when adjudicating [Plaintiff's] breach of contract and contract implied in fact claims." *Lemire Assocs. v. Howmet Aerospace*, 2024 WL 3024878, at *15 (D.N.J. June 17, 2024), *clarified by* 2024 WL 4437868 (D.N.J. Sept. 25, 2024). The Third Circuit "urges courts to . . . decline proceeding with declaratory judgments when they duplicate other claims." *Reliable Paper Recycling, Inc. v. Helvetia Glob. Sols., Ltd.*, 2024 WL 1461346, at * 4 (D.N.J. Apr. 4, 2024) (citation omitted).

**D. Plaintiff's breach of contract claim must be dismissed.**

Plaintiff's breach of express contract claim fails because the Privacy Notice he relies on disclaims any contract (Mot. at 28 n.10) and disproves any mutual assent. Plaintiff now alleges that "the privacy notice is incorporated into the broader agreement governing his use of TD's website and services." Resp. at 26. Tellingly, that theory appears nowhere in his Complaint (and it is also hopelessly vague). *See generally* Compl. Rather, the Complaint alleges that the Notice "is an agreement between TD Bank and persons who provided TD Bank with their nonpublic personal information." Compl. ¶ 104. And the remaining paragraphs all reference the Notice as the purported contract in question. *Id.* ¶¶ 105–09. Because "[t]here is nothing in the Complaint that pleads" that the Notice was part of some unspecified "broader agreement," the Court should not permit "Plaintiff's efforts to amend [his] Complaint through [his] brief." *Meale v. City of Egg Harbor City*, 2015 WL 3866222, at *6 (D.N.J. June 23, 2015).

Regardless, Plaintiff's claim would still fail. Notwithstanding the arguments in TD's Motion, "Plaintiff fails to plausibly allege that there is a difference in value between the [service] promised under the [purported broader agreement] and the one received, with these allegedly unlawful [disclosures], or that such difference can be reasonably quantified." *Truglio v. Planet Fitness, Inc.*, 2016 WL 4084030, at *8 (D.N.J. July 28, 2016). Plaintiff may have unilaterally expected that in exchange for

his personal information and paying account fees,[2] he would obtain an account and a promise that his alleged personal information would not be disclosed. But he alleges no facts to show he had a "reason to expect that [he] would be compensated for the 'value' of [his] personal information." *In re Jet Blue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005).

**E. Plaintiff's breach of implied contract claim lacks factual support.**

Plaintiff's breach of implied contract claims fails for similar reasons. Beyond that, Plaintiff's conclusory allegation that TD "agreed to safeguard and protect [his] nonpublic personal information" (Compl. ¶ 112), "fails to point to any basis for the Court to find an implied promise to safeguard [his] data." *Adkins v. Everest Glob. Servs., Inc.*, 2024 WL 3887127, at *12 (D.N.J. Aug. 21, 2024). And Plaintiff's reliance on the Notice (which he also relies on for his *express* contract claim) refutes the existence of an implied contract for two reasons. *See In re Am. Med. Collection Agency, Inc. Customer Sec. Data Breach Litig.*, 2021 WL 5937742, at *20 (D.N.J. Dec. 16, 2021).

[2] To be clear, Plaintiff alleges only that TD charges $5 for use of its Simple Savings account, $15 for its Signature Savings Account, and the interest rates TD offers for these accounts. Compl. ¶ 11. He does not allege that he had either account, paid these fees, or received these interest rates. *See generally id.*; *see also* Mot. at 31. And though Plaintiff alleges that he would have chosen another bank with higher interest rates, he never alleges what banks offered higher interest rates. *See* Compl. ¶ 12.

First, as TD already explained, the Notice explicitly disclaims the formation of any contract. *See supra* Section III.D. "At the motion to dismiss stage, courts may not infer additional terms to an implied contract beyond what is explicitly stated in a supporting document." *Marina Grp. LLC v. Shirely May Int'l US Inc.*, 2024 WL 3325993, at *6 (D.N.J. July 8, 2024). Plaintiff cannot "select among the provisions" of the Notice "to determine which provision should give rise to enforceable contractual obligations." *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 411 (1994). That is, he cannot ignore the provision that disclaims any contract. The Notice does not show "a clear common understanding," that TD intended to form a contract because TD expressed its intent *not* to form one. *Marina Grp. LLC*, 2024 WL 3325993, at *6.

Second, the Notice "indicates, at most, that [TD] intended to abide by the privacy requirements outlined" by federal law.[3] *In re Am. Med. Collection*,

[3] Plaintiff cites *Meyer v. Christie*, 2007 WL 3120695 (D. Kan. Oct 24, 2007), to argue that TD did not have a preexisting legal duty because the GLBA does not dictate the terms of the Notice. Resp. at 27–28. Unlike the *Meyer* complaint, Plaintiff's Complaint alleges that TD had "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information" under the GLBA. Compl. ¶ 30 (quoting 15 U.S.C. § 6801(a)). Plaintiff also implicitly alleged that TD violated a preexisting legal duty under New York law. *Id.* ¶ 118 (citing N.Y. Gen. Bus. Law § 349); *Bernetich, Hatzell & Pascu, LLC v. Med. Recs. Online, Inc.*, 445 N.J. Super. 173, 184 (App. Div. 2016) ("MRO's pre-existing duty arises from statute and regulation, as opposed to contract."). What's more, if the Court agrees with Plaintiff that TD had a legal duty under tort law to not share his browsing

2021 WL 5937742, at *20. "Statements of [TD's] intent to follow federal law do not support an independent cause of action for breach of implied contract." *Id.* Moreover, TD's obligation to comply with the GLBA "was pre-existing and [can] not constitute valid consideration" for the contract Plaintiff claims was breached. *RD Legal Funding Partners, LP v. Powell*, 2019 WL 3405136, at *8 (App. Div. July 29, 2019) (collecting New Jersey state cases); *see also Williams v. TMC Health*, 2024 WL 4364150, at *8 (D. Ariz. Sept. 30, 2024) (dismissing a breach of implied contract in a Pixel case for the same reason and noting that a privacy policy "cannot serve as the basis for an implied contract because there would be no consideration for any such contract").

Plaintiff also ignores the disclosures on TD's website that indicate it would collect and share the information he complains of, and he does not dispute that he chose not to opt out of interest-based advertising and sharing his information with nonaffiliate ad partners. *See, e.g.*, Mot. at 3–4, 23–24, 36. "[C]onsidering the surrounding circumstances," *Cerkez v. Gloucester City*¸ 479 N.J. Super. 174, 185 (App. Div. 2024), there can be no dispute that that TD did not intend to form an implied contract with Plaintiff.

---

activity, that duty would also be preexisting. *See Velazquez ex rel. Velazquez v. Jiminez*, 172 N.J. 240, 262–63 (2002) (noting that preexisting legal duties can arise under tort law).

## IV. Plaintiff fails to state a claim for violation of N.Y. Gen. Bus. L. § 349.

Plaintiff argues that he has adequately pled a § 349 claim because TD "install[ed] tracking technologies to secretly collect and divulge financial information to third parties like Meta." Resp. at 35. But TD disclosed that it "uses cookies and other tracking technologies" and explained that it would share information for its *own* marketing purposes. *See* Mot. at 3, 28 n.10, 30. That alone defeats Plaintiff's claim. *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020).[4]

Plaintiff also fails to show that he pled a plausible injury. He doubles down in his Response that his § 349 injury was that he (1) "lost out on the benefit of his bargain" and (2) lost control of his information. *See* Resp. at 40–41. The latter, as explained above, does not appear in Plaintiff's Complaint. *See supra* Section III.A.; Compl. ¶ 123. The former is the *same* injury he claims in his breach of contract claim. Resp. at 31 ("TD's disclosure . . . denied him the benefit of the bargain . . . ."). And the conduct alleged in both claims are "effectively identical." *Polk v. Del Gatto, Inc.*, 2021 WL 3146291, at *11 (S.D.N.Y. July 23, 2021) (granting a motion to dismiss a § 349 claim as duplicative); Mot. at 38. Even if it were not duplicative, Plaintiff has not alleged that the cost of TD's services was affected by the purported

---

[4] Plaintiff also implicitly concedes that he must have a freestanding § 349 claim and cannot rely on federal statutes with no private right of action. *See* Resp. at 39.

misrepresentations or deceptions. *See Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892, 898 (N.Y. 1999). Either way, Plaintiff has not shown an injury and his § 349 claim must be dismissed.

## V. Plaintiff fails to explain how he has standing to assert his "multistate" Unfair and Deceptive Trade Practices claim.

Finally, Plaintiff's multistate standing arguments fail for four reasons. First, Plaintiff does not refute that he failed to plead "particularized facts that demonstrate the basis of the [various] claims is the same." *Compare* Mot. at 40 n.13 (quoting *Simner v. LG Elecs. U.S.A., Inc.*, 2022 WL 3152707, at *5 (D.N.J. Aug. 8, 2022)), *with* Resp. at 42–45. "Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant." *Lawlor v. ESPN Scouts, LLC*, 2011 WL 675215, at *2 (D.N.J. Feb. 6, 2011). Plaintiff has abandoned or waived any argument in response. *See id.*[5]

Second, several cases Plaintiff cites either predate or do not discuss *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353 (3d Cir. 2015). *See* Resp. at 43–44; *Janssen Biotech, Inc.*, 2021 WL 4988523; *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496 (D.N.J. 2009); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir.

---

[5] Plaintiff does not dispute that if the Court dismisses his § 349 claim, then he lacks standing to assert the multistate claims. *See* Mot. at 40 n.13. The case law Plaintiff cites confirms this. Resp. at 42–43 (quoting *La. Health Serv. & Indem. Co. v. Janssen Biotech, Inc.*, 2021 WL 4988523, at *3 (D.N.J. Oct. 27, 2021)).

2004); *Sullivan v. DB Invs. Inc.*, 667 F.3d 273 (3d Cir. 2011) (en banc). *Neale* is binding and sheds light on the unique standing issue here. *See* Mot. at 39–40.

Third, Plaintiff's cited cases are distinguishable. *Warfarin* and *Sullivan* are about class certification and settlement—not Article III standing. *See Warfarin*, 391 F.3d at 527–40; *Sullivan*, 667 F.3d at 296–33. *Sullivan* explained the court's willingness to certify class actions where "differences in state law fell 'into a limited number of predictable patterns.'" 667 F.3d at 301 (quoting *In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998)). But the *Prudential* quote referred to common law claims, not state statutory claims. *See id.* at 347 (Jordan, J., dissenting). Where there are common law or federal law claims, a single class representative may be appropriate. *See Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co.*, 2021 WL 960875, at *6 (D.N.J. Mar. 15, 2021) (common law breach of contract claims); *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2022 WL 1013945, at *4 (D.N.J. Apr. 5, 2022) (common law negligence, breach of contract, and medical monitoring claims); *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467 (3d Cir. 2018) (ADA claim). But *Neale* suggests that plaintiffs lack standing to assert state statutory claims from states to which they have no connection. *See* Mot. at 38–40.

Last, Plaintiff criticizes TD's reliance on *Snowdy v. Mercedes-Benz USA LLC*, 2024 WL 1366446 (D.N.J. Apr. 1, 2024), because *Snowdy* "did not evaluate the

appellate consensus described by the Eleventh Circuit" and "relied heavily on *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194 (D.N.J. 2020), a case that has been criticized in this district" by *In re Valsartan*. Resp. at 45. Both critiques crumble upon closer inspection.

Plaintiff's first critique is factually wrong. *Snowdy* reasoned that the Second and Eleventh Circuit's conclusions were "at odds with *Neale*'s holding that Article III standing 'must be satisfied by at least one named plaintiff' in class actions." 2024 WL 1366446, at *7 (quoting *Neale*, 794 F.3d at 359). Likewise, *Snowdy* explained that the First Circuit's opinion clashed with *Neale* because *Neale* "emphasized that courts 'do not exercise jurisdiction over one claim simply because it arose from the same nucleus of operative fact as another claim.'" *Id.* (quoting *Neale*, 794 F.3d at 359). And *Snowdy* distinguished the Fourth Circuit's opinion because it "addressed statutory standing, not Article III standing." *Id.*

Plaintiff's second critique ignores the other cases *Snowdy* relied on. At least two of those decisions came to the same conclusion absent any reliance on *Ponzio*. *See id.* at *5 (first citing *Diaz v. FCA US LLC*, 2022 WL 4016744, at *19 (D. Del. Sept. 2, 2022); and then citing *McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *6 (D.N.J. June 6, 2014)). And at least two other decisions, which also came the same conclusion, did so by relying on *Ponzio*—even after *In re Valsartan*. *See id.* (first citing *Tijerina v. Volkswagen Grp. of Am., Inc.*, 2023 WL 6890996, at *8

(D.N.J. Oct. 19, 2023); and then citing *McMahon v. Volkswagen Aktiengesellschaft*, 2023 WL 4045156, at *8–9 (D.N.J. June 16, 2023)). That suggests that not all courts agree that *Ponzio*'s reading of Supreme Court precedent was erroneous.

Regardless, Plaintiff's criticisms of *Snowdy* cannot upset its separate analysis of *Neale*. *Snowdy*, 2024 WL 1366446, at *6. And that separate analysis is what underpinned *Snowdy*'s conclusion, like other courts, that "named plaintiffs cannot bring claims on behalf of putative class members unless they have standing to bring those claims themselves." *Id.* at *6 (quoting *Diaz*, 2022 WL 4016744, at *19).[6]

**Conclusion**

For the reasons stated above and in TD's Motion, the Court should dismiss Plaintiff's Complaint in its entirety, with prejudice.

Dated: January 17, 2025

Respectfully submitted,

*/s/ Susan M. Leming*
Susan M. Leming, Esq.
**BROWN & CONNERY, LLP**

Zach A. McEntyre (admitted *pro hac vice*)
Robert D. Griest (admitted *pro hac vice*)
**KING & SPALDING LLP**
*Attorneys for Defendant TD Bank, N.A.*

---

[6] Plaintiff also contends that if he lacks Article III standing to "represent individuals in other states with claims under other states laws, class cases asserting such claims would not exist." Resp. at 44. That is true only where a plaintiff seeks to assert state statutory claims from states that he or she has no connection to. Additional named plaintiffs from other states could obviously assert those states' statutory claims.