James E. Cecchi
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telelphone: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Counsel for Plaintiff and the putative Class*
[*Additional Counsel on Signature Page*]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEFFREY STEVENS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TD BANK, N.A.,<br><br>Defendant. | Case No. 1:24-cv-08311-RMB-AMD |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Section** **Page**


Table of Authorities ........ iii

Introduction ........ 1

Background ........ 2

Argument ........ 4

I. This Court has the power to adjudicate this case under Article III ........ 4

II. New Jersey law applies to all of Stevens' common-law claims. ........ 12

III. Stevens did not consent to the disclosure of his protected financial information. ........ 13

IV. Stevens states a valid negligence claim. ........ 18

A. TD has a common-law duty to protect its customers' personal information. ........ 19

B. TD has a statutory duty to protect personal information ........ 22

C. Stevens adequately alleges he suffered an injury. ........ 24

V. Stevens states a valid claim for breach of confidence. ........ 26

VI. Stevens states a valid claim for breach of an express contract. ........ 29

A. Stevens adequately alleges TD breached the contract. ........ 30

B. Stevens adequately alleges damages. ........ 31

VII. Stevens states a valid claim under New York General Business Law § 349. ........ 33

A. TD committed deceptive or misleading acts or practices by sharing his personal financial information without consent. ........ 33

B. TD did not fully disclose it shared financial information with third party advertisers....................................................................37

C. Stevens adequately pleads he suffered an actual injury.................38

Conclusion ..........................................................................................................40

# TABLE OF AUTHORITIES

**Case** **Page(s)**

*Adam v. Barone*,
41 F.4th 230 (3d Cir. 2022) ....................4

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021)....................18, 25

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016)....................39

*Assisted Living Assocs. of Moorestown, L.L.P. v. Moorestown Twp.*,
31 F. Supp. 2d 389 (D.N.J. 1998)....................13

*Ballou v. Bayerische Motoren Werke Aktiengesellschaft*,
2023 WL 4232165 (D.N.J. June 28, 2023)....................28

*Bank of Am., N.A. v. Westheimer*,
683 F. App'x 145 (3d Cir. 2017) ....................20

*Barclift v. Keystone Credit Servs., LLC*,
93 F.4th 136 (3d Cir. 2024) ....................9

*Beaman v. Bank of America, N.A.*,
2023 WL 4784254 (D.N.J. July 27, 2023) ....................35, 36

*Beaman v. Bank of America, N.A.*,
2024 WL 3219224 (D.N.J. June 28, 2024)....................21

*In re Capital One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) ....................23

*Caraffa v. TD Bank, N.A.*,
No. 24-2214, 2025 WL 2630736 (E.D. Pa. Sept. 11, 2025)....................9

*Carter v. Exxon Co. USA*,
177 F.3d 197 (3d Cir. 1999) ....................14

*CDK Glob., LLC v. Tulley Auto. Grp., Inc.*,
489 F. Supp. 3d 282 (D.N.J. 2020)....................17

*Charlie v. Rehoboth McKinley Christian Health Care Servs.*,
598 F. Supp. 3d 1145 (D.N.M. 2022) ........................................ 23

*Chufen Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020) ........................................ 38

*Coleman v. Martinez*,
247 N.J. 319 (2021) ........................................ 21

*Cook v. GameStop, Inc.*,
148 F.4th 153 (3d Cir. 2025) ........................................ 7, 8, 10, 11

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ........................................ 33, 35, 39

*Cottrell v. Alcon Lab'ys*,
874 F.3d 154 (3d Cir. 2017) ........................................ 5, 11, 12

*Daly v. Metro. Life Ins. Co.*,
4 Misc. 3d 887 (Sup. Ct. N.Y. Cty. 2004) ........................................ 28

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
432 F.3d 286 (3d Cir. 2005) ........................................ 5

*Davis v. Wells Fargo*,
824 F.3d 333 (3d Cir. 2016) ........................................ 4

*Del Vecchio v. Amazon.com, Inc.*,
2012 WL 1997697 (W.D. Wash. June 1, 2012) ........................................ 15

*Dittman v. UPMC*,
196 A.3d 1036 (Pa. 2018) ........................................ 19, 20

*Diversified Industries, Inc. v. Vinyl Trends, Inc.*,
2014 WL 1767471 (D.N.J. May 1, 2014) ........................................ 32

*Doe v. Bank of America, N.A.*,
2018 WL 295565 (D.N.J. Jan. 3, 2018) ........................................ 17

*Doe v. Bayhealth Med. Ctr., Inc.*,
2025 WL 1010403 (Del. Super. Ct. Apr. 4, 2025) ........................................ *passim*

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) ....................................39, 40

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ....................................5, 24

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
371 F. Supp. 3d 1150 (N.D. Ga. 2019)....................................................23

*Est. of Behringer v. Med. Ctr. at Princeton*,
592 A.2d 1251 (N.J. Super. L. Div. 1991) ..............................................27

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..............................................................7, 24

*Falcone v. Dickstein*,
92 F.4th 193 (3d Cir. 2024) ......................................................................26

*Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*,
938 F.3d 466 (3d Cir. 2019) ......................................................................29

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017)......................................................35

*First Choice Fed. Union v. Wendy's Co.*,
2017 WL 9487086 (W.D. Pa. Feb. 13, 2017)......................................16, 23

*Foster v. Whole Foods Mkt. Grp., Inc.*,
2023 WL 8520270 (2d Cir. Dec. 8, 2023)..................................................38

*In re GEICO Customer Data Breach Litig.*,
2023 WL 4778646 (E.D.N.Y. July 21, 2023)..............................................24

*In re: Google Inc. Cookie Placement Consumer Privacy Litigation*,
934 F.3d 316 (3d Cir. 2019) ..................................................................6, 7

*Gorodeski v. U.S. Bank Nat'l Ass'n*,
2016 WL 111422 (D.N.J. Jan. 11, 2016)....................................................23

*Gray v. CIT Bank, N.A.*,
2018 WL 6804273 (D.N.J. Dec. 27, 2018) (Bumb, C.J.).............................32

*Grohs v. Holmes*,
2014 WL 4896834 (D.N.J. Sept. 30, 2014) ................................................32, 33

*Hague v. Williams*,
37 N.J. 328 (1962) ......................................................................................27

*Hassan v. City of New York*,
804 F.3d 277 (3d Cir. 2015) .......................................................................12

*J Supor & Son Trucking & Rigging Co. v. Kenworth Truck Co.*,
791 F. App'x 308 (3d Cir. 2019) ................................................................18

*Jerkins v. Anderson*,
191 N.J. 285 (2007) ....................................................................................19

*In re JetBlue Airways Corp. Privacy Litigation*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) .........................................................32

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
119 F.3d 1070 (3d Cir. 1997) .....................................................................18

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018) ..................................................................25, 26

*Jones v. Com. Bancorp, Inc.*,
2006 WL 1409492 (S.D.N.Y. May 23, 2006) .................................................28

*Kamal v. J. Crew Group, Inc.*,
918 F.3d 102 (3d Cir. 2019) .......................................................................26

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ....................................28, 30, 31

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022)..........................................................24

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025).........................................................15

*Lucier v. Williams*,
841 A.2d 907 (N.J. Super. Ct. App. Div. 2004) .............................................16

*Maniscalco v. Bro. Intern. Corp. (USA)*,
793 F. Supp. 2d 696 (D.N.J. 2011), *aff'd sub nom. Maniscalco v. Bro. Intern. (USA) Corp.*, 709 F.3d 202 (3d Cir. 2013) ....................................12

*Manrique v. State Farm Mut. Auto. Ins. Co.*,
2021 WL 5745717 (S.D.N.Y. Dec. 2, 2021) ..................................................40

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020)..................................................................25

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024).............................................................25

*In re Miller's Estate*,
447 A.2d 549 (N.J. 1982) ................................................................................15

*Montera v. Premier Nutrition Corp.*,
111 F.4th 1018 (9th Cir. 2024) .........................................................................34

*Motamed v. Chubb Corp.*,
2016 WL 1162853 (D.N.J. Mar. 24, 2016) .......................................................29

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) ..............................................21, 22

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 WL 4350328 (E.D. Pa. Oct. 1, 2024) .......................................................24

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
875 F.3d 107 (2d Cir. 2017) .............................................................................37

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ..........................................................................6, 7

*Now-Casting Economics, Ltd. v. Economic Alchemy LLC*,
2019 WL 4640219 (S.D.N.Y. Sept. 24, 2019) ...................................................36

*Opris v. Sincera Reprod. Med.*,
2022 WL 1639417 (E.D. Pa. May 24, 2022).....................................................20

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015) .............................................................................39

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) ....................34

*Penn, LLC v. Freestyle Software Inc.*,
2023 WL 5994642 (D.N.J. Sept. 15, 2023) ....................16, 30

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....................15

*Polk v. Del Gatto, Inc.*,
2021 WL 3146291 (S.D.N.Y. July 23, 2021) ....................40

*Popa v. Harriet Carter Gifts, Inc.*,
772 F. Supp. 3d 592 (W.D. Pa. 2025) ....................15

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023) ....................37

*Roach v. BM Motoring, LLC*,
155 A.3d 985 (N.J. 2017) ....................16

*Robinson v. Vivirito*,
217 N.J. 199 (2014) ....................19

*Sackin v. TransPerfect Glob., Inc.*,
278 F. Supp. 3d 739 (S.D.N.Y. 2017) ....................21

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) ....................7

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ....................13

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................15

*Spencer Forrest, Inc. v. Folica, Inc.*,
2008 WL 11383456 (D.N.J. June 27, 2008) ....................31

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016) ....................11, 12

*Strachan v. John F. Kennedy Mem'l Hosp.*,
109 N.J. 523 (1988) ........................................................................................19

*Stutman v. Chem Bank*,
95 N.Y.2d 24 (2000)........................................................................................34

*Tessler & Son, Inc. v. Sonitrol Sec. Sys. of N. New Jersey, Inc.*,
497 A.2d 530 (N.J. Super. Ct. App. Div. 1985) ..............................................18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................7, 9

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
489 U.S. 749 (1989)........................................................................................7

*Vorhees v. Tolia*,
2020 WL 1272193 (D.N.J. Mar. 17, 2020), *aff'd sub nom.*
*Voorhees v. Tolia*, 2023 WL 4636738 (3d Cir. July 20, 2023) ..........................27

*In re Wawa, Inc. Data Sec. Litig.*,
2021 WL 1818494 (E.D. Pa. May 6, 2021)................................................18, 23

*White v. Samsung Elecs. Am., Inc.*,
971 F.2d 1395 (9th Cir. 1992) ........................................................................9

**Statutes, Rules, and Regulations**

Fed. R. Civ. P. 12(b)(1)..............................................................................4, 11

Federal Trade Commission Act Section 5, 15 U.S.C. § 45 .............................*passim*

Gramm-Leach-Bliley Act Privacy Rule, 12 CFR § 1016......................................35

Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 .......................................*passim*

Health Insurance Portability and Accountability Act of 1996,
42 U.S.C. § 1320d..........................................................................................27, 29

New Jersey Consumer Fraud Act, N.J. Rev. Stat. § 56:8 .......................................22

New York General Business Law, Section 349.....................................1, 33, 36, 39

Regulation P, 16 CFR § 313 ..............................................................................35

**Other Authorities**

86 Fed. Reg. 70272-01 (Dec. 9, 2021)....................................................................9

Restatement (Second) of Torts § 302 (Am. L. Inst. 1965) ..................................9, 19

Zahra Takhshid, *Data as Likeness*, 112 Geo. L.J. 1161, 1183 (2024) ......................9

## Introduction

TD Bank, N.A. secretly installed tracking technology on its website, allowing Meta Platforms and Google to harvest sensitive personally identifiable financial information. TD's conduct brazenly violated both federal banking privacy laws and its own privacy promises to customers. When customers like Jeffrey Stevens logged into TD's platform to check their accounts or apply for loans, TD enabled Meta and Google to capture their every move. The tracking technology transmitted detailed records of customers' banking activities, including unique identifiers linking customers to TD, the banking products they viewed or selected, and their pattern of account interactions. All this sensitive financial data flowed directly to Meta and Google without any customers' knowledge or consent.

Stevens brings this class action to hold TD accountable and, at the Court's direction, brings only his strongest claims for (1) negligence; (2) breach of confidence; (3) breach of contract; and (4) a violation of New York General Business Law Section 349. Stevens' well-pleaded allegations support the obvious—a bank cannot trade its customers' private financial information for marketing purposes (especially when it tells them it won't do so and federal law prohibits it). The Court should deny TD's motion to dismiss.

## Background

TD operates an online financial services platform—www.td.com and www.tdbank.com—where its customers can apply for financial products and access their account information. ECF 54 ¶ 2.[1] TD installed hidden tracking technologies and related applications offered by Meta Platforms, Inc. (f/k/a Facebook) and Google LLC on its website. ¶¶ 3-4, 32-46. These tracking technologies collected data on customers' use of TD's platform and disclosed that information to Meta and Google. *Id.* The technologies function by placing devices on users' computers called "cookies" that secretly compel users' web browsers to transmit each user's identity and browsing history to Meta and Google. *Id.*

The information TD disclosed to Meta included: (1) data identifying the customer using TD's platform, including a unique identifier referred to as a "Facebook ID," and data identifying the customer's web browser, ¶ 40; (2) the URLs of visited pages, ¶ 41; (3) data showing the financial products the user added to their "cart," ¶ 41(b); and (4) data showing the buttons the user clicked on TD's platform, *id.* TD disclosed similar information to Google. ¶¶ 44-46. Collectively, this information permitted Meta and Google (and anyone else who received it) to identify each user as a TD customer and identify the financial services they viewed, interacted with, or purchased on TD's platform. ¶¶ 41-46.

[1] Citations to "¶ __" refer to paragraphs in Steven's operative complaint, ECF 54.

TD, Meta, and Google profited from TD's disclosure of their customers' personal information. ¶¶ 3, 38. TD profited because Meta and Google used the information to optimize TD's marketing. *Id*. Meta and Google, in turn, profited by selling TD more advertising and optimizing their product offerings and marketing for their other clients. *Id.*

The complaint alleges that these disclosures violated, among other laws, the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809 ("GLBA"). ¶¶ 6-7, 47-56. Under the GLBA, financial institutions like TD are prohibited from disclosing a consumer's "personally identifiable financial information" without advance notice and opt-out rights. ¶¶ 6, 47-52. Personal financial information includes any information that a consumer provides to obtain a financial product or service, or obtained by a financial institution about a customer in connection with providing a financial product or service. *Id*. The GLBA includes specific examples of protected personal financial information that are indistinguishable from the information TD disclosed to Meta here, including, among other things: (1) "[t]he fact that an individual is or has been one of [the financial institution's] customers or has obtained a financial product or service from [the financial institution]"; (2) "any information [the institution] collect[s] through an Internet 'cookie'"; and (3) "any information that … [the institution] . . . obtain[s] in connection with . . . servicing a credit account." *Id.*

Stevens is a TD customer. ¶ 12. He used TD's online platform to access and obtain TD's financial services. ¶¶ 12-28. Each time he did so, his interactions with TD's platform were tracked and disclosed to Meta and Google. *Id.* Through that systematic and automatic process, TD sent Meta and Google: (1) information identifying Stevens as a TD customer; (2) information collected through internet cookies; and (3) information TD obtained while servicing Stevens' account. *Id.* Stevens did not consent to these disclosures. *Id.* And had Stevens known that TD was sharing his personal financial information with Meta and Google every time he accessed his account online, he would have used another bank that provided superior terms of service, including higher interest rates. *Id.*

## Argument

### I. This Court has the power to adjudicate this case under Article III

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis v. Wells Fargo*, 824 F.3d 333, 348-49 (3d Cir. 2016). When analyzing standing under 12(b)(1), courts are "limited to 'a screening for mere frivolity.'" *Adam v. Barone*, 41 F.4th 230, 234 (3d Cir. 2022). Thus dismissal for in this context is appropriate only where "the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Davis*, 824 F.3d at 350.

Indeed, the inquiry is "focus[ed] on whether the plaintiff is the proper party to bring [the] claims." *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017).

TD contends that Stevens has not suffered a concrete harm under Article III because the information is not "sensitive or private." ECF 57-1 ("Mot.") at 8-13. TD is wrong. The harm to Stevens' economic and privacy interests is real.

To begin with, TD's entire argument focuses on standing based on intangible privacy harms. Mot. 8. TD does not dispute (a) Stevens is the proper party to bring the claims at issue, (b) the harm to his economic interest is cognizable, and (c) his claims arise under laws that allow for the economic relief requested (*e.g.*, for breach of contract). *See Cottrell*, 874 F.3d at 165; *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005) ("Monetary harm is a classic form of injury-in-fact," and standing in cases asserting economic loss "is often assumed without discussion."). *See also, e.g.*, *Doe v. Microsoft Corp.,* 2023 WL 8780879, at *4 (W.D. Wash. Dec. 19, 2023) ("personal data carries financial value"); ¶¶ 5, 38, 43, 82 (describing the value of Stevens' data and how to quantify it for economic damages). Even if TD's argument on Stevens' purported lack of a personal privacy interest in his data was correct (and it's not), Stevens would still have standing to pursue damages based on his economic interest.

TD's privacy arguments nevertheless fail. This argument is grounded in TD's erroneous view that the information it disclosed is not sensitive or private because

the information is concerns browsing history. Mot. 9-10. That is a mischaracterization of the Complaint. In reality, the Complaint alleges the disclosure of customer data *from within TD's accountholder portal*, including time-stamped, personally identifiable records of its customers, such as Stevens and other class members, including among other things: (a) the fact that the individual is or has been one of TD Bank's customers or has obtained a financial product or service from TD Bank, (b) information related to applications for credit cards or other financial products and services, and (c) information that TD obtains in connection with servicing its customers' accounts. ¶ 4. And those disclosures violated not only the GLBA (¶¶ 47-52) but *also* TD's own privacy notice (¶ 55).[2]

TD recognizes that both *Nickelodeon* and *Google Cookie Placement*, establish Article III standing when a defendant disclaims sharing personal data and does it anyway. Mot. 13. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) ("plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of

[2] Each of TD's authorities is distinguishable because they involve non-private information, not information from within a secure authenticated portal, and especially not at a financial institution subject to the GLBA. And even TD's authority recognizes this distinction. Mot. 9 (citing *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 340 (E.D. Pa. 2023), which recognized in its decision that the case would be different if it involved "financial data from banks").

legally protected information"); *In re: Google Inc. Cookie Placement Consumer Privacy Litigation*, 934 F.3d 316 (3d Cir. 2019). As the Third Circuit explained:

> History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party [*e.g.*, Meta], tracks a person's internet browser activity without authorization. Privacy torts have become well-ensconced in the fabric of American law. Indeed, as Justice Thomas has explained, private actions to remedy intrusions on the private sphere trace back to England, where a property owner needed only to show that another person placed a foot on his property to establish a traditional case or controversy. Likewise, Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private.

*Google Cookie Placement*, 934 F.3d at 325 (cleaned up). The Supreme Court and other circuit courts agree.[3] And the Third Circuit recently relied on both *Nickelodeon* and *Google Cookie Placement* in *Cook*, TD's primary authority. Mot. 8 (citing *Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025)).

Tellingly, TD did not make an Article III challenge in its original brief or rely on either *Nickelodeon* or *Google Cookie Placement* for this argument. ECF 18-3.

---

[3] *See, e.g.*, *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989) ("both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person"); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (providing the tort of "disclosure of private information" as an example of a concrete and cognizable harm); *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 541 (2d Cir. 2024) ("[E]xposure of [] personally identifiable information to unauthorized third parties" via online tracking technology gives rise to a concrete injury-in-fact and thus Article III jurisdiction); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("[V]iolations of the right to privacy have long been actionable at common law" and thus give rise to Article III standing).

The challenge doesn't fare any better under *Cook*, which is readily distinguishable. *Cook* involved allegations that GameStop, an online retailer, installed functional technology called "session replay code" on its website that disclosed general consumer interaction data to Microsoft, the technology provider, in violation of Pennsylvania's wiretapping law. *Cook*, 148 F.4th at 156. The consumer argued the disclosure of "*any* information" about the consumers' website interaction was a concrete privacy injury that conferred Article III standing. *Id.* at 159 (emphasis in original). The Third Circuit didn't credit the view that such information was private. In contrast, the technology at issue here is *advertising* technology that TD is using to disclose protected *financial* information that federal law, rules, and regulations protect from disclosure, and that TD itself promised it will not disclose.[4] Indeed, a

[4] TD contends that the mere disclosure of a person's identity does not establish an injury in fact. Mot. 11. Here, TD agreed not to disclose "customers' personal information" (¶ 55) and the GLBA also protects a customers' identity from disclosure (¶ 50), and disclosed the data anyway. Disclosure of customer identity (without more) also establishes standing, because as the FTC explained in its rulemaking why customer identity is particularly sensitive (over industry objections): "financial institutions are responsible for handling and maintaining financial information that is both important to consumers and valuable to attackers who try to obtain the information for financial gain. Even the fact that a consumer is a customer of a particular financial institution is generally nonpublic and can be sensitive. For example, the revelation of a customer relationship between a consumer and a particular type of financial institution, such as debt collectors or payday lenders, may make those customers' information more vulnerable to compromise by facilitating social engineering or similar attacks. ***The nature of the relationship between customers and their financial institutions makes all nonpublic information held by the financial institution inherently sensitive and worthy of . .***

similar action in the Third Circuit is presently exercising Article III jurisdiction in a privacy case against TD *after Cook*. *See Caraffa v. TD Bank, N.A.*, No. 24-2214, 2025 WL 2630736, at *1, n.1 (E.D. Pa. Sept. 11, 2025).

To allege intangible privacy harms in the Third Circuit, plaintiffs need only show that their injury is "similar in kind" to a traditionally recognized harm (not that it satisfies every element of the common-law analogue). *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 144 (3d Cir. 2024). As *Barclift* explained, *TransUnion* "speaks only of harms, not elements," and "if the Court wanted us to compare elements, it would have simply said so." *Id.* at 145. The court also identified four traditional privacy torts that provide the historical grounding *TransUnion* requires: "intrusion upon seclusion, appropriation of name or likeness, unreasonable publicity given to another's private life, and false light." *Id.* (citing Restatement (Second) of Torts § 652A).[5]

. ***protection***[.]" Standards for Safeguarding Customer Information, 86 Fed. Reg. 70272-01 (Dec. 9, 2021) (emphasis added).

[5] TD does not challenge appropriation of likeness as a common-law analogue, which protects against unauthorized commercial exploitation of one's identity, including personal data. *See* Restatement (Second) of Torts § 652C; *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1398 (9th Cir. 1992) ("It is not important how the defendant has appropriated the plaintiff's identity, but whether the defendant has done so."); Zahra Takhshid, *Data as Likeness*, 112 Geo. L.J. 1161, 1183 (2024) (explaining personal data has become "the most-used feature of our identity by third parties"). Stevens plausibly alleges appropriation. ¶¶ 19, 21, 24-25, 31-38, 43-46.

***Disclosure of private information***. TD reiterates its argument that the information is not private or sensitive, which is wrong for the reasons explained above. Mot. 11. TD further contends that there is no public disclosure based on *Cook*. *Id.* That is wrong too. In *Cook*, the Third Circuit did not consider a disclosure to Microsoft a public disclosure because in that context, Microsoft was acting in its capacity as a vendor of functional technology, which was an "intermediary" for GameStop, rather than a genuine third party, similar to a debt collector collecting on behalf of a creditor). *Cook*, 148 F.4th at 159. In contrast, Stevens alleges that TD discloses financial information to Meta and Google who then use it for their own benefit (*i.e.*, to build profiles of individuals so that Meta and Google can later target them with advertising across the internet). ¶¶ 3, 5, 38, 44-46. Moreover, how Google and Meta use data collected is a fact question.

***Intrusion upon seclusion***. Contrary to TD's contention, the common-law analogue for this tort does not require data to be sensitive or private (although it is here). *Cook*, 148 F.4th at 160 ("Unlike the disclosure of private information, the harm caused by intrusion upon seclusion does not turn on the exposure of personal or sensitive information"). TD placed cookies ("information collecting devices") on users' computers without their authorization and targeted them with unsolicited advertising. ¶¶ 6, 21, 28, 36, 37. Each act certainly "disturbs" Steven's and class members' "solitude." *Cook*, 148 F.4th at 160. And where a consumer might believe

that their general internet browsing is not private, as in *Cook*, the same cannot be said for a bank customer using their online banking portal, especially when the bank promised their information would be private as required by federal law.

TD asks this Court to hold the data at issue is neither sensitive nor private, despite: (a) the disclosures happened from within TD's secure online banking portal, (b) the information disclosed is expressly protected from disclosure under federal law, and (c) TD itself promised not to disclose the information. TD's argument has no merit; TD simply minimizes the application of the GLBA and ignores the other bases underpinning the privacy of this information. As to the GLBA, TD argues that "it is irrelevant whether the information TD allegedly disclosed about Plaintiff falls within the scope of the GLBA" because Congress may only elevate "*de facto injuries*." Mot. 12-13. But Congress's judgment is not irrelevant: "legally protected interests may arise . . . solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Cottrell*, 874 F.3d at 164.[6] Under Rule 12(b)(1), the court must assume that TD disclosed "personally identifiable financial information" in

---

[6] Congress's judgment on harm is always "instructive and important," even when not dispositive, but never irrelevant. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016). Here, Congress judged that the exact information is protected "nonpublic financial information," and the Court must therefore assume that TD disclosed nonpublic financial information when evaluating injury-in-fact. The Court may evaluate whether the disclosure of such nonpublic financial information is analogous to the privacy harms at common-law (it is), but it is not free to disregard the categorization Congress prescribed.

violation of the GLBA (¶¶ 50-52) and its own privacy promises, ¶ 55. *See Hassan v. City of New York*, 804 F.3d 277, 289 (3d Cir. 2015) (courts must "assume that the party asserting federal jurisdiction is correct on the legal merits of his claim, that a decision on the merits would be favorable, and that the requested relief would be granted."); *Cottrell*, 874 F.3d at 165 (it is an error to "blend[] standing and merits together"). What Congress cannot do is elevate "bare procedural violations" that do not cause actual harm into a constitutional injury. *Spoke*o, 578 U.S. at 342. That is not what Congress did when implementing the GLBA. TD does not argue that its violations are 'merely procedural' nor could they, as the GLBA provides as the statute provides substantive protections affording banking customers a right to their privacy *which TD recognizes in its own privacy notice*. A violation of these privacy interests is an intangible harm that can be adjudicated in federal court.

## II. New Jersey law applies to all of Stevens' common-law claims.

The parties agree New Jersey law governs Stevens' breach of contract and negligence claims. Mot. 13-16. No choice of law analysis is required when there is no actual conflict between the competing jurisdictions' laws. *Maniscalco v. Bro. Intern. Corp. (USA)*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011), *aff'd sub nom. Maniscalco v. Bro. Intern. (USA) Corp.*, 709 F.3d 202 (3d Cir. 2013).

The same is true for Stevens' breach of confidence claim. That is, unless the Court accepts TD's argument that breach of confidence is not cognizable under New

Jersey law. If the Court agrees with Stevens that the claim is cognizable, New Jersey law applies and no further analysis is needed. If the Court concludes otherwise, New York law would govern, and the claim survives for the reasons discussed below.

## III. Stevens did not consent to the disclosure of his protected financial information.

TD argues that Stevens consented to the disclosure of his personal financial information. Mot. 16-18. But consent "is a factual question, [and] the Court need not resolve it at the motion to dismiss stage." *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1044 (N.D. Cal. 2025). Stevens did not consent to disclosing his financial information so those third parties could market to him. ¶ 27.

Even on the merits, TD's consent argument fails. TD points to general advertising disclosures that mention "TD 'may collect, use, retain, and share personal or other information about [him].'" Mot. 16. But those disclosures say nothing about what Meta and Google may *do* with TD's customer data. They do not disclose that Meta and Google may use the data for their own marketing purposes, incorporate it into advertising products available to other advertisers, or aggregate it with data from other sources to build targeting profiles. The privacy notice, by contrast, specifically addresses this conduct: Does TD share personal information with nonaffiliates "so they can market to you"? "No." Mot., Ex. F.

The specific controls the general. "[I]n construing the contract as a whole, specific terms or clauses control general terms or clauses." *Assisted Living Assocs.*

*of Moorestown, L.L.P. v. Moorestown Twp.*, 31 F. Supp. 2d 389, 399 (D.N.J. 1998). TD's privacy notice specifically addresses what nonaffiliated third parties may do with customer data. The advertising disclosures do not. Identifying the *recipient* of shared data is not the same as disclosing what the recipient will *do* with that data. The privacy notice is the only disclosure that speaks to whether Meta and Google may use TD customer data to market to those customers. Reading TD's disclosures to permit what the privacy notice expressly prohibits would render that prohibition "superfluous"—an interpretation New Jersey law rejects. *See Carter v. Exxon Co. USA*, 177 F.3d 197, 206 (3d Cir. 1999) ("give each [contract] provision meaning, rather than rendering some provisions superfluous.").

Stevens' allegations also foreclose any argument that Meta and Google function as mere service providers executing TD's marketing campaigns. Stevens alleges that these companies independently exploit TD customer data: they aggregate it with data from other sources, use it to build audiences available to other advertisers, and leverage it to improve their own products and ad-targeting capabilities. ¶¶ 3, 38. When a competitor bank or credit card company uses Meta's targeting tools to reach consumers who have shown interest in banking products, it is marketing to TD's customers using data TD shared with Meta. That is just what the privacy notice promised would not happen.

TD's cases do not help it. In *Smith v. Facebook, Inc.*, the plaintiffs sued Meta for tracking their activity on "pages contain[ing] general health information that is accessible to the public at large." 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017). They did not identify any policy that Meta's conduct violated. *Id.* at 954. To the contrary, they could only complain that the policy "disclos[ing] the precise conduct at issue" was "too 'vague' and 'broad' to be enforceable." *Id.* Here, Stevens identifies protected financial information collected in TD's authenticated portal, shared in violation of a specific disclosure that promised the opposite.

*Perkins v. LinkedIn Corp.* further undermines TD's position. There, after describing the conduct, the defendant offered consumers "alongside the disclosure . . . an express opt out opportunity[.]" 53 F. Supp. 3d 1190, 1212-13 (N.D. Cal. 2014). TD expressly disclaims such opportunity—because TD's privacy notice says it does not share information for these purposes in the first place. Mot., Ex. F.

TD's remaining cases involved accurate disclosures about information collected on retail websites. *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054-57 (N.D. Cal. 2025); *Popa v. Harriet Carter Gifts, Inc.*, 772 F. Supp. 3d 592, 603-04 (W.D. Pa. 2025); *Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697, at *6-7 (W.D. Wash. June 1, 2012). Here, the disclosure is false.

In any event, "[w]here an ambiguity appears in a written agreement, the writing is to be strictly construed against the draftsman." *In re Miller's Estate*, 447

A.2d 549, 555 (N.J. 1982); *see also Roach v. BM Motoring, LLC*, 155 A.3d 985, 994 (N.J. 2017) (noting this principle is especially strong in contracts of adhesion). If there is any tension between TD's privacy notice and its advertising disclosures, the more protective promise controls.

TD also invokes a limitation-of-liability clause in its customer agreement. Mot. 18-19. This argument fails for two reasons.

*First*, the argument is premature. TD's own authority recognizes as much. In *Penn, LLC v. Freestyle Software Inc.*, the court held it was too early to evaluate a limitation-of-liability provision where the allegations indicated the limitation was unconscionable. 2023 WL 5994642, at *5 (D.N.J. Sept. 15, 2023). Here too.

*Second*, even on the merits, TD's clause is unenforceable. New Jersey courts do "not hesitate[] to strike limited liability clauses that are unconscionable or in violation of public policy." *Lucier v. Williams*, 841 A.2d 907, 911 (N.J. Super. Ct. App. Div. 2004). In determining enforceability, courts examine the contract's adhesive nature, the parties' relative bargaining positions, the degree of economic compulsion on the adhering party, and the public interests affected. *Id.* "The first leading principle is that contractual exemption from liability for negligence is rarely allowed to stand where the contracting parties are not on roughly equal bargaining terms." *Id.*

TD's own cases demonstrate the clause is unenforceable. In *Doe v. Bank of America, N.A.*, the court refused to enforce a bank's limitation-of-liability clause in a deposit agreement. 2018 WL 295565, at *8 (D.N.J. Jan. 3, 2018). The court found the clause potentially unconscionable because: (1) the agreement was a classic contract of adhesion presented in pre-printed format without opportunity for negotiation; (2) the parties' bargaining positions were grossly disparate, with the bank holding substantial economic power and superior expertise; (3) the limitation unreasonably allocated risk by foreclosing recovery for readily demonstrable damages; and (4) the provision was contrary to public policy as expressed in consumer-protection statutes. *Id.*

The same analysis applies here. TD's agreement is a classic contract of adhesion. It was presented to Stevens on a standardized online statement, prepared by TD, on a take-it-or-leave-it basis, without any opportunity for negotiation. ¶¶ 93-94. The bargaining positions were grossly disparate: TD is a sophisticated financial institution, ¶ 10, while Stevens is an individual consumer, ¶ 12. And enforcing the clause would contravene the public policies underlying the GLBA, the FTC Act, and New York's consumer-protection statute.

TD's cases enforcing limitation-of-liability clauses only underscore the point. Each involved sophisticated commercial parties with roughly equal bargaining power—not a consumer and a major financial institution. *See CDK Glob., LLC v.*

*Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 315 (D.N.J. 2020) (enforcing clause where "both parties were sophisticated business entities" with ability to negotiate); *J Supor & Son Trucking & Rigging Co. v. Kenworth Truck Co.*, 791 F. App'x 308, 314 (3d Cir. 2019) (no unconscionability where contract was between corporations for business purposes); *Tessler & Son, Inc. v. Sonitrol Sec. Sys. of N. New Jersey, Inc.*, 497 A.2d 530, 532 (N.J. Super. Ct. App. Div. 1985) (enforcing clause only where "contract d[id] not grow out of unequal bargaining power").

## IV. Stevens states a valid negligence claim.

TD collected Stevens' sensitive personal financial information. And without Stevens' knowledge or consent, TD disclosed that information to Meta and Google by embedding tracking technology on its website. ¶¶ 12-28, 39-46, 78. These allegations state a claim for negligence.[7]

---

[7] At the outset, TD asserts in a footnote that if the court finds a contract exists between the parties, the economic-loss rule will bar Stevens' tort claims. Mot. 27 n.16. Because TD fails to adequately present this argument, it is waived. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp*., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997). In any event, TD is wrong. For one thing, TD is part of an "identifiable class that [TD] should have reasonabl[y] foreseen was likely to be injured by [its] conduct." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *16 n.29 (D.N.J. Dec. 16, 2021) (quoting *Lone Star Nat. Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 426 (5th Cir. 2013) (applying New Jersey law)); *Doe v. Bayhealth Med. Ctr., Inc.*, 2025 WL 1010403, at *8 (Del. Super. Ct. Apr. 4, 2025) (rejecting economic loss doctrine argument under Delaware law based on violation of privacy). And for another, "[t]he duty to maintain and protect sensitive data with reasonable care," as explained below, "'exists independently from any contractual obligations between the parties.'" *In re Wawa, Inc. Data Sec.*

To prevail, Stevens must allege duty, breach, causation, and damages. *Robinson v. Vivirito*, 217 N.J. 199, 208 (2014). TD challenges only duty and injury.[8] Those challenges fail.

### A. TD has a common-law duty to protect its customers' personal information.

Whether a duty exists is a question of law. *Strachan v. John F. Kennedy Mem'l Hosp.*, 109 N.J. 523, 529 (1988). New Jersey courts ask whether the harm was foreseeable and whether fairness and policy support imposing a duty. *Jerkins v. Anderson*, 191 N.J. 285, 294 (2007) (citations omitted). Both factors favor Stevens.

*Foreseeability*. TD collected and stored Stevens' sensitive personal information. ¶¶ 12-28, 40-46. Anyone who takes such an affirmative act "is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm." Restatement (Second) of Torts § 302 cmt. a (Am. L. Inst. 1965).[9] TD knew—or should have known—that embedding the tracking technologies on its website would expose customers' sensitive information to Meta

*Litig.*, 2021 WL 1818494, at *4 (E.D. Pa. May 6, 2021) (quoting *Dittman v. UPMC*, 196 A.3d 1036, 1056 (Pa. 2018)).

[8] Because TD concedes there is no difference between New Jersey or Delaware law (Mot. 14), the Court may rely on Delaware caselaw too, which supports Plaintiff. *Bayhealth Med. Ctr.*, 2025 WL 1010403, at *9 (Delaware law).

[9] *See Dittman*, 196 A.3d at 1046 (applying Pennsylvania law and noting that fairness factors, which largely mirror New Jersey's fairness factors, are less relevant in cases "involving application of an existing duty [such as this common-law one] to a novel factual scenario," rather than "the imposition of a new, affirmative duty").

and Google. ¶ 78. And TD was uniquely positioned to prevent that harm: it "alone could have ensured that it did not disclose the nonpublic personal information . . . without its customers' consent." ¶ 75. Courts routinely find a duty under these circumstances. *Dittman*, 196 A.3d at 1046 (holding that defendants who affirmatively collect and store personal information owe a duty to exercise reasonable care); *Opris v. Sincera Reprod. Med.*, 2022 WL 1639417, at *5 (E.D. Pa. May 24, 2022) (finding duty existed where defendant "affirmatively collected and stored sensitive [personal information] received from [p]laintiffs"); *Bayhealth Med. Ctr.*, 2025 WL 1010403, at *9 (same under Delaware law).

*Fairness and policy*. TD argues it lacks a special relationship with its customers. New Jersey courts have long recognized that a duty between a bank and a customer may arise when the bank "knows or has reason to know that the customer is placing his trust and confidence in the bank and [is] relying on the bank . . . to counsel and inform him." *Bank of Am., N.A. v. Westheimer*, 683 F. App'x 145, 149 (3d Cir. 2017) (alteration and omission in original) (quoting *United Jersey Bank v. Kensey*, 704 A.2d 38, 45 (N.J. Super. Ct. App. Div. 1997)). TD's own privacy notice promised that it would "not share [customers' personal information] with nonaffiliates so they can market to [customers]." ¶ 55 (first alteration in original).

TD should have known that customers would rely on that representation.[10] *see also Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2023 WL 7017734, at *5 & n.5 (E.D. Pa. Oct. 10, 2023) (duty existed where defendant "knew or should have known" plaintiff would rely on its privacy representations).

The public interest points the same direction. Personal information is increasingly valuable and vulnerable. The public has a strong interest in ensuring banks safeguard the sensitive data they collect. And imposing a duty here imposes only a modest burden on TD relative to the potential harm. *See Coleman v. Martinez*, 247 N.J. 319, 354 (2021) ("When . . . the burden on a defendant is low in relation to the potential harm posed, imposition of duty is fair and appropriate."). Potential liability will give financial institutions "an economic incentive to act reasonably in protecting" customer information.[11] *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp.

---

[10] TD contends that TD did not "encourage" Plaintiff to place confidence in TD with respect to its data security, relying on *Beaman v. Bank of America, N.A. (Beaman II)*, 2024 WL 3219224, at *23 (D.N.J. June 28, 2024). Mot. 22-23 (citing cases). *Beaman II* did not implicate federal banking privacy laws, such as the GLBA, or a violation of a bank's own privacy promises. Mot. 23. *Beaman II*'s encouragement rationale makes little sense from a fairness and policy perspective when there is a federal law on point, but even if it did, publishing a notice of privacy practices and incorporating that notice into its contract with plaintiff is more than enough "encouragement" to satisfy that standard. ¶¶ 94-98.

[11] TD contends New Jersey has "declined to impose the duty upon which Plaintiff relies here" seeking to limit its duty to the definition of personal information in a New Jersey identity theft statute. Mot. 22 (citing N.J. Rev. Stat. § 56:8-161). That statute does not purport to be an exclusive definition of personal information under New Jersey law. Nor could it displace the definition under federal law under the

3d 739, 748 (S.D.N.Y. 2017). At a minimum, without further factual development, the Court shouldn't "close th[e] door" on Stevens' negligence claim at this stage. *Murphy*, 2023 WL 7017734, at *5.

### B. TD has a statutory duty to protect personal information.

TD concedes that violations of the GLBA "may be evidence of negligence." Mot. 24. It protests only that Stevens' allegations are "conclusory." *Id*. at 25. But TD does not say what additional detail would suffice. For good reason. Stevens explains TD's GLBA violations in considerable detail.

The GLBA Privacy rule prohibits financial institutions from disclosing nonpublic personal information to nonaffiliated third parties without clear notice and an opportunity to opt out, and the FTC has interpreted Section 5 of the FTC Act to require compliance. ¶¶ 50-54, 58. Stevens alleges that TD violated both provisions by disclosing his nonpublic personal information to Meta and Google without the required notice or consent. ¶¶ 56, 59. These allegations are not conclusory. They identify the legal standard, the conduct, and the violation. Stevens may use the GLBA "as 'guideposts' for establishing duty under [his] negligence claim." *Bayhealth Med. Ctr.*, 2025 WL 1010403, at *10.

---

Supremacy Clause. TD itself does not use the definition in N.J. Rev. Stat. § 56:8-161 in its privacy notice and instead refers customers to its *federal* obligations (*e.g.*, under the GLBA). *See* Mot., Ex. F. There is no reason to cabin TD's duty here in that manner.

Stevens also pleads negligence per se. A plaintiff may invoke negligence per se where the defendant "violated a statute that was designed to protect a class of individuals to whom the plaintiff belonged." *Gorodeski v. U.S. Bank Nat'l Ass'n*, 2016 WL 111422, at *5 (D.N.J. Jan. 11, 2016). The GLBA was designed to protect consumers like Stevens from unauthorized disclosure of their personal information, precisely what TD did here. Courts routinely permit negligence per se claims based on GLBA and FTC Act violations. *See*, *e.g.*, *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407 (E.D. Va. 2020) (collecting cases); *Charlie v. Rehoboth McKinley Christian Health Care Servs.*, 598 F. Supp. 3d 1145, 1152 (D.N.M. 2022); *First Choice Fed. Union v. Wendy's Co.*, 2017 WL 9487086, at *4 (W.D. Pa. Feb. 13, 2017); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1174 (N.D. Ga. 2019).

TD may dispute whether New Jersey law recognizes negligence per se based on these federal statutes. But the Court need not resolve that question now. As other courts have recognized, "a motion for summary judgment or pre-trial motion practice would be a more appropriate vehicle 'to analyze the applicability of the FTC[A and the GLBA] as . . . predicate[s]" for negligence per se. *See In re Wawa*, 2021 WL 1818494, at *7 (quoting *In re Rutter's Inc. Data Sec. Breach Litig.*, 2021 WL 29054, at *11 (M.D. Pa. Jan. 5, 2021)).

### C. Stevens adequately alleges he suffered an injury.

Stevens advances two theories of harm from TD's nonconsensual disclosure of his personal information: (1) impairment of his right to control the disclosure of that information, (2) failure to compensate Plaintiff for the value of the data TD used for its own marketing purposes without compensating. *E.g.*, ¶¶ 80-82. Courts routinely recognize both theories.

*Loss of control*. The unauthorized disclosure of personal information is itself a cognizable injury. *See Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328, at *6 (E.D. Pa. Oct. 1, 2024) (plaintiffs adequately alleged injury where "disclosure of Plaintiffs' IIHI to Meta . . . impaired Plaintiffs' control over their IIHI"); *Bayhealth Med. Ctr.*, 2025 WL 1010403, at *9 (same); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (plaintiffs adequately alleged "harm or a material risk of harm to their interest in controlling their personal information"); *In re GEICO Customer Data Breach Litig.*, 2023 WL 4778646, at *11 (E.D.N.Y. July 21, 2023) ("'An individual's control of information concerning her person . . . was a cognizable interest at common law.'" (citation omitted)).

*Value of data*. Personal data has economic value, and a plaintiff suffers injury when a defendant takes and uses that data without compensation or consent. *See Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 802 (N.D. Cal. 2022) (collecting cases on value of consumer data); *Microsoft*, 2023 WL 8780879, at *4 (plaintiff

adequately "alleges that her personal data carries financial value"); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) (same); *see also In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *18 (D.N.J. Dec. 16, 2021) ("Personal Information is valuable to a business who retains it and uses it," particularly where it is "commoditize[d]" for profit).

Stevens alleges both injuries. By disclosing his confidential data without consent, TD deprived Stevens of control over that data. ¶¶ 80-81. And by using Stevens' data for marketing purposes without consent, TD took something of value without compensation. ¶ 82; *see In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1020, 1024 (N.D. Cal. 2024) ("If a user shares information with the expectation that it will be protected but the recipient does not actually protect it, then the user has surrendered in that transaction more than she otherwise would have. This constitutes an injury to money or property.").

TD calls these allegations conclusory. Mot. 25. They are not. Stevens identifies both the nature of his injury and a method for measuring it (*e.g.*, a reasonable royalty for the value of his data). ¶ 82. And a plaintiff "need not develop detailed economic models at the pleading stage." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 287 (3d Cir. 2018);

*see also Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir. 2024) ("That [plaintiff's] alleged injuries are difficult to quantify is irrelevant.").

TD contends that a reasonable royalty is a remedy for intellectual property theft, not for data privacy violation. Mot. 26-27. But there is no reason the concept should be so limited. A royalty is simply a measure of what TD should have paid to use Stevens' data lawfully. Whether labeled a "reasonable royalty" or the "value of the information TD took without paying for it," the theory is the same. TD used something valuable that belonged to Stevens without compensating him. Stevens will quantify his damages though expert discovery. At the pleading stage, his allegations are sufficient. *Johnson & Johnson*, 903 F.3d at 287 (plaintiffs are not required to "allege the *exact* value of [their] economic injury at the pleading stage").

## V. Stevens states a valid claim for breach of confidence.

To state a claim for breach of confidence, a plaintiff must plead: (i) "the unconsented, unprivileged disclosure to a third party of nonpublic information," (ii) that the "defendant has learned within a confidential relationship," and (iii) that enables a "third party to gain unauthorized access to a plaintiff's personal information." *Kamal v. J. Crew Group, Inc.*, 918 F.3d 102, 114 (3d Cir. 2019) (cleaned up). Stevens is a TD customer who provided his financial information to TD online. ¶¶ 12-28. And TD breached that duty by disclosing this information to third parties without his consent, causing him damages. *Id.*

TD argues that breach of confidence isn't recognized as a cause of action under New Jersey law citing *Vorhees.* Mot. 28 (citing *Vorhees v. Tolia*, 2020 WL 1272193, at *10 (D.N.J. Mar. 17, 2020), *aff'd sub nom. Voorhees v. Tolia*, 2023 WL 4636738 (3d Cir. July 20, 2023)). But *Vorhees* holds the opposite: "[T]he Third Circuit . . . has recognized that the tort of 'a breach of confidence involves the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship.'" 2020 WL 1272193, at *10 (D.N.J. Mar. 17, 2020) (quoting *Kamal*, 918 F.3d at 114).[12] The complaint in *Vorhees* was dismissed only because the plaintiff failed to allege that a "third party gained unauthorized access to her personal information." *Id*. Stevens has no such problem. He alleges Google and Meta were not authorized to receive his banking information. ¶¶ 12-28.

Even if the Court were to conclude that breach of confidence is not cognizable under New Jersey law, the claim survives under New York law. The parties agree that New York recognizes the tort. Mot. 28. And TD has not briefed choice-of-law,

[12] *See also Hague v. Williams*, 37 N.J. 328, 336 (1962) (When "a physician receives information relating to a patient's health in a confidential capacity and should not disclose such information without the patient's consent, except where the public interest or the private interest of the patient so demands"); *see also Est. of Behringer v. Med. Ctr. at Princeton*, 592 A.2d 1251, 1274 (N.J. Super. L. Div. 1991). Plaintiff cannot find any case that limited breach of confidence to the doctor-patient context in New Jersey nor would it make sense to limit the rule to information protected by HIPAA where other parties receive information protected by law (as here).

which is a "very fact-intensive inquiry" that courts in this District "routinely" decline to undertake at the pleading stage. *See Ballou v. Bayerische Motoren Werke Aktiengesellschaft*, 2023 WL 4232165, at *2 (D.N.J. June 28, 2023) (citing cases). It would be premature to dismiss the claim on this ground, especially where Stevens is a New York resident who used TD's services in New York. ¶ 12.

TD's fallback argument fares no better. It contends that even under New York law, breach of confidence is limited to the doctor-patient medical context. Mot. 28 (citing *In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *3 (S.D.N.Y. Feb. 24, 2022) (refusing to extend claim to employer-employee relationship)); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *12 (W.D.N.Y. Mar. 19, 2024) (sustaining breach of physician-patient confidentiality claim)). That is wrong. New York courts have extended this duty to financial institutions, including banks. *See Jones v. Com. Bancorp, Inc.*, 2006 WL 1409492, at *3 (S.D.N.Y. May 23, 2006) (sustained a breach of fiduciary duty of confidentiality claim against a bank where the bank "represented that it would safeguard" the plaintiff's personal information); *Daly v. Metro. Life Ins. Co.*, 4 Misc. 3d 887, 892 (Sup. Ct. N.Y. Cty. 2004) (sustaining breach of fiduciary duty of confidentiality claim against insurer for failure "to safeguard . . . clients' personal and confidential information."). TD's attempt to confine the tort to doctors and patients has no basis in law or policy.

Health information protected by HIPAA is categorically similar to banking information protected by the GLBA.

## VI. Stevens states a valid claim for breach of an express contract.

To allege a breach of contract, a plaintiff need only allege that "the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract[,] and that the plaintiff sustained damages as a result." *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 (3d Cir. 2019) (quoting *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Ct. App. 2007)); *see also Motamed v. Chubb Corp.*, 2016 WL 1162853, at *4-5 (D.N.J. Mar. 24, 2016) (denying motion to dismiss even where "Plaintiffs d[id] not cite specific contract provisions," but "identif[ied] the alleged contract at issue, the behavior that allegedly violated the contract, and the damages that they allegedly suffered as a result."). TD does not dispute that its privacy policy was incorporated into a valid contract with Stevens. Stevens alleges TD broke its promise "not to share customers' personal information with nonaffiliates so they can market to you," ¶¶ 55, 97 (cleaned up), by disclosing his personal information to Meta and Google, both nonaffiliates, for their own marketing purposes. ¶¶ 3, 51, 55, 99. Stevens thus plausibly alleges TD breach a

valid contract.[13] *See, e.g.*, *Kane*, 2024 WL 1178340, at *8-9 (sustaining contract claim on substantially similar facts).

TD's arguments re breach and damages are meritless. Mot. 29.

**A. Stevens adequately alleges TD breached the contract.**

The privacy policy states that "The TD Bank Companies do not share with nonaffiliates so they can market to you." Mot., Ex. F. TD contends that it honored this promise because it shared customers' personal information with nonaffiliates only so TD could market customers, not so that nonaffiliates could do so. Mot. 30-31.

This argument is beside the point. Stevens alleges that Meta and Google use TD bank customer data to market to those customers on behalf of *other* advertisers. Meta uses the disclosed information "to benefit Meta itself," including to "create custom audience sets that can be shared with other advertisers," to help those advertisers "reach people with transactional and other commercial messages," and to "personalize the features and content (including ads and recommendations)" that users see. ¶ 3, 38. Stevens even alleges that "he has seen advertisements on Facebook related to financial products and services" while banking with TD. ¶ 28. In other

[13] TD's own case held that plaintiff adequately stated a breach of contract claim for defendant's failure to safeguard financial information from third-party access. *Penn*, 2023 WL 5994642, at *4.

words, Stevens alleges that TD disclosed his personal information so that nonaffiliates could market to him. ¶ 99. That is what the contract prohibits in TD's own reading.[14]

### B. Stevens adequately alleges damages.

TD also argues that Stevens fails to adequately allege damages. Mot. 31. Not so. Stevens alleges he bargained for privacy and TD failed to deliver. Stevens alleges he would have chosen a different bank offering higher interest rates had he known TD would share his personal information with Meta and Google. ¶ 27. Indeed, TD's interest rates are far below market. TD Simple Savings offers a 0.02 APY, while "[t]he national average savings account yield is 0.56 percent APY." ¶ 11. That is a textbook benefit of the bargain theory, which New Jersey recognizes "as an appropriate measure of damages in breach of contract cases." *Spencer Forrest, Inc. v. Folica, Inc.*, 2008 WL 11383456, at *6 (D.N.J. June 27, 2008). These allegations are sufficient. *See Kane*, 2024 WL 1178340, at *15 (finding plaintiff's allegation that they "paid [d]efendant for services that they would not have had they known

[14] Contrary to TD's suggestion, whether Stevens received ads from nonaffiliates because of the tracking technology is immaterial to his contract claim. Mot. 30-31. The alleged breach is TD's *disclosure* of his personal information to a nonaffiliate for marketing purposes, not Stevens's *receipt* of ads. At any rate, Stevens alleges that he "has seen advertisements on Facebook related to financial products and services, including from TD Bank. ¶ 28.

about [d]efendant's disclosure of their [p]rivate [i]nformation" sufficient to plausibly allege "they lost the benefit of the bargain").

Besides, lack of damages "is not a complete defense to a breach of contract claim." *Gray v. CIT Bank, N.A.*, 2018 WL 6804273, at *6 (D.N.J. Dec. 27, 2018) (Bumb, C.J.). TD's contrary authorities are inapposite. Mot. 31. *Diversified Industries, Inc. v. Vinyl Trends, Inc.* involved tort claims, not breach of contract. 2014 WL 1767471, at *1 (D.N.J. May 1, 2014). And unlike breach of contract, "a lack of damages is mainly a complete defense to tort claims sounding in negligence." *Gray*, 2018 WL 6804273, at *6 n.11. *In re JetBlue Airways Corp. Privacy Litigation* is similarly unhelpful: there, the plaintiffs alleged only "actual damages in an amount to be determined at trial" and, when pressed, could identify nothing beyond a generalized "loss of privacy." 379 F. Supp. 2d 299, 326 (E.D.N.Y. 2005) (quotations omitted). Stevens, by contrast, alleges two concrete injuries: better interest rates he would have obtained elsewhere, and the value of his personal data that TD took and used for its own commercial benefit without compensation. ¶¶ 11, 27, 82. The latter can be quantified as a reasonable royalty (the amount TD should have paid to use Stevens' data lawfully. ¶ 82. *Grohs v. Holmes* is even further afield. It involved a civilly committed pro se litigant's constitutional challenge to a facility's photocopying procedures, analyzed under the "actual injury" standard for access-to-

courts claims. 2014 WL 4896834, at *6 (D.N.J. Sept. 30, 2014). It says nothing about contract damages.

## VII. Stevens states a valid claim under New York General Business Law § 349.

Stevens also states a claim under New York General Business Law § 349. *See Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 383-84 (S.D.N.Y. 2024). To do so, he must allege TD "'engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Id.* at 383 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)).

Stevens satisfies each element. He alleges that TD installed tracking technologies that secretly collected customers' financial information and shared it with third parties like Meta and Google without disclosing this practice to consumers. ¶¶ 3, 18, 39. That is consumer-oriented conduct, and it is materially misleading. As for injury, Stevens need not allege pecuniary harm. *Cooper*, 742 F. Supp. 3d at 383 (citing *Stutman v. Chem Bank*, 95 N.Y.2d 24 (2000)). His allegations that TD's deceptive conduct caused the unauthorized disclosure of his private financial information are sufficient.

### A. TD committed deceptive or misleading acts or practices by sharing his personal financial information without consent.

Stevens adequately alleges that TD engaged in both deceptive omissions and affirmative misrepresentations related to its use of tracking technology. Material

deception under the GBL is conduct "'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Stutman*, 95 N.Y.2d at 29 (citation omitted). Deceptive omissions occur when the defendant "possesses material information that is relevant to the consumer and fails to provide [the] information." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). Because deception is generally a question of fact, TD's own authority recognizes it should be decided by a jury. *Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1028-29 (9th Cir. 2024).

Stevens alleges that TD failed to disclose that it had implemented third-party tracking technology specifically designed to capture personal financial information. ¶¶ 3, 18, 39. Through this technology, TD systematically shared with Meta and Google customers' unique identifiers, URLs showing what financial products customers viewed, account details, and banking activities. ¶¶ 19, 40, 41(a), 45-46. Given the nature of banking relationships, and TD's status as a financial institution subject to federal privacy laws, this omission is particularly material. As Stevens alleges, he "reasonably expected that his activities within TD Bank's password-protected online banking portal would remain confidential between himself and his bank." ¶ 27. TD deprived Stevens of information crucial to making an informed decision about his banking relationship.

Although TD cites *Fero* to challenge Stevens' GBL claim, that case supports his position. Mot. 33. There, the court held that failing to disclose inadequate data security measures could mislead reasonable consumers. *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 776 (W.D.N.Y. 2017). TD's conduct is worse. TD did not just fail to protect customer data from theft—it actively shared customer data with a third party.

TD also made affirmative misrepresentations. Its privacy policy asked: does TD Bank share personal information for nonaffiliates to market to you? TD answered: "No." Mot., Ex. F. That representation was "flatly false." *Cooper*, 742 F. Supp. 3d 369 at 383. TD shared Stevens' information with Meta and Google for exactly those purposes.

Yet TD contends that Stevens fails to identify what provisions of the GLBA or FTC Act were violated. Mot. 32. But that's wrong. Stevens identifies specific regulations implementing the GLBA, including Regulation P's restrictions on sharing nonpublic personal information with nonaffiliated third parties, and alleges how TD's conduct violated them. ¶¶ 50, 53-59. For example, he alleges that TD "violated 16 CFR § 313 (the 'GLBA Privacy Rule') and 12 CFR § 1016 ('Regulation P')." ¶ 56. That is sufficient at this stage.

TD's authorities do not help it. In *Beaman v. Bank of America, N.A. (Beaman I)*, the court dismissed GLBA-based claims where plaintiffs challenged the bank's

failure to protect customer data from theft by unauthorized third parties through security breaches. 2023 WL 4784254, at *2, *18 (D.N.J. July 27, 2023). But plaintiffs failed to identify how the bank's "conduct violated which portion of the GLBA, and how that conduct caused their injuries." *Id.* at *18. Plaintiffs also raised the argument for the first time in their opposition. *Id.* Here, Stevens alleges TD violated specific portions of the GLBA by affirmatively sharing his information with third parties.

*Now-Casting Economics, Ltd. v. Economic Alchemy LLC* fares no better. That case involved a trademark dispute in which a party asserted a GBL § 349 counterclaim against federal reserve banks based on their alleged use of contested trademarks. 2019 WL 4640219, at *1, *9 (S.D.N.Y. Sept. 24, 2019). The court dismissed the claim because the plaintiff "only made conclusory allegations" about the banks' trademark use. *Id.* at *9. Stevens, by contrast, alleges in detail how TD installed tracking technology, what information it collected, and how it shared that information with Meta and Google. ¶¶ 18-26, 39-46. That is not conclusory.

TD next argues that Stevens cannot use alleged violations of the GLBA and FTC Act as "predicates" for his GBL claim because neither statute provides a private right of action. Mot. 33. But a GBL claim remains "viable where the plaintiff makes a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under another statute that is not independently actionable."

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 127 (2d Cir. 2017) (cleaned up). Stevens does not rely on federal law as a predicate for his claim. His theory rests on TD's affirmative misrepresentations and material omissions—not on technical violations of federal banking regulations. TD's reliance on *Rider v. Uphold HQ Inc.* is misplaced. 657 F. Supp. 3d 491, 500 (S.D.N.Y. 2023). There, the plaintiffs' theory of deception was nothing but a failure to follow federal security rules. Stevens, by contrast, alleges an independent course of deceptive conduct.

### B. TD did not fully disclose it shared financial information with third party advertisers.

TD also invokes its privacy policy and website disclosures, claiming that the "allegedly deceptive practice was fully disclosed." Mot. 33 (quoting *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020)). According to TD, these disclosures "explained exactly what types of information may be shared with third parties for TD's marketing purposes." *Id.*

Stevens does not dispute, however, that TD's privacy policy purported to explain what information would be shared. He alleges that the explanation was false. Despite the privacy policy's promise not to share personal information for nonaffiliates to market to consumers, Stevens alleges TD did so anyway. TD does not identify any ambiguity in this language. Nor does it point to any other disclosure that contradicts its unequivocal language. And even if such disclosures existed, they could not save TD. For example, in product-labeling cases, "contextual information

on the reverse of the product's packaging could not overcome clearly inaccurate factual representations on the front labeling." *Foster v. Whole Foods Mkt. Grp., Inc.*, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023). The same principle applies here. No website disclosure can overcome a false statement in TD's privacy policy.

TD's reliance on *Chufen Chen* only underscores the point. There, the plaintiff alleged that Dunkin' Donuts advertisements deceptively used the word "steak." 954 F.3d at 501. But the advertisements "clearly depict[ed] the 'steak' in the Products as a beef patty," and the dictionary defines steak to include "'ground beef prepared for cooking or for serving in the manner of a steak.'" *Id.* (citation omitted). The practice was "fully disclosed" because the depiction matched reality. TD's disclosures did not match reality. It was false.

The consumer-expectations context is also substantially different. In *Chufen Chen*, no reasonable consumer expects an unadulterated piece of steak for $2 or $4 at a fast-food chain. But bank customers reasonably expect that their financial institution will not share their personal financial information with marketers, especially when the bank says it will not do so. TD did not offer an opportunity to opt out of this marketing. Mot., Ex. F. And in any event, opt-out is meaningless when the bank fails to disclose what customers need to opt out from.

### C. Stevens adequately pleads he suffered an actual injury.

Stevens alleges two distinct injuries from TD's deceptive conduct.

First, Stevens lost the benefit of his bargain. He alleges that he accepted a lower interest rate than he otherwise would have because TD failed to disclose its data-sharing practices. ¶¶ 11, 27. He also alleges that TD took and used his personal data for commercial purposes without compensating him, which is quantifiable as a reasonable royalty. ¶ 82. Both are cognizable injury under the GBL. *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 992-96 (N.D. Cal. 2016) (finding allegations of lost benefit of the bargain and lost value of personal information sufficient to allege § 349 damages). In *Orlander*, for example, the Second Circuit held that a plaintiff sufficiently alleged injury when he claimed he would not have purchased a two-year service plan had he known the defendant "intended to decline to provide him any services in the first year." 802 F.3d at 301. The plaintiff lost the benefit of his bargain even though he retained coverage under the manufacturer's warranty. Stevens' injury is more concrete still. He alleges he directly lost money by accepting lower interest rates in exchange for privacy protections TD did not provide.

Second, Stevens alleges a cognizable privacy injury. He pleads that TD, via Meta and Google tracking technologies, "collected confidential, individually identifiable information constituting [financial] records without the Plaintiffs' knowledge or consent." *Cooper*, 742 F. Supp. 3d at 384; *see also Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *13 (N.D. Cal. July 22, 2025) ("The privacy

violations alleged here suffice as such an injury.”). He further alleges that TD’s “deceptive representations that it would not disclose such information to third parties caused the cognizable privacy injury, by inducing Plaintiffs to submit private [financial] data and thereby lose control of it.” *Id.* (collecting cases); ¶¶ 26-27.

TD responds that Stevens’ injury is duplicative of his contract claim. Mot. 35. But TD’s cases establish only that a plaintiff cannot pursue a GBL claim where she seeks only the amount owed under the contract. *See Manrique v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 5745717, at *7 (S.D.N.Y. Dec. 2, 2021) (plaintiff sought only the amount due under insurance policy); *Polk v. Del Gatto, Inc.*, 2021 WL 3146291, at *11 (S.D.N.Y. July 23, 2021) (plaintiff sought only unpaid contractual amounts). Stevens seeks more than that. His GBL claim addresses TD’s broader course of deceptive conduct—secret data collection, unauthorized sharing with third parties, and false privacy representations—not mere failure to perform a contractual promise.

## **CONCLUSION**

For the foregoing reasons, Stevens respectfully requests that the Court deny TD’s motion to dismiss in full.

Dated: January 9, 2026

Respectfully submitted,

*/s/ James E. Cecchi*
James E. Cecchi

Jason H. Alperstein
Jordan M. Steele
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com
Email: jalperstein@carellabyrne.com
Email: jsteele@carellabyrne.com

Eric S. Dwoskin (*pro hac vice*)
**DWOSKIN WASDIN LLP**
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Telephone: (561) 849-8060
Email: edwoskin@dwowas.com

J. Austin Moore (*pro hac vice*)
Kasey Youngentob (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Email: moore@stuevesiegel.com
Email: youngentob@stuevesiegel.com

*Counsel for Plaintiff and the putative Class*