**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| JEFFREY STEVENS, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TD BANK, N.A.,<br><br>Defendant. | Case No.: 1:24-cv-08311-RMB-AMD<br><br>**Motion Day: February 17, 2026** |

**REPLY BRIEF IN SUPPORT OF DEFENDANT TD BANK'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**


Susan M. Leming, Esq.
**BROWN & CONNERY, LLP**
360 N. Haddon Ave.
Westmont, NJ 08108
Telephone: (856) 854-8900

Zach A. McEntyre (admitted *pro hac vice*)
Robert D. Griest (admitted *pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600

*Attorneys for Defendant TD Bank, N.A.*

# TABLE OF CONTENTS


Introduction ....... 1

Argument ....... 1

I. *Cook* Requires Dismissal for Lack of Subject Matter Jurisdiction ....... 1

II. New Jersey Law Does Not Recognize a Breach of Confidence Claim. ....... 6

III. Plaintiff Consented to the Disclosure of His Browsing Information and Waived All the Damages He Now Seeks. ....... 7

IV. All Plaintiff's Claims Fail for Multiple Independent Reasons. ....... 10

A. Plaintiff fails to state a claim for negligence. ....... 10

B. Plaintiff's breach of contract claim must be dismissed ....... 13

C. Plaintiff fails to state a claim for violation of N.Y. Gen. Bus. L. § 349. ....... 14

Conclusion ....... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, 2021 WL 5937742 (D.N.J. Dec. 16, 2021)....13

*Baton v. Ledger SAS*, 740 F. Supp. 3d 847 (N.D. Cal. 2024)....12

*Beaman v. Bank of Am., N.A.*, 2024 WL 3219224 (D.N.J. June 28, 2024)....11

*Bednyak v. Fin. Risk Mitigation, Inc.*, 739 F. Supp. 3d 353 (E.D. La. 2024)....2

*Bohnak v. Trusted Media Brands, Inc.*, 2023 WL 2691620 (S.D.N.Y. Mar. 29, 2023)....4

*In re BPS Direct, LLC*, 705 F. Supp. 3d 333 (E.D. Pa. 2023)....3

*Caraffa v. TD Bank, N.A.*, 2630736, at *1 (E.D. Pa. Sep. 11, 2025)....5

*Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492 (2d Cir. 2020)....14

*City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415 (3d Cir. 2002)....11

*Cook v. Gamestop, Inc.*, 148 F.4th 153 (3d Cir. 2025)....1, 4, 5

*Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025)....3

*Daly v. Metro. Life Ins. Co.*, 782 N.Y.S.2d 530 (Sup. Ct. N.Y. Cnty. 2004)....7

*Doe v. Bayhealth Med. Ctr., Inc.*,
2025 WL 1010403 (Del. Super. Ct. Apr. 4, 2025) ....................................12

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ....................................2, 13

*Erie R.R. Co. v. Thompkins*,
304 U.S. 64 (1938)....................................................................................11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589, 599 (9th Cir. 2020) ...........................................................12

*Gasperini v. Ctr. for Humans., Inc.*,
518 U.S. 415 (1996)..................................................................................11

*In re GEICO Customer Data Breach Litig.*,
2023 WL 4778646 (E.D.N.Y. July 21, 2023)............................................12

*Heaven v. Prime Hydration LLC*,
761 F. Supp. 3d 812 (E.D. Pa. 2025).....................................................4, 5

*J Supor & Son Trucking & Riggins Co., Inc. v. Kenworth Truck Co.*,
791 F. App'x 308 (3d Cir. 2019) ..............................................................10

*Jerkins v. Anderson*,
191 N.J. 285 (2007) ..................................................................................11

*In re Jet Blue Airways Corp. Priv. Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) .......................................................14

*Jones v. Com. Bancorp, Inc.*,
2006 WL 1409492 (S.D.N.Y. May 23, 2006) ..............................................7

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .............................................6

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022).......................................................13

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025)........................................................8

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020)....................13

*Manrique v. State Farm Mut. Auto Ins. Co.*,
2021 WL 5745717 (S.D.N.Y. Dec. 2, 2021)....................15

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 WL 4350328 (E.D. Pa. Sep. 30, 2024)....................12

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249 (1994)....................1

*In re NCB Mgmt. Servs., Inc. Data Breach Litig.*,
748 F. Supp. 3d 262 (E.D. Pa. 2024)....................11, 12

*Penn, LLC v. Freestyle Software Inc.*,
2023 WL 5994642 (D.N.J. Sept. 15, 2023)....................9, 10

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014)....................9

*Polk v. Del Gatto, Inc.*,
2021 WL 3146291 (S.D.N.Y. July 23, 2021)....................15

*Popa v. Harriet Carter Gifts, Inc.*,
772 F. Supp. 3d 592 (W.D. Pa. 2025)....................8

*Sacchi v. Quest Diagnostics Inc.*,
2023 WL 2530896 (App. Div. Mar. 16, 2023)....................12

*Small v. Lorillard Tobacco Co., Inc.*,
720 N.E.2d 892 (N.Y. 1999)....................15

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)....................7, 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................1

*T.J. McDermott Transp. Co., Inc. v. Cummins, Inc.*,
2015 WL 1119475 (D.N.J. Mar. 11, 2015)....................10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................1, 2, 5

*Truglio v. Planet Fitness, Inc.*,
2016 WL 4084030 (D.N.J. July 28, 2016) ....................14

*U.S. v. Hays*,
515 U.S. 737 (1995)....................1

*Vorhees v. Tolia*,
2020 WL 1272193 (D.N.J. Mar. 17, 2020) ....................6

*Young v. U.S. Dep't of Just.*,
882 F.2d 633 (2d Cir. 1989) ....................7

*Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988) ....................9

**Statutes**

Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801 *et seq.* ....................5, 11, 12

Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 *et seq*....................11, 12

N.Y. Gen. Bus. Law § 349....................14, 15

**Other Authorities**

Restatement (Second) of Torts § 652C....................4

## Introduction

Plaintiff's Response ("Resp.") confirms that the incurable deficiencies in his Second Amended Complaint ("SAC") require its dismissal for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.

## Argument

### I. *Cook* Requires Dismissal for Lack of Subject Matter Jurisdiction.

The SAC must be dismissed because Plaintiff fails to allege a concrete injury in fact necessary for Article III standing under the Third Circuit's precedential decision in *Cook v. Gamestop, Inc.*, 148 F.4th 153 (3d Cir. 2025). *See* Mot. at 8–13. Plaintiff fails to meaningfully distinguish *Cook* or put forward any basis for subject matter jurisdiction.[1] *See* Resp. at 4–12. TD's standing argument is not an attack on the merits, but a straightforward application of the injury-in-fact analysis from *Cook* and the Supreme Court's decisions in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), and *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). The two purported "harms" Plaintiff relies on—"damages based on his economic interest" and intangible privacy harm—do not establish a concrete injury in fact capable of supporting Article III standing.

[1] TD did not originally challenge Plaintiff's Article III standing because the Third Circuit issued *Cook after* the Court granted TD's initial Motion to Dismiss. *See* Dkt. No. 29 ("MTD Order"). Because standing implicates subject matter jurisdiction, it is never waived, *U.S. v. Hays*, 515 U.S. 737, 742 (1995), and may be reviewed at any time, *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994).

As an initial matter, TD does—contrary to Plaintiff's suggestion—dispute that any alleged "harm to [Plaintiff's] economic interest is cognizable." *See* Resp. at 5. While certain monetary harms can constitute injuries in fact, *TransUnion*, 594 U.S. at 425, the SAC fails to allege any such injury. *See* Mot. at 25–27, 31.[2] Instead, all Plaintiff pleads here is that he is entitled to monetary *damages*, but a "claim for damages without more does not confer Article III standing." *See Bednyak v. Fin. Risk Mitigation, Inc.*, 739 F. Supp. 3d 353, 369 (E.D. La. 2024). Plaintiff cites nothing to support the proposition that tracking basic browsing information, without more, establishes monetary harm, besides an unpublished decision from a trial court in the Ninth Circuit predicated on a unique aspect of California law.[3]

Nor does Plaintiff establish an injury in fact based on any intangible privacy harm. While Plaintiff uses loose language throughout his Response suggesting that TD shared "financial information," *see, e.g.*, Resp. at 8, and data like "information related to applications for credit cards" and "information that TD obtains in connection with servicing its customers' accounts," *id*. at 6, the SAC contains no allegation that TD shared such information *about him*. This Court previously dismissed Plaintiff's Complaint for want of "well-pled allegations as to what personal financial information *belonging to Plaintiff* was allegedly improperly

---

[2] *See also infra* Pages 12–13 (discussing negligence damages allegations) and 14 (discussing breach of contract damages allegations).

[3] *See Doe v. Microsoft Corp.*, 2023 WL 8780879, at *4 (W.D. Wash. Dec. 19, 2023).

disclosed." *See* MTD Order at 14; *id*. at 9 ("The Pixel must have captured and disclosed *his* personal financial information to state a claim."). Plaintiff's SAC fails to cure that deficiency.

The only information that TD allegedly disclosed *concerning Plaintiff* was decidedly neither sensitive nor private. *See* SAC ¶¶ 19, 24; Mot. at 8–10. To reiterate, the only information that Plaintiff plausibly alleges was disclosed to Google or Meta was the fact that Plaintiff is a TD customer (but not his identifying information), some web pages he visited (but not any financial account information), and a publicly available bank offer he viewed (but did not sign up for). *See* SAC ¶¶ 19, 24. This does not constitute "highly sensitive personal information such as . . . financial data from banks or credit cards," *see In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 340 (E.D. Pa. 2023); at most, it amounts to product preference information akin to what may be observed as a customer browses products at a brick-and-mortar store, *see Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 66 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025). Thus, even taking as true Plaintiff's allegation that TD captured this information from within an authenticated customer portal (it is not true),[4] courts in the Third Circuit agree that such tracking of online retail behavior does not establish a concrete injury in fact. *See* Mot. at 9 n.7.

[4] Critically, Plaintiff has the key facts wrong—TD does not use third-party marketing tracking technologies within its authenticated customer portal. Thus, the Court

Plaintiff's effort to restrict *Cook* to only session replay technology is unpersuasive. Plaintiff puts forth no plausible reason why the session replay technology in *Cook* should be treated any differently than the "advertising technology" complained of here. *See* Resp. at 8. Regardless, *Cook* explains that what matters is "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *See Cook*, 148 F.4th at 158. As TD has demonstrated, Plaintiff's alleged injuries are not comparable to the harms caused by the public disclosure of private information or intrusion upon seclusion.[5] *See* Mot. at 10–12. And besides the fact the information allegedly shared was not sensitive or private,[6] much like Microsoft in *Cook*, Meta

should dismiss Plaintiff's SAC for all the reasons explained herein, but to the extent any claims remain, they will undoubtedly fail under the real facts.

[5] Plaintiff also attempts to analogize his asserted harm to that redressed by the common-law tort of appropriation of name or likeness. *See* Resp. at 9, n. 5. But the core injury underlying this tort stems from the defendant "appropriat[ing] to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." Restatement (Second) of Torts § 652C. Plaintiff does not explain how the alleged disclosure of basic website browsing information involved use of his "name and likeness," and courts in similar contexts have rejected the notion that the disclosure of personal information constitutes the use of one's name or likeness for purposes of the tort. *See Bohnak v. Trusted Media Brands, Inc.*, 2023 WL 2691620, at *3–4 (S.D.N.Y. Mar. 29, 2023); *Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812, 819 n.5 (E.D. Pa. 2025) (appropriation of name or likeness is not an analogous tort in case challenging defendant's use of Meta Pixel and Google Analytics).

[6] Plaintiff's assertion that intrusion upon seclusion does not require the purportedly tracked data to be sensitive or private, Resp. at 10, is wrong. *See Heaven*, 761 F. Supp. 3d at 820 (explaining that both intrusion upon seclusion and public disclosure

and Google—even if somehow considered "third parties"—are not the "broader public" under *Cook*. *See* 148 F.4th at 160 (holding that Microsoft, "*a third-party vendor* to GameStop, [was] not the broader public") (emphasis added); Mot. at 11.[7]

Finally, Plaintiff's allegations about his purported rights under the GLBA cannot manufacture standing, because, once again, he has not pled any concrete injury. That is, even accepting all Plaintiff's allegations as true, "an injury in law is not an injury in fact," *TransUnion*, 594 U.S. at 427, meaning the SAC hinges on nothing more than an alleged procedural violation—a path foreclosed by Supreme Court precedent. *Id*. Tellingly, Plaintiff cites no case (because there are none) where a court has found that the GLBA confers standing based on a plaintiff's allegations that a bank disclosed basic information about his browsing of a website.

Without a cognizable injury in fact, the Court must dismiss the SAC for lack of subject matter jurisdiction.

---

of private information require "private" information that, "if publicized or intruded upon, would be 'highly offensive to a reasonable person'"); *Cook*, 148 F.4th at 160 (holding plaintiff could not plausibly allege intrusion upon seclusion when none of the information "entered on Gamestop's website was personal or sensitive").

[7] Plaintiff points to *Caraffa v. TD Bank, N.A.* to suggest he has standing. Resp. at 8–9. TD did not raise and the Court did not rule on an Article III standing challenge in its motion to dismiss in *Caraffa*, which motion preceded *Cook*. *See* 2025 WL 2630736, at *1 (E.D. Pa. Sep. 11, 2025). More importantly, the pertinent question here is not whether Plaintiff Caraffa adequately pled standing—it is whether Plaintiff Stevens has. As TD has explained, he has not.

## II. New Jersey Law Does Not Recognize a Breach of Confidence Claim.

New Jersey law applies to all Plaintiff's common law claims, including for breach of confidence, which neither New Jersey nor New York recognize under the circumstances. *See* Mot. at 13–16. Plaintiff cites no New Jersey law to support his newfound contention that a claim for breach of confidence is cognizable, *see* Resp. at 12–13, 27, which is at odds with his prior concession that New Jersey "lacks an independent claim for breach of confidence," *see* Dkt. No. 19 at 7. In any event, *Vorhees v. Tolia* did *not* hold that breach of confidence is recognized as a cause of action under New Jersey law. *Compare* 2020 WL 1272193, at *10 (D.N.J. Mar. 17, 2020), *with* Resp. at 27. Rather, it acknowledged how neither party in that case disputed that the claim does not exist under New Jersey law and proceeded to find the allegations insufficient even under cases applying the cause of action under non-New Jersey substantive law. *See Vorhees*, 2020 WL 1272193, at *10.

Likewise, even if New York law applied, Plaintiff has not cited any decision establishing that New York recognizes a breach of confidence claim under these facts. Without binding precedent extending the claim to a bank in this manner, this Court "is bound to 'predict how the forum state's highest court would decide the issue'" by relying on "sufficient precedent." *See Kane v. Univ. of Rochester*, 2024 WL 1178340, at*12 (W.D.N.Y. Mar. 19, 2024). No such precedent exists.

The two decisions that Plaintiff cites applying New York law are inapposite. Resp. at 28 (citing *Jones v. Com. Bancorp, Inc.*, 2006 WL 1409492, at *3 (S.D.N.Y. May 23, 2006), and *Daly v. Metro. Life Ins. Co.*, 782 N.Y.S.2d 530, 534 (Sup. Ct. N.Y. Cnty. 2004)). *Jones* and *Daly* do not even mention a "breach of confidence" tort; instead, they discussed claims for "breach of *fiduciary duty* of confidentiality." *See id.* (emphasis added). That is not what Plaintiff pled here. Because neither New Jersey nor New York recognizes a breach of confidence claim on these facts, there is no conflict for purposes of choice of law. *See Young v. U.S. Dep't of Just.*, 882 F.2d 633, 642–44 (2d Cir. 1989) (declining to extend claim to banking relationship).

## III. Plaintiff Consented to the Disclosure of His Browsing Information and Waived All the Damages He Now Seeks.

While consent may sometimes be a factual issue, that is not the case where, as here, Plaintiff affirmatively alleges that the disclosures constitute a valid contract. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018). By agreeing to TD's Digital Platforms Terms of Use ("Terms of Use") and providing information subject to TD's Privacy Notice ("Notice"), Plaintiff agreed that TD "may collect, use, retain, and share personal or other information about [him]"[8] and that TD may share this information "[f]or [TD's] marketing purposes – to offer [TD's] products and services."[9] TD's Online Privacy Code—which is incorporated into the Terms of Use

---

[8] *Terms of Use* at 2; Ex. E to Mot. at 2.
[9] Notice at 1; Ex. F to Mot. at 1.

and thus part of Plaintiff's contract with TD—further disclosed that TD may share information about Plaintiff with "service providers" and "advertising partners" like Meta and Google for "marketing" and "online advertising purposes."[10] Simply put, "the practice complained of falls within the scope of Plaintiffs' consent" to these disclosures. *See Smith*, 745 F. App'x at 9.

Ignoring the "plain language" of the Terms of Use and Notice that adequately discloses the "type of conduct that forms the basis of" Plaintiff's claims, *see Popa v. Harriet Carter Gifts, Inc.*, 772 F. Supp. 3d 592, 603 (W.D. Pa. 2025), Plaintiff argues that TD was obligated to disclose "what Meta and Google may *do* with TD's customer data." Resp. at 13. But the SAC contains no allegations complaining of this specific failure to disclose, and the Court should not accept Plaintiff's request for a "highly granular disclosure" when TD explicitly notified Plaintiff of its alleged conduct. *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1055–57 (N.D. Cal. 2025).

Next, Plaintiff focuses on a single alleged deficiency in the Notice: TD's answer of "No" to the question of whether it shares customers' personal information with nonaffiliates to market to consumers. Resp. at 13–15; Ex. F to Mot. at 1–2. But Plaintiff does not allege any facts to plausibly show that TD disclosed his information so that nonaffiliates could market to *him* or that *he* received any advertisements from nonaffiliates because of TD's conduct. Instead, he alleges only

[10] *See Important Information About Your Privacy*; Ex. C to Mot. at 3.

that "TD Bank … share[s] customers' personal information with Meta so that *TD Bank* can market to consumers." *Id.* ¶ 55 (emphasis added); *see also* ¶ 3 (alleging that "Meta uses the data shared by [TD] to create custom audiences for TD"); ¶ 28 (recalling seeing advertisements on Facebook related to TD products while banking online or with TD's mobile application).[11] Plaintiff cannot now amend the SAC via his Response to include an allegation that TD disclosed information to Meta and Google so that, *e.g.*, competitor banks or credit card companies could market to him. *See* Resp. at 14; *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").[12]

Finally, consideration of a limitation-of-liability clause is premature only where the plaintiff "has alleged facts sufficient to suggest at [the motion to dismiss]

---

[11] Though Plaintiff alleges Meta "*can*" use the information that the Meta Pixel collects to "create custom audience sets that can be shared with other advertisers" and "*can use* the information it collects to personalize the features and content (including ads and recommendations) that Meta shows people on and off Meta products," *see* SAC ¶ 38 (emphasis added), these allegations "fail[] . . . to connect the Pixel's functionality in the abstract to him individually." *See* MTD Order at 9.

[12] Contrary to Plaintiff's contention, *see* Resp. at 15, just like in *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212–13 (N.D. Cal. 2014), TD's disclosures provide the ability to opt out of (i) personalized content on TD's website and (ii) advertisements on third-party websites and mobile applications based on web/application browsing habits. *See* Ex. A to Mot. at 1–2 (explaining also that Meta and Google "offer the option to opt out of the use of information about you that we share with them or your search engine keywords for interest-based ads").

stage that the contractual limitation on liability and damages is unconscionable and, thus, unenforceable." *See Penn, LLC v. Freestyle Software Inc.*, 2023 WL 5994642, at *5 (D.N.J. Sept. 15, 2023). Here, the SAC does not plead that the clause is unconscionable or otherwise unenforceable, and Plaintiff affirmatively alleges that the Terms of Use (which contain the clause) is a valid contract between TD and him. *See* SAC ¶ 93.[13] The limitation-of-liability clause in the Terms of Use thus precludes Plaintiff from recovering the relief he now seeks. *See* Mot. at 18–19.[14]

## IV. All Plaintiff's Claims Fail for Multiple Independent Reasons.

Setting aside the threshold deficiencies above, Plaintiff also fails to show why his claims should not be dismissed for independent reasons.

### A. Plaintiff fails to state a claim for negligence.

Plaintiff has not shown that TD had a common law or statutory duty of care under New Jersey law not to share his general web browsing information with Meta or Google. *See* Resp. at 19–23 (relying primarily on cases outside New Jersey). Instead, Plaintiff asks this court to be the first in New Jersey to impose a common-

---

[13] This distinguishes *Penn*, where the complaint included specific allegations indicating that the contract was one of adhesion. *See* 2023 WL 5994642, at *5.

[14] *See also J Supor & Son Trucking & Riggins Co., Inc. v. Kenworth Truck Co.*, 791 F. App'x 308, 314 (3d Cir. 2019) (rejecting unconscionability challenge to limitations provision where "the complaint lack[ed] any allegation speaking to either procedural or substantive unconscionability"); *T.J. McDermott Transp. Co., Inc. v. Cummins, Inc.*, 2015 WL 1119475, at *8–9 (D.N.J. Mar. 11, 2015) (holding that the complaint gave insufficient grounds to infer unconscionability).

law duty not to disclose the information at issue by citing factors that New Jersey state courts may consider in determining whether to impose a duty of care in the first instance. *See, e.g.*, *Jerkins v. Anderson*, 191 N.J. 285, 294–99 (2007). It is axiomatic that pursuant to *Erie R.R. Co. v. Thompkins*, 304 U.S. 64 (1938), federal diversity jurisdiction "does not carry with it generation of rules of substantive law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 416 (1996); *see also City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002) ("[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent.").[15]

Next, Plaintiff does not dispute that the New Jersey legislature's definition of "personal information" does not cover the information he alleges TD shared, *see* Resp. at 21 n.11, and he has not shown any duty arising from a special relationship. *See* Mot. at 22–23. Plaintiff also tries to argue that TD has a duty under the GLBA and related regulations in an attempt to resurrect his dismissed negligence *per se* claim. *See* Resp. at 22–23; Dkt. No. 56, ¶ 2. Regardless, neither the GLBA nor the FTC Act incorporate a common law standard of care. *See* Mot. at 23–25; *Beaman v. Bank of Am., N.A.*, 2024 WL 3219224, at *18 (D.N.J. June 28, 2024) ("[T]he GLBA

[15] Even if the Court were to indulge Plaintiff's request to consider imposing a duty of care (despite New Jersey law not recognizing one under these circumstances), the requisite foreseeability of injury obviously cannot exist when Plaintiff alleges no cognizable harm in the first place. *See supra* Section I; *Jerkins*, 191 N.J. at 294. Nor can there be any degree of attendant risk or public interest in remedying conduct that causes no harm. *See Jerkins*, 191 N.J. at 295–98 (weighing whether policy considerations support the imposition of a duty).

does not invoke a common law duty of care."); *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 282 (E.D. Pa. 2024) (dismissing negligence *per se* claim based on Section 5 of FTC Act); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 912 (N.D. Cal. 2024) ("[D]istrict courts do not permit negligence *per se* claims to hinge on the [FTC Act]."). Plaintiff therefore cannot disguise his GLBA and FTC Act claims as a negligence *per se* claim. *See, e.g.*, *Sacchi v. Quest Diagnostics Inc.*, 2023 WL 2530896, at *4 (App. Div. Mar. 16, 2023).

Separately, Plaintiff fails to show that he pled cognizable damages sufficient to support his negligence claim. *See* Mot. at 25–27. Plaintiff's reliance on cases accepting loss of control of personal information as an injury, *see* Resp. at 24, is misplaced, because Plaintiff does not plead that theory of harm in the SAC. *See* ¶¶ 81–82.[16] So too with Plaintiff's contention that "a plaintiff suffers injury when a defendant takes and uses that data without compensation or consent," *see* Resp. at

---

[16] Regardless, the loss-of-control cases Plaintiff cites, *see* Resp. at 24, are distinguishable for involving the tracking of private health information (*e.g.*, communications relating to treatments and prescriptions and appointment information), *see Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328, at *1–2 (E.D. Pa. Sep. 30, 2024); *Doe v. Bayhealth Med. Ctr., Inc.*, 2025 WL 1010403, at *1, 4 (Del. Super. Ct. Apr. 4, 2025) (same), or other sensitive information like driver's license numbers, *see In re GEICO Customer Data Breach Litig.*, 2023 WL 4778646, at *1–2 (E.D.N.Y. July 21, 2023), as opposed to the basic browsing information at issue here. And *In re Facebook, Inc. Internet Tracking Litig.*, like *Doe* discussed at *supra* Page 2, is premised on California's distinct recognition of a right to disgorge profits "even where an individual has not suffered a corresponding loss." *See* 956 F.3d 589, 599 (9th Cir. 2020).

24, which contradicts his allegation that "use or access to a person's personal information is non-rivalrous" and does not "diminish" or "interfere with the owner's own use." *See* SAC ¶ 82. In any event, the cases Plaintiff cites to support that proposition are readily distinguishable.[17]

**B. Plaintiff's breach of contract claim must be dismissed.**

As the sole source of TD's breach of contract, Plaintiff again attempts to manufacture post-hoc allegations that TD violated the Notice by disclosing his data to Meta and Google so they could market on behalf of *other* advertisers. *See* Resp. at 30–31. As explained above, *see supra* Section III, the SAC contains no factual allegations to support that assertion with respect to Plaintiff and his own information. Further, Plaintiff's Response does nothing to show that he has plausibly alleged breach of contract damages, *see* Mot. at 31, including under a theory of foregone interest income or account fees[18] or loss of value of personal information. *See supra* Section IV.A (discussing loss of control and value of data damages theories).

---

[17] Besides *Doe*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 453–55 (D. Md. 2020), and *In re Am. Med. Collection Agency Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *1 (D.N.J. Dec. 16, 2021), involved data breaches of sensitive personal identifying information like passport and payment card information and Social Security numbers, credit and debit card numbers, and insurance information. *Klein v. Facebook, Inc.* is inapposite because it analyzed whether the plaintiffs adequately alleged causal antitrust injury, not state-law negligence damages. *See* 580 F. Supp. 3d 743, 802–04 (N.D. Cal. 2022).

[18] While Plaintiff alleges the interest rates and fees associated with TD's Simple Savings and Signature Savings accounts, he does not allege that he had either

Moreover, "Plaintiff fails to plausibly allege that there is a difference in value between the [service] promised under the [Notice] and the one received, with these allegedly unlawful [disclosures], or that such difference can be reasonably quantified." *See Truglio v. Planet Fitness, Inc.*, 2016 WL 4084030, at *8 (D.N.J. July 28, 2016). Likewise, Plaintiffs alleges no facts to show he had a "reason to expect that [he] would be compensated for the 'value' of [his] personal information." *In re Jet Blue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005).

**C. Plaintiff fails to state a claim for violation of N.Y. Gen. Bus. L. § 349.**

Plaintiff argues that he has adequately pled a § 349 claim because TD "installed tracking technologies that secretly collected customers' financial information and shared it with third parties like Meta and Google without disclosing this practice to consumers." Resp. at 33. But TD *did* disclose each of the alleged practices about which Plaintiff complains. *See* Mot. at 3–4, 30–31, 33–34; *supra* Section III. That alone defeats Plaintiff's § 349 claim. *See Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020).

---

account, received those rates, or paid those fees. *See* SAC ¶ 11. And while Plaintiff includes a conclusory allegation that he would have chosen another bank with higher interest rates, he does not plausibly allege that TD's use (or nonuse) of basic tracking technologies was important to him when he became a TD customer, nor does he allege what banks offered higher interest rates or whether those banks also use tracking technologies. *See id.* ¶ 27.

Plaintiff also fails to show that he pled a plausible injury. He claims that his § 349 injury was that he (1) "lost out on the benefit of his bargain" and (2) lost control of his information. *See* Resp. at 39–40. Again, the latter theory appears nowhere in the SAC. *See supra* Section IV.A; SAC ¶ 107. The former is the *same* injury he claims in his breach of contract claim, *see* Resp. at 31 ("That is a textbook benefit of the bargain theory . . . ."), meaning "there is no harm beyond that redressed by the breach of contract claim." *See Manrique v. State Farm Mut. Auto Ins. Co.*, 2021 WL 5745717, at *7 (S.D.N.Y. Dec. 2, 2021). Because the conduct and harm alleged in both claims is "effectively identical," Plaintiff's § 349 claim should be dismissed. *See Polk v. Del Gatto, Inc.*, 2021 WL 3146291, at *11 (S.D.N.Y. July 23, 2021) (granting a motion to dismiss § 349 claim as duplicative where breach of contract and GBL claims "[b]oth turn[ed] on the same conduct" and were thus "likely to involve similar injury"); Mot. at 35. Independently, Plaintiff has not alleged any facts to show that the cost of any services he received from TD was affected by its purported misrepresentations. *See Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892, 898 (N.Y. 1999). In sum, Plaintiff has not shown an injury to support his § 349 claim, and it must be dismissed.

**Conclusion**

For these reasons, the Court should dismiss the SAC for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim.

Dated: January 30, 2026

Respectfully submitted,

*/s/ Susan M. Leming*

Susan M. Leming, Esq.
**BROWN & CONNERY, LLP**

Zach A. McEntyre (admitted *pro hac vice*)
Robert D. Griest (admitted *pro hac vice*)
**KING & SPALDING LLP**
*Attorneys for Defendant TD Bank, N.A.*

**Certificate of Service**

I hereby certify that on January 30, 2026, a copy of the foregoing document was filed electronically using the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the CM/ECF system.

*/s/ Susan M. Leming*
Susan M. Leming, Esq.