[Docket No. 57.]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| JEFFREY STEVENS, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> TD BANK, N.A., <br><br> Defendant. | Civil No. 24-8311 <br> (RMB/AMD) <br><br> **OPINION** |

**APPEARANCES**

CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.
James E. Cecchi
5 Becker Farm Road
Roseland, New Jersey 07068

    *Attorney for Plaintiff*

BROWN & CONNERY, LLP
Susan M. Leming
360 Haddon Avenue
Westmont, New Jersey 08108

    *Attorney for Defendant*

**RENÉE MARIE BUMB, Chief United States District Judge:**

This matter comes before the Court upon the Motion to Dismiss by Defendant TD Bank, N.A. ("Defendant" or "TD") [Motion (Docket No. 57); Def.'s Br. (Docket No. 57-1)] seeking dismissal of the Second Amended Complaint [Second Amended Complaint ("SAC") Docket No. 54] by Plaintiff Jeffrey Stevens ("Plaintiff" or

1

[Docket No. 57.]

"Stevens").    Plaintiff has opposed the Motion.    [Pl.'s Opp'n (Docket No. 58).]

Defendant has filed a reply brief in further support of its Motion.    [Def.'s Reply

(Docket No. 66).]    The parties exchanged letters regarding supplemental authority.

[Docket Nos. 68, 69.]    The Court has considered the parties' submissions without oral

argument pursuant to Local Civil Rule 78.1(b).    For the reasons set forth below, the

Court will **DENY** Defendant's Motion, in part, and **CONVERT** the Motion to one

for summary judgment, in part.

## I.    FACTUAL BACKGROUND

Plaintiff brings this putative nationwide class action against Defendant alleging

that TD utilized certain third-party data tracking technology to improperly collect and

disclose his and other customers' personal financial information to third parties,

specifically Meta Platforms, Inc. ("Meta"), and Google LLC ("Google") without

notice or consent.

### A. Meta Tracking Pixel and Google Tracking Technology

TD, a financial institution with a principal place of business in Cherry Hill, New

Jersey, operates an online financial services platform at td.com and tdbank.com,

through which its customers can access account information and apply for financial

products such as loans and credit cards.    [SAC ¶¶ 2, 10.]    According to the Second

Amended Complaint, TD embedded a "hidden tracking code" developed by Meta and

Google called the Meta Tracking Pixel (the "Pixel") into its website.    [*Id.* ¶ 3.]    The

Pixel is a piece of code created by Meta that advertisers like TD can integrate into their

websites.    [*Id.* ¶ 33.]    The Pixel's tracking technology can capture information about

2

[Docket No. 57.]

users' interactions with the website.  [*Id.* ¶¶ 4, 33.]  Specifically, Stevens alleges that the Pixel transmits cookies and event data to Meta and Google and that they, in turn, use this information for marketing and advertising purposes.  [*Id.* ¶¶ 3–5, 33.] Advertisers can control the type of data that the Pixel will collect and how the Pixel identifies website visitors.  [*Id.* ¶¶ 34–35.]

When an individual visits TD's website while logged into Meta, the Pixel will transmit the "c_user cookie," which contains the user's unencrypted Meta ID, which corresponds to the user's Meta profile, and the "fr" and "_fpb cookies" that also contain the user's unencrypted Meta ID, as well as a browser identifier.  [*Id.* ¶¶ 36–37.]  TD also discloses to Meta via the Pixel data identifying the user's web browser, page URLs indicating financial products viewed or applied for, and behavioral data such as button clicks and form interactions.  [*Id.* ¶¶ 40–41.]  Stevens contends that this data permitted Meta to identify individual users as TD customers and to infer the financial services they used or explored.  [*Id.* ¶¶ 31, 39–43, 51.]  In addition, Stevens alleges TD utilized "Google Analytics" website trackers, which collects information about how an individual interacts with a webpage every time they visit it.  [*Id.* ¶¶ 44–46.]

TD allegedly disclosed this information to Meta and Google to improve their marketing efforts, including by enabling Meta to generate "custom audiences" for targeted advertising and to refine its own ad-serving algorithms.  [SAC ¶¶ 3, 38.] According to Stevens, TD profited from Meta's use of the disclosed data to optimize

[Docket No. 57.]

advertising, while Meta separately benefitted by improving its own data assets and ad services. [*Id.* ¶¶ 31–32, 38, 43.]

**B. Plaintiff's Use of TD's Website**

Plaintiff is a TD customer living in Brooklyn, New York and has accessed his TD account through the bank's website while logged into Facebook. [SAC ¶ 12.] Plaintiff maintains two checking accounts with TD that he may access online only after authenticating through TD's secure login portal by entering his unique username and password. [*Id.* ¶ 13.] In the last three years, Plaintiff regularly accessed his accounts through TD's website about once per month, and through TD's mobile application multiple times a week. [*Id.* ¶ 14.] During these authenticated sessions, Plaintiff viewed his checking account balance and transaction history, transferred funds, verified receipt of direct deposits, confirmed scheduled payments had processed, downloaded account statements, and reviewed pending transactions and account balance information. [*Id.* ¶ 16.]

On February 5, 2024, Plaintiff visited TD's website and reviewed account products. [*Id.* ¶ 17.] Plaintiff alleges that unbeknownst to him, TD installed the Pixel which automatically captured and transmitted Plaintiff's banking activities to Meta each time Plaintiff accessed his accounts. [*Id.* ¶ 18.] Through the Pixel, Plaintiff alleges the following information was disclosed: the fact that Plaintiff holds a TD Bank account, the pages Plaintiff viewed within the authenticated portal, specific banking functions used by Plaintiff, financial products researched by Plaintiff, and the frequency and timing of Plaintiff's access to his financial accounts. [*Id.* ¶ 19.] Plaintiff

4

[Docket No. 57.]

alleges this information was transmitted to Meta through at least five distinct tracking events, which enabled Meta to link this data to Plaintiff's personal Facebook profile, which he was often logged into while conducting online banking. [*Id.* ¶¶ 20–22.] Plaintiff alleges TD disclosed similar information to Google. [*Id.* ¶¶ 23–25.]

Plaintiff claims he never consented to TD sharing his banking information with Meta or Google. [*Id.* ¶ 27.] It is undisputed that TD's notice to customers states: "The TD Bank Companies do not share [customer's personal information] with nonaffiliates so they can market to you." [*Id.* ¶ 55.]

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on August 6, 2024. [Docket No. 1.] Defendant filed its first Motion to Dismiss on November 15, 2024. [Docket No. 18.] This Court granted Defendant's Motion to Dismiss, and Plaintiff was granted leave to amend. [Docket Nos. 29, 30.] Plaintiff filed his First Amended Complaint on July 28, 2025. [Docket Nos. 31, 32.] Plaintiff filed his Second Amended Complaint on October 29, 2025. [Docket No. 54.] Plaintiff seeks to represent a nationwide class of TD customers, as well as a subclass of residents of New York. [SAC ¶ 60.] He asserts the following claims: (1) negligence, (2) breach of confidence, (3) breach of contract, and (4) violation of New York General Business Law § 349.

On November 21, 2025, Defendant moved to dismiss the Complaint in its entirety. [Docket No. 57.] Having considered the parties' briefing, and supplemental submissions, this Motion is now ripe for review.

5

[Docket No. 57.]

## III.   LEGAL STANDARD

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "attacks the right of a plaintiff to be heard in Federal Court." *Doughty v. U.S. Postal Serv.*, 359 F. Supp. 2d 361, 364 (D.N.J. 2005) (citation omitted).  Unlike a Rule 12(b)(6) motion, a 12(b)(1) challenge may be raised at any time, and the burden of establishing jurisdiction rests squarely with the party asserting it.  *See* Fed. R. Civ. P. 12(h)(3); *Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 361 (3d Cir. 2001).

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to state a claim upon which relief can be granted.  The party seeking dismissal of the complaint must show it fails to state a claim.  *Lesher v. Zimmerman*, 822 F. App'x 116, 119 (3d Cir. 2020).  When reviewing a motion to dismiss, courts must accept the complaint's factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)).  Courts will dismiss a complaint if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts

6

[Docket No. 57.]

will not accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 663; *see also Malleus*, 641 F.3d at 563.

Courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). When "matters outside of the pleadings" are presented to and are not excluded by the court on a Rule 12(b)(6) motion, the court must instead convert the motion into one for summary judgment under Federal Rule of Civil Procedure 56, after giving proper notice to the parties. Fed. R. Civ. P. 12(d); *In re Rockefeller Ctr. Prop., Inc. Secs. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Notice must be "unambiguous" and "fairly apprise" the parties of the court's intention to convert the motion. *Rockefeller*, 184 F.3d at 288.

"Matters outside of the pleadings" does not include, however, documents "integral to or explicitly relied upon in the complaint." *Id.* (citations omitted). That includes "any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 178 (3d Cir. 2024) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016)). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit*, 998 F.2d at 1196.

[Docket No. 57.]

IV.    **DISCUSSION**

   A. <u>**Plaintiff has plausibly alleged an injury in fact to survive dismissal**</u>

   Defendant moves to dismiss Plaintiff's Second Amended Complaint in its entirety for lack of standing, arguing Plaintiff lacks a concrete injury in fact necessary for Article III standing. [Def.'s Br. at 11, 18–23.] Specifically, TD contends that, even as amended, the Second Amended Complaint alleges only the disclosure of online consumer behavior, which, under the Third Circuit's recent decision in *Cook v. GameStop, Inc.*, 148 F.4th 153 (3d Cir. 2025), does not establish an injury in fact. [*Id.* at 18, 21.] Plaintiff responds that the Second Amended Complaint alleges disclosure of Plaintiff's confidential financial information during authenticated online banking sessions. [Pl.'s Opp'n at 15–23.] After briefing on the pending motion concluded, Plaintiff filed a Notice of Supplemental Authority relying on the Third Circuit's intervening decision in *In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, 175 F.4th 423 (3d Cir. 2026), arguing that the decision further supports Plaintiff's standing. [Plaintiff's Notice of Supplemental Authority (Docket No. 68).] Defendant thereafter submitted a responsive letter contending that Plaintiff misreads *In re BPS Direct* and the Court should rely on *Cook*. [Defendant's Response to Plaintiff's Supplemental Authority (Docket No. 69).] Having reviewed all of the submissions, the Court concludes that at this pleading stage Plaintiff has plausibly alleged an injury in fact sufficient to satisfy Article III.

   To establish an injury in fact, a plaintiff must show he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or

8

imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  This is a "very generous standard" to meet since a plaintiff need only to "allege some specific, identifiable trifle of injury" to walk through the courthouse doors.  *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 164 (3d Cir. 2017) (internal quotation marks omitted) (quoting *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982)).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).  When faced with a standing challenge, courts assume "a plaintiff has stated valid legal claims" to avoid blurring the lines between standing and the merits of the plaintiff's claims.  *Cottrell*, 874 F.3d at 162.

"Traditional tangible harms, such as physical harms and monetary harms," are considered "[t]he most obvious" concrete injuries.  *Cook v. GameStop, Inc.*, 148 F.4th 153, 158 (3d Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)).  "But certain intangible harms are also concrete[,]" like disclosure of private information and intrusion upon seclusion.  *Id.*  "To determine whether a plaintiff has suffered a concrete injury, we ask whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American

courts[.]" *Id.* (quoting *Barclift v. Keystone Credit Servs. LLC*, 93 F.4th 136, 145 (3d Cir. 2024) (internal citations and quotation marks omitted)).

A defendant is liable for public disclosure of private facts if he "gives publicity to a matter concerning the private life of another … if the matter publicized is one of a kind that (a) would be highly offensive to a reasonable person, and (b) is not a legitimate concern to the public." *In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, 175 F.4th 423, 429–30 (3d Cir. 2026) (quoting Restatement (Second) of Torts § 652D (1977) ("Second Restatement § 652D")). "The harm is 'the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny." *Id.* at 430 (citing *Barclift*, 93 F.4th at 145–46). A defendant is liable for intrusion upon seclusion where he "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns," if "the intrusion would be highly offensive to a reasonable person." *Id.* at 432 (quoting Restatement (Second) of Torts § 652B (1977) ("Second Restatement § 652B")). "Unlike the public disclosure of private facts, the harm from intrusion upon seclusion does not depend upon any publicity given to the person whose interest is invaded or to his affairs[,]" but instead "the harm arises when a defendant has invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* (quoting Second Restatement § 652B cmts. a, c) (internal quotation marks omitted)).

In *Cook*, the Third Circuit held that the alleged injury was not sufficiently analogous to disclosure of private information or intrusion upon seclusion where Plaintiff's information captured on a website included "typing search words into the

10

search bar," and adding items to her electronic shopping cart, and that information was disclosed to a third-party vendor, rather than to the general public. *Cook*, 148 F.4th at 159–60. Unlike in *Cook*, where the Circuit found "none of the information [ ] entered on [the] website was personal or sensitive," the Third Circuit held in *In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, that plaintiffs "entered personal or sensitive information when they made purchases" on the website and "entered their complete credit card or debit card numbers." 175 F.4th 423, 430–33 (3d Cir. 2026) (internal citations omitted). Nevertheless, since the information remained "functionally internal," the injury was not considered analogous to that caused by disclosure of private facts. *Id.* at 431 (internal citations omitted). However, the Circuit found that plaintiffs had standing as the harm was analogous to the harm caused by intrusion upon seclusion. *Id.* at 434. The Circuit reasoned that "[j]ust as one expects her private conversations, her mail, and the contents of her wallet or bank account to be free from unwelcome investigation or examination… one expects her complete credit card number to be free from prying eyes." *Id.* at 433 (internal citations omitted). The Third Circuit found a sister circuit's case persuasive that concluded that a plaintiff's injury was analogous to the injury caused by intrusion upon seclusion when a news website secretly embedded a Meta Pixel which transmitted to Meta information about the videos the plaintiff watched on the website. *Id.* at 433–434 (citing *Pileggi v. Washington Publishing Company, LLC*, 146 F.4th 1219, 1223, 1225 (D.C. Cir. 2025), *petition for cert. filed*, No. 25-1040 (U.S. Feb. 27, 2026)).

11

[Docket No. 57.]

This Court's prior Opinion identified that Plaintiff's Complaint improperly relied on the general functionality of the Pixel and its hypothetical capacity to transmit sensitive information but failed to allege what information of Plaintiff's was subsequently disclosed. On this ground, Plaintiff's Complaint was dismissed in its entirety, with leave to amend.

In the Second Amended Complaint Plaintiff now alleges he maintains two checking accounts with TD and regularly accessed them through a password-protected online banking portal using his unique login credentials. [SAC ¶ 13–14.] Importantly, Plaintiff no longer alleges that Meta's tracking technologies were merely capable of collecting such information but instead alleges that unbeknownst to him TD installed the Pixel which automatically captured and transmitted Plaintiff's banking activities to Meta each time Plaintiff accessed his accounts. [*Id.* ¶ 18.] Through the Pixel, Plaintiff alleges TD actually transmitted to Meta and Google information identifying him as a TD Bank customer, the banking functions he performed during authenticated sessions, the financial products he researched, and the timing and frequency of the authenticated sessions. [*Id.* ¶ 19.]

While Plaintiff does not allege the disclosure of private facts, he appears to allege an intrusion upon seclusion. Similar to the allegations in *In re BPS Direct,* the Court finds that information about Plaintiff as a TD Bank customer, and what banking functions he used and products he researched, all allegedly accessed within a password-protected portal and shared with Meta and Google, bears a sufficiently close relationship to an intrusion upon seclusion injury. Viewing those allegations through

12

the injury in fact's "very generous" standard, *Cottrell*, 874 F.3d at 164, Plaintiff has alleged an injury in fact. Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(1) is denied.

## B. TD Bank's Consent Defense Cannot Be Resolved Under Rule 12(b)(6) and Requires Conversion Under Rule 12(d)

The Court next considers Defendant's consent defense. Defendant argues that, regardless of whether Plaintiff has sufficiently alleged TD disclosed his personal information to Meta and Google, Plaintiff expressly consented to the challenged disclosures through TD's Terms of Use, Online Privacy Code, and Privacy Notice(s). [Def.'s Br. at 26.]   According to Defendant, those materials expressly informed Plaintiff that TD could collect, use, and disclose the information at issue to marketing partners, thereby foreclosing Plaintiff's claims. [*Id.* at 26–28.]  Defendant also cites the Terms of Use limitation-of-liability clause, which Defendants argue that Plaintiff failing to plead as unconscionable and unenforceable in his Second Amended Complaint precludes Plaintiff from recovering the relief he seeks.  [*Id.* at 28–29.] Plaintiff disputes both the factual and legal premises of Defendant's argument. Plaintiff first contends that consent is a factual question, not to be resolved on motions to dismiss.  [Pl.'s Opp'n at 24.]  Plaintiff also argues that the disclosures which Defendant relies upon point to general advertising disclosures which do not disclose what Meta and Google may do with TD's customer data, that the privacy notices and advertising disclosures do not address the same things, and that any ambiguity in the disclosures should be strictly construed against the draftsman. [*Id.* at 24–27.]  Plaintiff

also alleges that evaluation of the limitation-of-liability clause in the customer agreement is premature and even on the merits is unenforceable. [*Id.* at 27–29.] The Court agrees with Plaintiff that Defendant's consent defense cannot be adjudicated under Rule 12(b)(6).

Defendant's consent defense depends not merely on the existence of the parties' agreements, privacy notices, and disclosures, but on the legal and factual conclusion that those documents authorized the specific disclosures alleged in the Second Amended Complaint. Plaintiff disputes that he consented to TD's sharing of information with Meta or Google. Although certain of Defendant's exhibits may be referenced in or integral to the Second Amended Complaint, the Court finds that it must determine the scope and legal effect of "materials outside of the pleadings" to adequately and properly address the consent defense in Defendant's motion and to resolve the parties' dispute efficiently and expeditiously.

In light of the above, this Court deems it appropriate to convert those portions of Defendant's 12(b)(6) motion that rely upon the consent defense to a Rule 56(a) motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).[1] Pursuant to Federal Rule of Civil Procedure 12(d), the Court must "provide [ ] notice of its intention to convert the motion and allow[ ] an opportunity to submit materials admissible in a summary judgment proceeding." *Ford Motor Co. v. Summit Motor Prods.,*

---

[1] Rule 12(d) states: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

[Docket No. 57.]

Inc., 930 F.2d 277, 284 (3d Cir. 1991) (citation omitted).  As such, this Court will Order that the parties have ninety (90) days from the date of this Opinion to present to this Court, via electronic filing, any pertinent materials not already provided that they believe are needed to resolve the motion for summary judgment.[2]

Because the Court concludes that Defendant's consent defense cannot be resolved on a motion to dismiss, and must instead be addressed under Rule 56, it does not address Defendant's remaining Rule 12(b)(6) arguments, which may be mooted in the event the Court grants summary judgment.[3]  The Court reserves decision on Defendant's remaining Rule 12(b)(6) arguments pending resolution of the converted motion.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED** in part with respect to Plaintiff's standing.  With respect to Defendant's consent defense, this Court has **CONVERTED** the motion to dismiss into a motion for summary judgment. If the parties seek to provide this Court with supplemental submissions, those materials shall be filed within ninety days.  An accompanying Order shall issue on this date.

---

[2] The parties may seek the Court's extension of this deadline in the event further limited discovery is warranted.

[3] Whether Plaintiff consented to the challenged disclosures is central to each of Plaintiff's causes of action.  It would appear that Plaintiff cannot ultimately prevail on any of these counts absent proof that Defendant disclosed his confidential financial information without authorization.  Given that resolution of the converted Rule 56 motion may materially narrow, or altogether eliminate the remaining issues in this litigation, resolution of these arguments would be premature and contrary to the interest of conserving this Court's scarce judicial resources.

[Docket No. 57.]

**s/ Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

DATED: June 30, 2026

16